# No. 14-302-cv

In The United States Court Of Appeals
For The Second Circuit

DAVID SELLERS,

PLAINTIFF-APPELLANT,

V.

THE ROYAL BANK OF CANADA, RBC USA HOLDCO CORPORATION, RBC CAPITAL MARKETS CORPORATION LLC, AND JOHN DOES 1-5,

DEFENDANT-APPELLEE.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, NO. 12-CV-01577 (KBF) THE HONORABLE KATHERINE B. FORREST, JUDGE PRESIDING.

## BRIEF OF APPELLEES

James P. Walsh, Jr., Esq.
August W. Heckman III, Esq.
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, New Jersey  08540
609.919.6696

ATTORNEYS FOR DEFENDANTS-APPELLEES

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

STATEMENT OF ISSUES ....................................................................3

STATEMENT OF THE CASE................................................................5

STATEMENT OF FACTS .....................................................................7

    I.    PLAINTIFF ENTERED INTO AN INDEPENDENT
          CONTRACTOR RELATIONSHIP WITH RBC'S GROUP
          RISK MANAGEMENT TEAM IN 2006 ............................................7

    II.    RBC'S CORPORATE BANKING GROUP ENGAGED
          PLAINTIFF AS AN INDEPENDENT CONTRACTOR IN
          FEBRUARY 2008.................................................................................9

    III.    PLAINTIFF'S INDEPENDENT CONTRACTOR
          RELATIONSHIP WITH RBC WAS NON-EXCLUSIVE;
          WHILE CONSULTING WITH RBC, PLAINTIFF ENTERED
          INTO AN INDEPENDENT CONTRACTOR AGREEMENT
          WITH A COMPETITOR, CREDIT SUISSE. ...................................11

    IV.    PLAINTIFF'S ADMISSIONS REGARDING THE
          INDEPENDENT CONTRACTOR RELATIONSHIP ALSO
          SUPPORT THE COURT'S DECISION............................................12

    V.    RBC SELECTED JAKE SIGMUND TO FILL THE
          POSITION OF DIRECTOR OF CORPORATE BANKING
          MUNICIPAL FINANCE IN OCTOBER 2008. ...............................14

    VI.    RBC DECIDED NOT TO RENEW THE CONSULTING
          AGREEMENT .................................................................................15

    VII.    PLAINTIFF FILED A CHARGE WITH THE EQUAL
          EMPLOYMENT OPPORTUNITY COMMISSION AND,
          SUBSEQUENTLY, A COMPLAINT IN FEDERAL
          DISTRICT COURT .........................................................................17

    VIII.    THE INTERNAL REVENUE SERVICE RULES THAT
          PLAINTIFF WAS AN INDEPENDENT CONTRACTOR --
          AND HE CONTINUES TO WORK AS ONE ................................19

STANDARD OF REVIEW ..................................................................20

SUMMARY OF ARGUMENT ...........................................................23

ARGUMENT .......................................................................................26

i

# TABLE OF CONTENTS

**Page**

I.  PLAINTIFF FAILED TO DISPUTE DEFENDANTS' UNDISPUTED MATERIAL FACTS.................................................26

II.  THE UNDISPUTED FACTS CONCERNING PLAINTIFF'S CONSULTING ARRANGEMENT WITH RBC ESTABLISH THAT HE WAS AN INDEPENDENT CONTRACTOR. ...............30

III.  EVEN IF PLAINTIFF COULD BE CONSIDERED AN EMPLOYEE  (WHICH HE WAS NOT), HE WOULD BE STATUTORILY EXEMPT  FROM OVERTIME PAY AND STILL WOULD  HAVE NO COMPENSABLE DAMAGES.........41

IV.  PLAINTIFF'S ERISA CLAIM IS WITHOUT MERIT BECAUSE HE ADMITS THAT HE FAILED TO EXHAUST ADMINISTRATIVE PROCEDURES AND, EVEN IF HE HAD, THE PLANS SPECIFICALLY EXCLUDE INDEPENDENT CONTACTORS AND INDIVIDUALS CLASSIFIED AS INDEPENDENT CONTRACTORS....................44

V.  PLAINTIFF CANNOT PROVE A PRIMA FACIE CASE OF AGE DISCRIMINATION. ...............................................46

VI.  PLAINTIFF CANNOT REBUT RBC'S LEGITIMATE, NON-DISCRIMINATORY REASONS. .....................................50

VII.  PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE HE WAS NOT SUBJECTED TO AN ADVERSE ACTION. ................55

VIII.  THE DISTRICT COURT DID NOT ABUSE ITS WIDE DISCRETION IN CURTAILING PLAINTIFF'S OVERBROAD, IRRELEVANT AND CUMULATIVE DISCOVERY REQUESTS; PLAINTIFF WAS PROVIDED WITH FULSOME DISCOVERY. .....................................57

CONCLUSION .........................................................................61

CERTIFICATE OF COMPLIANCE......................................................62

CERTIFICATE OF SERVICE ...........................................................63

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alleva v. N.Y.C. Dep't of Investigation,
  696 F. Supp. 2d 273 (E.D.N.Y. 2010),
  aff'd, 413 F. App'x 361 (2d Cir. 2011) ............................................................48

Alvarez v. Nicholson,
  No. 03-4173, 2005 U.S. Dist. LEXIS 45744 (S.D.N.Y. Aug. 3, 2005) .............54

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)..........................................................................................20

Ashton v. Pall Corp.,
  32 F. Supp. 2d 82 (E.D.N.Y. 1999) ..................................................................51

Bailey v. Synthes,
  295 F. Supp. 2d 344 (S.D.N.Y. 2003) ...............................................................53

Barfield v. N.Y.C. Health & Hosps. Corp.,
  537 F.3d 132 (2d Cir. 2008) .............................................................................30

Bay v. Times Mirror Magazines, Inc.,
  936 F.2d 112 ( 2d Cir. 1991) ............................................................................50

Bjork v. Eastman Kodak Co.,
  189 F. Supp. 2d 3 (W.D.N.Y. 2001)..................................................................58

Brock v. Superior Care, Inc.,
  840 F.2d 1054 (2d Cir. 1988) .....................................................................30, 31

Browning v. Ceva Freight, LLC,
  885 F. Supp. 2d 590 (E.D.N.Y. 2012) ..............................................33, 37, 38, 40

Burlington N. & Santa Fe Ry. Co. v. White,
  548 U.S. 53 (U.S. 2006)....................................................................................56

Cannon v. Douglas Elliman, LLC,
  No. 06-7092, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007).............................34

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Capital Imaging Assoc. v. Mohawk Valley Medical Assoc.,
   725 F. Supp. 669 (N.D.N.Y. 1989)......................................................58

Caravantes v. 53rd St. Partners, LLC,
   No 09-7821, 2012 WL 3631276 (S.D.N.Y. Aug. 23, 2012) ..............55

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)........................................................................21

Clesi v. Zinc Corp.,
   No. 01-374, 2001 WL 1223456 (N.D.N.Y. Oct. 11, 2001)................37

Costello v. New York State Nurses Ass'n,
   783 F. Supp. 2d 656 (S.D.N.Y. 2011) ..............................................27

Courtney v. City of New York,
   20 F. Supp. 2d 655 (S.D.N.Y. 1998) ..........................................54, 55

Cuellar v. Love,
   No. 11-3632, 2014 WL 1486458 (S.D.N.Y. Apr. 11, 2014)...............27

Curto v. Edmundson,
   392 F.3d 502 (2d Cir. 2004) ............................................................52

D'Amico v. City of New York,
   132 F.3d 145 (2d Cir. 1998) ...........................................................20

Davenport v. Harry N. Abrams, Inc.,
   249 F.3d 130 (2d Cir. 2001) ............................................................45

Davis v. Peake,
   No. 08-3570, 2011 U.S. Dist. LEXIS 107380 (S.D.N.Y. Sept. 20, 2011),
   aff'd, 505 F. App'x 67 (2d Cir. 2012) ...............................................49

Deboissiere v. Am. Modification Agency,
   No. 09-2316, 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010) ..............40

Dent v. U.S. Tennis Ass'n,
   No. 08-1533, 2011 WL 308417 (E.D.N.Y. Jan. 27, 2011)..................51

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

DeSouza v. EGL Eagle Global Logistics LP,
    596 F. Supp. 2d 456 (D. Conn. 2009)............................................36, 37

Dole v. Amerilink,
    729 F. Supp. 73 (E.D. Mo. 1990) ..........................................................39

Donahue v. Windsor Locks Bd. of Fire Comm'rs,
    834 F.2d 54 (2d Cir. 1987) ....................................................................21

Douglas v. Victor Capital Grp.,
    21 F. Supp. 2d 379 (S.D.N.Y. 1998) .....................................................44

Downes v. J.P. Morgan Chase & Co.,
    No. 03-8991, 2006 WL 785278 (S.D.N.Y. Mar. 21, 2006) ................46

Edwards v. Schrader-Bridgeport Int'l, Inc.,
    205 F. Supp. 2d 3 (N.D.N.Y. 2002).......................................................44

EEOC v. Zippo Mfg. Co.,
    713 F.2d 32 (3d Cir. 1983) ....................................................................40

Eisenberg v. Advance Relocation & Storage, Inc.,
    237 F.3d 111 (2d Cir. 2000) ..................................................................39

Farias v. Instructional Sys., Inc.,
    259 F.3d 91 (2d Cir. 2001) ....................................................................55

Fitzpatrick v. New York Cornell Hosp.,
    No. 00-8594, 2003 WL 102853 (S.D.N.Y. Jan. 9, 2003)....................22

Frishberg v. Esprit de Corp.,
    778 F. Supp. 793 (S.D.N.Y. 1991) ........................................................39

Gaffney v. Dep't of Info. Tech. & Telecomm'ns,
    536 F. Supp. 2d 445 (S.D.N.Y. 2008) ...................................................48

Gmurzynska v. Hutton,
    355 F.3d 206 (2d Cir. 2004) ..................................................................22

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Goldstick v. The Hartford, Inc.,
  No. 00-8577, 2002 WL 1906029 (S.D.N.Y. Aug. 19, 2002) .............................27

Grant v. Roche Diagnostics Corp.,
  No. 09-1540, 2011 U.S. Dist. LEXIS 79994 (E.D.N.Y. July 20, 2011) ............49

Greenbaum v. Handelsbanken,
  67 F. Supp. 2d 228 (S.D.N.Y. 1999) ..................................................................55

Groesch v. City of Springfield,
  635 F.3d 1020 (7th Cir. 2011) ...........................................................................52

Gross v. FBL Fin. Servs., Inc.,
  557 U.S. 167 (2009)...........................................................................................47

Grossman v. Dillard Dep't Stores, Inc.,
  109 F.3d 457 (8th Cir. 1997) .............................................................................49

Gustafson v. Bell Atl. Corp.,
  171 F. Supp. 2d 311 (S.D.N.Y. 2001) ...............................................................46

Hart v. Rick's Cabaret Int'l, Inc.,
  No. 09-3043, 967 F. Supp. 2d 901 (S.D.N.Y. 2013)..........................................31

Heimeshoff v. Hartford Life & Accident Co.,
  134 S. Ct. 604 (2013)..........................................................................................46

Hicks v. Baines,
  593 F.3d 159 (2d Cir. 2010) ..............................................................................54

Katt v. City of New York,
  151 F. Supp. 2d 313 (S.D.N.Y. 2001), aff'd in relevant part sub nom.
  Krohn v. New York City Police Dep't, 60 F. App'x 357 (2d Cir. 2003)...........55

Kelderhouse v. St. Cabrini Home,
  259 A.D.2d 938 (3d Dep't 1999)........................................................................54

Kesselman v. Rawlings Co.,
  668 F. Supp. 2d 604 (S.D.N.Y. 2009) ...............................................................45

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
No. 10-2603, 2011 WL 1453791 (S.D.N.Y. Apr. 13, 2011) .........................41, 43

Kuebel v. Black & Decker Inc.,
643 F.3d 352 (2d Cir. 2011) ...............................................................................31

Leacock v. Nassau Health Care Corp.,
No. 08-2401, 2013 WL 4899723 (E.D.N.Y. Sept. 11, 2013)..............................57

Lee v. Coughlin,
902 F. Supp. 424 (S.D.N.Y. 1995) .....................................................................22

Lee v. Glessing,
51 F. App'x 31 (2d Cir. 2002) ............................................................................46

Legeno v. Douglas Elliman, LLC,
311 F. App'x. 403 (2d Cir. 2009) ....................................................20, 33, 34, 46

Lewis v. Hill,
No. 97-3213, 2005 WL 292748 (S.D.N.Y. Feb. 8, 2005) ..................................51

Lorenzo v. St. Luke's–Roosevelt Hosp. Ctr.,
837 F. Supp. 2d 53 (E.D.N.Y. 2011) ..................................................................51

Martin v. Gingerbread House, Inc.,
977 F.2d 1405 (10th Cir. 1992) ..........................................................................57

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)......................................................................................21, 50

Mavrommatis v. Carey Limousine Westchester, Inc.,
476 F. App'x 462 (2d Cir. 2011) ........................................................................50

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973)............................................................................................47

McLean v. Garage Mgmt. Corp.,
No. 10-3950, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012)...............................32

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

McNally v. Yarnall,
  764 F. Supp. 838 (S.D.N.Y. 1991) .......................................................38

Murray v. New York,
  604 F. Supp. 2d 581 (W.D.N.Y. 2009)...............................................30

Nationwide Mut. Ins. Co. v. Mortensen,
  606 F.3d 22 (2d Cir. 2010) ................................................................44

O'Connor v. Davis,
  126 F.3d 112 (2d Cir. 1997) ..............................................................21

O'Neill-Marino v. Omni Hotels Mgmt. Corp.,
  No. 99-3793, 2001 WL 210360 (S.D.N.Y. Mar. 2, 2001) ...........43, 44

Pasha v. William M. Mercer Consulting, Inc.,
  No. 00-8362, 2004 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 2, 2004),
  aff'd, 135 F. App'x 489 (2d Cir. 2005) .........................................54, 56

R.B. Ventures, Ltd. v. Shane,
  112 F.3d 54 (2d Cir. 1997) ................................................................20

Rommage v. MTA Long Island R.R.,
  No. 08-836, 2010 WL 4038754 (E.D.N.Y. Sept. 30, 2010)...............53

Ruszkowski v. Kaleida Health Sys.,
  422 F. App'x 58 (2d Cir. 2011)......................................................47, 48

Schwind v. EW & Assocs., Inc.,
  357 F. Supp. 2d 691 (S.D.N.Y. 2005) ...............................................36

Scott v. NYC Dept. of Corr.,
  445 F. App'x 389 (2d Cir. 2011) ........................................................22

Scruggs v. ExxonMobil Pension Plan,
  585 F.3d 1356 (10th Cir. 2009) .........................................................46

Sheridan v. N.Y. Life Inv. Mgmt., LLC,
  No. 09-4746, 2012 U.S. Dist. LEXIS 18525 (S.D.N.Y. Feb. 9, 2012) .............47

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Short v. Manhattan Apts, Inc.,
  916 F. Supp. 2d 375 (S.D.N.Y. 2012) ................................................................55

Shortt v. Congregation KTI,
  No. 10-2237, 2013 U.S. Dist. LEXIS 4094 (S.D.N.Y. Jan. 9, 2013) ................48

Sotomayor v. City of New York,
  862 F. Supp. 2d 226 (E.D.N.Y. 2012) ...............................................................47

Telephone Co. v. Town of Oyster Bay,
  166 F.3d 490 (2d Cir. 1999) ..............................................................................20

Thompson v. DDB Needham Chicago, Inc.,
  No. 95-7114, 1996 WL 392165 (N.D. Ill. July 11, 1996) ..................................40

Torres v. Gristede's Operating Corp.,
  2011 U.S. Dist. LEXIS 114209 (S.D.N.Y. Sept. 9, 2011) ..................................26

U.S. v. Diebold, Inc.,
  369 U.S. 654 (1962) ...........................................................................................21

United Air Lines v. Evans,
  431 U.S. 553 (U.S. 1977) ...................................................................................52

Velasquez v. Goldwater Mem'l Hosp.,
  88 F. Supp. 2d 257 (S.D.N.Y. 2000) ..................................................................49

Velu v. Velocity Express, Inc,
  666 F. Supp. 2d 300 (E.D.N.Y. 2009) ...............................................34, 37, 38, 39

VTA Mgmt. Servs., Inc. v. United States,
  No. 01-0145, 2004 WL 3199677 (E.D.N.Y. Dec. 14, 2004) ..............................32

W. World Ins. Co. v. Stack Oil, Inc.,
  922 F.2d 118 (2d Cir. 1990) ..............................................................................21

Walsh v. NBC,
  No. 83-6102, 1987 WL 16131 (S.D.N.Y. Jan. 7, 1987) .....................................48

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Witkowich v. Gonzales,
    541 F. Supp. 2d 572 (S.D.N.Y. 2008), aff'd sub nom.
    Witkowich v. U.S. Marshals Serv., 424 F. App'x 20 (2d Cir. 2011) .................51

Young v. Cooper Cameron Corp.,
    586 F.3d 201 (2d Cir. 2009) ...........................................................................31

Zdorenko v. Meow Inc.,
    No. 12-671, 2013 U.S. Dist. LEXIS 99258 (S.D.N.Y. July 11, 2013) .............21

Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP,
    869 F. Supp. 2d 378 (S.D.N.Y. 2012) ............................................................48

**STATUTES**

29 U.S.C. § 207(a) ...............................................................................................41

29 U.S.C. § 255(a) ...............................................................................................31

**OTHER AUTHORITIES**

29 C.F.R. § 541.200(a)(2)-(3) ..............................................................................42

29 C.F.R. § 541.601(a) .........................................................................................42

29 C.F.R. § 541.601(c) .........................................................................................42

29 CFR §§ 541.400, 541.601 ...............................................................................41

Fed. R. App. P. 28(e) .............................................................................................7

Fed. R. Civ. P. 56(d) ............................................................................................57

Fed. R. Civ. P. 56.1 ................................................................................26, 28, 29

Fed. R. Civl P. Rule 56(f) ....................................................................................58

## INTRODUCTION

In his Complaint, Plaintiff alleged violations of the Fair Labor Standards Act ("FLSA"), the Employment Retirement Income Security Act of 1974 ("ERISA"), the New York Labor Law ("NYLL"), the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), because Defendants did not hire him as an employee and did not renew his consulting firm's independent contractor agreement.  In Plaintiff's view, these decisions were the result of age discrimination.  Plaintiff also challenged his classification by Defendants as an independent contractor.  Finally, Plaintiff claimed that Defendants' reservation of contractual indemnification rights in his consulting company's independent contractor agreement was retaliatory.

The District Court found that Defendants correctly classified Plaintiff as an independent contractor based on the totality of the circumstances.  Even affording "special solicitude" to Plaintiff as a *pro se* litigant, the undisputed material facts showed that Plaintiff could not satisfy the "economic realities" or "control" tests. In his appeal, Plaintiff incorrectly states that the District Court's decision turned on its reliance on the "inevitable effects of employment misclassification," such as reporting his income on I.R.S. Form 1099.  Although Plaintiff knocks down this straw man he created, he cannot dispute key facts that show he was not dependent

1

on Defendants' business, but rather was in business for himself.  For instance, Plaintiff formed a consulting firm through which he entered into multiple consulting agreements with Defendants.  Plaintiff was free to – and did – pursue business opportunities with other banks.  Indeed, Plaintiff performed consulting services for a competing bank at the same time he performed services for RBC. No employee of RBC ever would have been permitted to do so.  These undisputed facts, among others, establish that Plaintiff was correctly classified as an independent contractor.

Each of Plaintiff's other claims fails, too, when the law is applied to the undisputed facts.  The FLSA, ADEA, ERISA, NYLL, and NYSHRL do not govern independent contractors (which Plaintiff does not contest).  With respect to the NYCHRL, which does cover contractors, the District Court held that Plaintiff had not established a *prima facie* case of age discrimination.  Plaintiff's principal argument here is that the District Court required him to adduce material *facts* in dispute rather than defer to his speculation regarding what cross-examination of the decision-maker at trial might uncover.  Finally, Plaintiff failed to establish a viable retaliation claim because he did not suffer an adverse employment action and cannot show pretext.

As explained in detail below, not only does the case law and undisputed record evidence support the District Court's Order granting summary judgment,

but several alternative/independent reasons for summary judgment exist as well. For example, even if improperly classified as an independent contractor, Plaintiff could not recover the damages he seeks under the FLSA and NYLL because he unquestionably would be an "exempt" employee. Plaintiff's ERISA claim is barred by the plain language of the controlling plan documents and because he failed to exhaust administrative remedies. Finally, Plaintiff's ADEA and NYSDHR age discrimination claims fail for the same reasons his NYCHRL claim failed (inability to prove a *prima facie* case or, alternatively, to establish pretext), though the failure is even more resounding given the higher burden of "but for" causation he must – and cannot – meet under those statutes.

## STATEMENT OF ISSUES

1.      Whether the court properly granted summary judgment to Defendants on Plaintiff's misclassification claims under the FLSA and NYLL, and concluded that Plaintiff was an independent contractor under both the "economic reality" and "control" tests, when the totality of the circumstances demonstrated, among other things, that Plaintiff formed his own consulting company, entered into a series of short-term independent contractor agreements, performed services for a compeititor bank at the same time he "worked" for Defendants, and represented himself as sole proprietor of a consulting firm.

2.      Whether the court properly granted summary judgment to Defendants

on Plaintiff's ERISA, ADEA and NYSHRL claims, when independent contractors are not covered by those laws.

3.    Whether the court properly granted summary judgment to Defendants on Plaintiff's NYCHRL, ADEA and NYSHRL claims, when Defendants presented unrebutted evidence of the legitimate business reasons for their decisions, and the other admissible facts pointed to an age-neutral decision (*i.e.*, Defendants contracted with Plaintiff when he was over 40, the decision-maker was over 40, and the same individual who engaged Plaintiff's services also decided to allow the contract to expire).

4.    Whether the court properly granted summary judgment to Defendants on Plaintiff's NYCHRL retaliation claim, when a reasonable person in plaintiff's position (*i.e.*, a well-educated, experienced proprietor of a business, familiar with contracts) would not find Defendants' reservation of contractual rights materially adverse (*i.e.*, dissuading the person from making or supporting a claim of discrimination).

5.    Whether Plaintiff's FLSA and NYLL claims also fail as a matter of law because, even assuming arguendo that he was an employee, Plaintiff was an "exempt" employee.

6.    Whether Plaintiff's ERISA claim also fails as a matter of law, when Plaintiff failed to exhaust administrative remedies and the terms of the applicable

plan documents preclude Plaintiff from participating in RBC's plans.

      7.     Whether the court abused its discretion in denying certain of Plaintiff's requests for discovery, when Plaintiff was permitted to take, and did take, broad discovery.

**STATEMENT OF THE CASE**

      On March 5, 2012, Plaintiff-Appellant David Sellers ("Sellers" or "Plaintiff") filed the action below, *pro se*, against RBC Capital Markets and The Royal Bank of Canada (the "Defendants"). In his Complaint, Plaintiff alleged violations of the FLSA, ERISA, the NYLL, the ADEA, the NYSHRL, and the NYCHRL, and sought damages for lost wages, lost benefits, injury to his career and reputation, mental anguish, pain and suffering, and emotional distress. (ECF 1, Complaint). Plaintiff alleged that Defendants did not hire him as an employee and did not renew his consulting firm's independent contractor agreement because of age discrimination. Plaintiff also challenged his classification by Defendants as an independent contractor. Finally, Plaintiff claimed that Defendants' reservation of contractual indemnification rights was retaliatory.

      Plaintiff, however, failed to serve the Complaint. Instead, on June 22, 2012, Plaintiff filed an Amended Complaint, bringing the same claims, but adding as defendants RBC USA Holdco Corporation and John Does 1-5. (ECF 3, Amended Complaint). Plaintiff did not serve or file a demand for jury trial, thereby waiving

any such right.  Fed. R. Civ. P. 38(d); *see also* ECF 42, Scheduling Order, at ¶6.

On November 5, 2012, Plaintiff served the Amended Complaint, 245 days after filing the original Complaint and 137 days after filing the Amended Complaint.  As a result, Defendants moved to dismiss the Amended Complaint for failure to make timely service as required by Fed. R. Civ. P. 4(m).  On March 21, 2013, the Honorable Thomas P. Griesa, U.S.D.J., denied the motion.  (ECF 25, Order Denying Motion To Dismiss).

On October 28, 2013, Defendants filed a Motion for Summary Judgment on all claims.  By Order dated January 8, 2014, the District Court, Hon. Katherine B. Forrest, granted the Defendants' motion and dismissed the Complaint.  The District Court held that:  "No genuine issue of material fact exists as to whether plaintiff was an independent contractor rather than an employee.  Thus, plaintiff's misclassification claims under the FLSA and NYLL fail as a matter of law.  Because he was properly classified as an independent contractor, plaintiff's ERISA and age discrimination claims pursuant to the ADEA and NYSHRL also fail.  On the undisputed facts, plaintiff also fails to allege a *prima facie* case of age discrimination or retaliation under the NYCHRL."  (ECF 108, Memorandum Opinion Granting Summary  Judgment).

This appeal followed.

<strong>STATEMENT OF FACTS[1]</strong>

**I.     PLAINTIFF ENTERED INTO AN INDEPENDENT CONTRACTOR RELATIONSHIP WITH RBC'S GROUP RISK MANAGEMENT TEAM IN 2006.**

In the summer of 2006, Plaintiff formed a company called Risk Management Consulting Services LLC ("RMCS"), to provide consulting services related to public finance banking.  Plaintiff is the owner and sole proprietor of RMCS.  (ECF 78, Defendants' Statement of Material Facts ("SUF"), ¶5)  Subsequently, RBC entered into a Consulting Agreement (the "Agreement") with RMCS, dated August 7, 2006.  Id., ¶6.  Plaintiff executed the Agreement on behalf of RMCS.  Id., ¶7.  In contrast, all persons employed by RBC in the United States are employed at will, and do not execute such agreements.  Id., ¶2.

The Agreement contained an original term of three months, during which Plaintiff would be paid a consulting fee of $150/hour or six thousand dollars ($6,000.00) weekly for services performed in RBC's Group Risk Management

---

[1]     Pursuant to Fed. R. App. P. 28(e), citations to Plaintiff's Appendix will be as "A- __."  Plaintiff submitted an Appendix without the consent or input of Defendants, therefore the Plaintiff's Appendix does not contain all of the documents upon which Defendants rely in this brief.  As a result, Defendants have been instructed by the Clerk to cite directly to the district court docket, citations to which will be "ECF __" followed by a brief description of the cited document, for ease of reference by the Court.

group.  Id., ¶8.  The Agreement expressly disavowed any employment relationship whatsoever between the parties:

> During the Term, the Consultant will act as an independent contractor.  No employment relationship is intended or will exist between the consultant (or its employees or independent contractors) and RBC or any other member of the RBC Financial Group by virtue of this Letter Agreement or the Consulting Services or Additional Consulting Services, nor will this Letter Agreement or the Consulting Services or Additional Consulting Services be construed to establish a relationship between them as partners or joint venturers.  Except as expressly authorized in writing, the Consultant may not assume any obligations or enter into any contracts on behalf of the Firm."

Id., ¶9.

The parties extended the Agreement several times, through February 2009, each time executing a new three-month contract.  Id., ¶12.  Plaintiff admits that he was properly classified as an independent contractor from August 7, 2006 through January 2008.  Id., ¶11.  Under the Agreement, RMCS agreed to indemnify and hold harmless RBC from any tax liabilities or employment benefit obligations arising from payments made under the Agreement.[2]  Id., ¶10.  Plaintiff does not challenge the underlying validity of the Agreement or the legality or enforceability

---

[2]    While RBC provides a variety of benefits to "eligible employees," the plan documents that govern these benefits specifically exclude individuals classified by RBC as independent contractors from their definitions of "eligible employees," and further provide that RBC's classification of an individual as an employee or non-employee independent contractor is conclusive and binding.  Id., ¶1.

of any provision of the Agreement through January 31, 2008, and only thereafter challenges his status as an independent contractor under the FLSA and New York Labor Law.  Id., ¶13.

## II.  RBC'S CORPORATE BANKING GROUP ENGAGED PLAINTIFF AS AN INDEPENDENT CONTRACTOR IN FEBRUARY 2008.

In December 2007, as the end of RMCS' contract with RBC was in sight, Andrew Brown, who engaged RMCS for Group Risk Management, discussed with Patrick Shields, who headed RBC's Corporate Banking group and who was over 40 years old at the time, the possibility of RMCS performing additional services for the group under Mr. Shields that supported municipal finance deals.  Id., ¶14. Mr. Shields thereafter met with Plaintiff, who was 55 years old at the time, in January 2008 to discuss projects for which his team needed assistance.  Id., ¶¶16-17.

According to Plaintiff, RBC "needed an experienced banker . . . within the municipal finance team."  Id., ¶18.  Plaintiff testified that "[he] was an experienced banker."  Id.  Mr. Shields made the decision to offer RMCS a contract to provide support to Alex Birr, the head of Corporate Banking's Municipal Finance team. Id., ¶19.

Accordingly, RBC and RMCS negotiated an addendum to the Consulting Agreement.  Id., ¶20.  The addendum defined RMCS' new independent contractor assignment as "[a]ssist[ing] Alex Birr with Public Finance deal flow including

9

screening new opportunities and preparing business and credit submissions covering: borrower risk due, diligence, transaction structuring and underwriting, documentation review (no documentation execution) and business' rationale for credit requests." Id., ¶21. The addendum provided that "the terms under which the Additional Consulting Services are being rendered are governed by the Consulting Agreement . . . which remains in full force and effect and is expressly incorporated herein." Id., ¶22.

Mr. Shields did not make any promises to Plaintiff regarding future employment at RBC and no specific employment position was ever offered to Plaintiff. Id., ¶23. Indeed, at the time Plaintiff began his consulting arrangement with the Municipal Finance group, he understood that no promise of permanent employment had been made. Rather, he was expressly aware that there was only a "possibility of permanent" employment, depending on various conditions within RBC (including budgetary conditions). Id., ¶24.

On January 21, 2008, Plaintiff acknowledged that, under the extension, his "[s]ervices would be provided under contract with [RMCS], the 'consultant' for [his] current Agreement with the Bank." Plaintiff further acknowledged his understanding that the extension of the Agreement did not constitute an employment relationship with RBC, but instead merely expressed "hope" that "this consulting engagement will lead to regular employment." Id., ¶25. As they had

done before, RBC and Plaintiff extended the Agreement, renegotiating terms after each three-month term expired, through February 27, 2009.  None of the Agreement extensions was for more than three months.  Id., ¶26.  The expiration of the Agreement coincided with the completion of Plaintiff's last project, the State of California debt facility restructure project.  Id., ¶27.

Under the terms of the Agreement and each extension or addendum thereto, RMCS' fees were stated on a per hour basis but were capped weekly at a set amount.  Id., ¶28.  During his engagement with Corporate Banking, Plaintiff was involved in, among other things, structuring commercial paper transactions and "was entrusted to operate with a degree of independence and responsibility" for his projects.  Id., ¶29.

## III.  PLAINTIFF'S INDEPENDENT CONTRACTOR RELATIONSHIP WITH RBC WAS NON-EXCLUSIVE; WHILE CONSULTING WITH RBC, PLAINTIFF ENTERED INTO AN INDEPENDENT CONTRACTOR AGREEMENT WITH A COMPETITOR, CREDIT SUISSE.

In April 2008, while consulting with RBC's Municipal Finance group, Plaintiff, through RMCS, entered into another consulting agreement with Credit Suisse Securities (USA) LLC, a competing bank, to provide consulting services for a period of three months.  Id., ¶30.  RMCS earned $8,000 for its consulting work with Credit Suisse.  Id., ¶31.  Tellingly, after completing his work for Credit Suisse, Plaintiff remained "available to provide additional services according to

Credit Suisse's needs." Id., ¶33.  Notably, RBC policy prohibits employees from working outside the Bank without express written permission.  Id., ¶34.  Plaintiff did not seek permission from RBC to provide consulting services to Credit Suisse. Id., ¶35. Nor was he required to, since he was not an employee. Id.

## IV.  PLAINTIFF'S ADMISSIONS REGARDING THE INDEPENDENT CONTRACTOR RELATIONSHIP ALSO SUPPORT THE COURT'S DECISION.

Plaintiff made the following additional admissions regarding his relationship with RBC:

- He had no set schedule at RBC and was not required to arrive or depart the office at any particular time, take lunch or rest breaks for prescribed time periods, or clock in or out.  Id., ¶50.

- He was not granted authority to commit RBC's balance sheet to any transactions, which he admits corporate banking "employees" are provided.  Id., ¶¶46-47.

- He did not receive paid vacation or sick days during his engagement with RBC.  Id., ¶48.

- He took vacation and personal days at his own convenience, and declined to provide RBC with advanced notice of his planned days off, citing his status as a consultant.  Id., ¶51.

- He did not receive "typical HR type benefits" from RBC.  Id., ¶49.

- He received no formal performance reviews.  Id., ¶36.

- He represented himself as sole proprietor of RMCS, not as an employee of RBC.  Id., ¶39.

- He submitted invoices for payment to RBC under the name of his consulting company, RMCS.  Id., ¶38.

- He filed tax returns as a sole proprietor in 2008, 2009, 2011 and 2012, and paid self-employment taxes in those years. Id., ¶40.

- He took favorable tax deductions that are not allowed for employees. Id., ¶41.

- He had his own federal employer ID number under the RMCS name. Id., ¶42.

- He had no job title at RBC. Id., ¶44.

- RBC did not provide him with business cards. Id., ¶45.

- He did not receive a paycheck like regular employees. Id., ¶37.

- He received 1099 forms, RBC did not withhold payroll or other employment-related taxes, and did not issue W-2 forms to Plaintiff. Id., ¶¶42-43

In Plaintiff's view, the only factor that distinguishes an employee from an independent contractor is that independent contractors work on discrete projects, which he defines to mean "something that regular employees within [a department] would not do because their regular responsibilities . . . would preclude them from doing that." Id., ¶55. According to Plaintiff, if his work in the Corporate Banking group had been *more* project-oriented, he would not have considered himself an employee. Id., ¶56.

During his engagement with Corporate Banking, Plaintiff provided services for the following projects: the school district of Pembroke Pines; the Richmond Community Youth Development Agency; the City of Port Saint Lucie; the New

13

Mexico Municipal Electric Energy Authority; the state of California; the University of Pittsburgh Medical Center; and the City of Harrisburg.[3] Id., ¶57. Generally, the other individuals – both within RBC and third-parties – involved with the projects assigned to Plaintiff worked during business hours. Id., ¶52. Plaintiff admits that he needed access to these individuals, and to RBC's computer systems, to complete these projects. Id., ¶53.

## V.    RBC SELECTED JAKE SIGMUND TO FILL THE POSITION OF DIRECTOR OF CORPORATE BANKING MUNICIPAL FINANCE IN OCTOBER 2008.

In October 2008, Mr. Birr, who had been Managing Director of Non-Bank Financial Institutions ("NBFI") and Municipal Finance for RBC Corporate Banking, was separated from RBC as part of a Corporate Banking restructuring effort. Id., ¶59. In October 2008, RBC transferred Jake Sigmund, who, at the time, was a full-time employee in RBC's Corporate Banking Real Estate team, to assume some of Mr. Birr's responsibilities, namely as Director of the Municipal Finance team within Corporate Banking (but not NBFI, for which Mr. Shields assumed responsibility). Id., ¶60. Plaintiff has no personal knowledge regarding

---

[3]    While the District Court incorrectly noted that these projects were with "other entities," the court correctly concluded that through his consulting company, Plaintiff was free to seek, and did seek, business opportunities outside of RBC. See, e.g., A-25 (Plaintiff "provided consulting services to RBC and Credit Suisse Securities through RMCS at the same time in 2008."). Moreover, the discrete nature of these projects, whether for RBC or other entities, is indicative of an independent contractor relationship.

the decision to transfer Mr. Sigmund.  Id., ¶62.  Further, RBC did not post, and Plaintiff did not apply for, this position.  Id., ¶61.

RBC transferred Mr. Sigmund to this position because of his real estate background and strong credit underwriting skills.  At the time, a large portion of RBC's municipal finance loan book was exposed real estate (approximately 15% of notional commitments and 30% of the overall client base) and there were growing concerns, in light of the historic market downturn and associated property devaluation in late-2008, about increasing loan exposure relating to real estate.  Id., ¶63.  Plaintiff agrees that Mr. Sigmund's "specialty" was "real estate," and that he had no comparable work experience.  Id., ¶¶64-65.  After Mr. Sigmund became Director of the Municipal Finance team within Corporate Banking, Plaintiff did not apply for *any* positions at RBC, nor was he aware of any open positions for which he could have applied.  Id., ¶67.

## VI.  **RBC DECIDED NOT TO RENEW THE CONSULTING AGREEMENT.**

As the term of the final Consulting Agreement extension neared its expiration date, Mr. Shields decided not to renew the Agreement.  Id., ¶68.  By the end of February 2009, Plaintiff was expected to complete his last project for RBC (an important credit restructuring transaction with the State of California), and his services would no longer be needed.  Id., ¶69.

15

Although Plaintiff had expressed an interest in employment with RBC, Mr. Shields decided to focus near-term future hiring at the Vice President and Associate levels – *i.e*., more "junior" positions in RBC's hierarchy. Given the state of the economy, Mr. Shields determined that Municipal Finance needed junior resources on the team to help with internal reviews and credit processing. There was a more limited need for loan origination, client interfacing, and cross-selling. By hiring at the junior levels, RBC would increase the group's capacity to manage the expected workload, while not incurring the costs for senior-level staffing. Id., ¶70. Mr. Shields was also concerned about Plaintiff's ability to be managed by Mr. Sigmund. Id., ¶71. Mr. Shields did not consider Plaintiff's age in making any decisions. Id., ¶72.

By February 10, 2009, Plaintiff had been informed that the Agreement would be extended through the end of February and that he would not be given a position as a permanent employee thereafter. Plaintiff expressed to Mr. Shields that he was "disappointed that I won't be offered a regular position after[]all." Id., ¶73. The very next day, Plaintiff acknowledged his understanding that he remained engaged with RBC as a consultant (and not as an employee), as he wrote in an email to a former colleague, "Still consultant. This contract up end of February. May not be extended this time." Id., ¶74.

After the expiration of the Consulting Agreement, Corporate Banking did not hire any employees until May, when it filled a Vice President position, which Plaintiff admitted would not have been an appropriate position for him.  Id., ¶¶75-76..  Plaintiff did not apply for New York state unemployment benefits following the conclusion of his consulting relationship with RBC.  Id., ¶97.

## VII.  PLAINTIFF FILED A CHARGE WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND, SUBSEQUENTLY, A COMPLAINT IN FEDERAL DISTRICT COURT.

On or about December 8, 2009, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination.[4]  Id., ¶78.   The entire basis for Plaintiff's claim of age discrimination was that RBC made "repeated representations that [he] would be hired into a permanent position, an appropriate permanent position and the fact that that . . . never happened over – over several extensions of the contract, [and] the fact that a person in his 50's [Mr. Birr] was let go, a much younger person was – replaced him in his position," and when "Pat Shields informed [Plaintiff] that . . . the contract  . . . would not be extended and [Plaintiff] asked why and [Mr. Shields] – his answer was that the bank had instead decided to hire more junior people."  Id., ¶79.  Plaintiff acknowledges that the term "junior people means

several things … In theory they could hire somebody older than me who is, in fact, junior … ." Id., ¶80.

On February 5, 2010, RBC sent a letter to RMCS, addressed to Plaintiff in his official capacity as owner/operator of RMCS. Id., ¶82. In that letter, RBC noted that the consulting agreement between the parties provided for RMCS to indemnify and hold RBC harmless for any and all employment benefit obligations allegedly owed by RBC to RMCS employees, arising from the parties' prior consulting relationship. Id. RBC noted that Plaintiff had filed an EEOC charge and reserved its right under the Consulting Agreement to seek reimbursement from RMCS for any and all costs and fees associated with defending the EEOC charge. Id.

On June 28, 2011, RBC wrote to the EEOC to state that it had no intention of seeking reimbursement from RMCS of the costs associated with defending Plaintiff's EEOC charge. RBC did not thereafter seek any such reimbursement from Plaintiff or RMCS. Id., ¶83. Plaintiff admits that, since the February 5, 2010 letter, he has received no other demands from RBC for reimbursement of its legal costs or fees, including those incurred in the instant litigation. Id., ¶84.

---

[4]     Although RBC promulgated and strictly enforces an Equal Employment Opportunity and Non-Discrimination Policy, Plaintiff admits he never complained to anyone at RBC about perceived age discrimination. Id., ¶4.

On November 21, 2011, the EEOC issued a Notice of Right to Sue to Plaintiff, at his request.  Id., ¶85.

On February 15, 2012, Plaintiff and RBC entered into a tolling agreement, under which the statute of limitations period for Plaintiff's age discrimination and wage and hour claims would be tolled during the period of February 15, 2012 through February 29, 2012.  Id., ¶86.  On March 5, 2012, Plaintiff filed a Complaint against Defendants in the United States District Court for the Southern District of New York, which was not served.  Id., ¶87.  On June 22, 2012, Plaintiff filed the Amended Complaint.  Id., ¶88.

## VIII.  THE INTERNAL REVENUE SERVICE RULES THAT PLAINTIFF WAS AN INDEPENDENT CONTRACTOR -- AND HE CONTINUES TO WORK AS ONE .

In April 2012, after filing the Complaint, Plaintiff filed Internal Revenue Service ("IRS") Form SS-8 requesting a Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding.  (ECF 103, Heckman Decl. II, Ex. A).  On December 12, 2013, the IRS issued a formal determination – binding on the IRS – in response to Plaintiff's submission, holding that Plaintiff "shall be found to be an independent contractor … ,"  even though RBC "provided all significant materials and a workspace to the worker [*i.e.*, Plaintiff]."  (Id.)

Currently, Plaintiff is engaged as an independent contractor as a Visiting Artist at the Lewis Center For Visual Arts at Princeton University, a relationship which began at least in August 2012.  (ECF 78, SUF, ¶92).   Notably, Plaintiff performed independent contractor services for Princeton University dating back at least to 2010.  Id.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*.  Cellular Telephone Co. v. Town of Oyster Bay, 166 F.3d 490, 492 (2d Cir. 1999).  This Court "utilizes the same standard as the district court: summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); see also Legeno v. Douglas Elliman, LLC, 311 F. App'x. 403, 105 (2d Cir. 2009) (affirming grant of summary judgment to employer where district court found plaintiff was properly classified as independent contractor, rather than employee); O'Connor v. Davis, 126 F.3d 112, 116 (2d Cir. 1997) (same).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57

(2d Cir. 1997). In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); see also Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

To defeat a motion for summary judgment, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." Id. (quoting Fed. R. Civ. P. 56(e)); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). Importantly, the nonmoving party cannot defeat summary judgment with evidence consisting of mere conclusory allegations, speculation, or conjecture. W. World, 922 F.2d at 121. Although the non-moving party need not produce evidence in admissible form for trial to avoid summary judgment, the non-moving party cannot rest on the pleadings, but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"[E]ven a *pro se* plaintiff must offer some evidence that would defeat a motion for summary judgment." Zdorenko v. Meow Inc., No. 12-671, 2013 U.S. Dist. LEXIS 99258, at *5-6 (S.D.N.Y. July 11, 2013) (granting summary

21

judgment) (citing <u>Saldana v. Local 32B-32J SEIU</u>, No. 03-1853, 2005 U.S. Dist. LEXIS 464, at *4 (S.D.N.Y. 2005) ("Even a *pro se* plaintiff [] cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint.")); <u>see also</u> <u>Fitzpatrick v. New York Cornell Hosp.</u>, No. 00-8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003) ("proceeding *pro se* does not otherwise relieve [plaintiff] from the usual requirements of summary judgment"); <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (holding that a "*pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment") (internal quotations omitted).  Additionally, this Court is "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court."  <u>Gmurzynska v. Hutton</u>, 355 F.3d 206, 210 (2d Cir. 2004).

With respect to Plaintiff's claim that the District Court erred when it allegedly failed to "investigate the *pro se* plaintiff's discovery concerns and denied every one of his requests," (Pl. Br. at 51), "a trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion."  <u>Scott v. NYC Dept. of Corr.</u>, 445 F. App'x 389, 390 (2d Cir. 2011).

## SUMMARY OF ARGUMENT

The undisputed facts established in the record below demonstrate that from approximately August 2006 through February 2009, Plaintiff, on behalf of his consulting company RMCS, contracted with RBC to provide consulting services under a series of successively-renegotiated consulting agreements.

Plaintiff's view of his independent contractor relationship with RBC ignores several key facts, namely:  (1) he voluntarily formed a consulting company, RMCS; (2) RMCS, through Plaintiff, negotiated and signed an independent contractor consulting agreement with RBC and re-negotiated that contractual relationship **thirteen times** – never once objecting to Plaintiff's non-employee status; (2) Plaintiff filed tax returns in 2006-2009 each year noting RMCS's continuing existence and seeking the benefit of business tax deductions not available to an "employee"; (3) Plaintiff submitted monthly invoices to RBC for his services (explicitly referencing the applicable "project" and referring to the independent contractor consulting agreement) and was compensated outside the regular payroll process, as directed by Plaintiff himself; (4) Plaintiff had no traditional title at RBC; (5) Plaintiff received no benefits from RBC; (6) Plaintiff had no signing authority at RBC; (7) at all times Plaintiff then and now advertised himself as "sole proprietor" RMCS on his resume and to the world at-large through LinkedIn; (8)  Plaintiff had no set schedule; (9) Plaintiff was not given annual

performance reviews; (10) RMCS controlled whether it earned a profit or loss each month; and (11) most tellingly, **RMCS performed work for a competing financial institution while under contract with RBC** (something employees are prohibited from doing).

Despite these overwhelming and indisputable facts, Plaintiff claims that he was misclassified pursuant to the FLSA and the NYLL. Based on the fallacy that he was an "employee," Plaintiff then bootstraps claims under ERISA, the ADEA, the NYSHRL and the NYCHRL. Each of these claims fails as a matter of law for multiple reasons, including:

### Misclassification

- Plaintiff's claims under the FLSA are time-barred.

- Even if timely, the relevant factors under both the FLSA and NYLL overwhelmingly weigh in favor of independent contractor status (as highlighted above).

- Even if found to be an employee under the FLSA and NYLL, Plaintiff was exempt from overtime requirements and there was no minimum wage violation.

### ERISA

- Plaintiff's claim for ERISA benefits fails because he admittedly did not exhaust administrative remedies or even file a claim for such benefits.

- Even if Plaintiff had exhausted his administrative remedies, the Plans expressly exclude from their definition of eligible participants those individuals classified by RBC as independent contractors.

24

**Age Discrimination**

- Plaintiff's ADEA and NYSHRL claims fail because those statutes do not apply to independent contractors.

- Plaintiff cannot prove a *prima facie* case of age discrimination because he admittedly never applied for an open position and there is no inference of age discrimination in light of the facts that the decision-maker was in the same protected class and allowed the RMCS contract to expire only 3 months after extending the agreement and only 13 months after retaining RMCS on behalf of Corporate Banking).

- Plaintiff cannot rebut RBC's legitimate non-discriminatory business reasons for not renewing his independent contractor agreement, let alone prove that his age was a motivating or "but for" reason behind the decision.

Finally, Plaintiff alleges that RBC retaliated against him through a letter to RMCS in which RBC reserved its right under the consulting agreement to seek indemnification from RMCS. This claim fails, too, because, as the District Court found, no reasonable person in Plaintiff's position would have been dissuaded from pursuing the then-pending EEOC charge, particularly in view of the undisputed facts that RBC never sought indemnification under the Agreement with RMCS and soon thereafter stated that it would not do so.

Plaintiff's main contention on appeal – that the District Court failed to construe the evidence in his favor and credit his "denials" of Defendants' Statement of Material Undisputed Facts – rests on a fundamental misunderstanding of what it means to dispute a material fact. Instead of citing contrary record evidence to contradict a fact, Plaintiff quibbled about its legal significance or cited

non-material facts, which, as the District Court recognized, fell far short of creating disputed issues of material fact: "The Court has also reviewed plaintiff's numbered responses [to Defendants' facts] … most of which are sweeping denials of defendants' position rather than factual disputes." (A-28, n.4)

Accordingly, the District Court's decision should be affirmed.

## ARGUMENT

## I. PLAINTIFF FAILED TO DISPUTE DEFENDANTS' UNDISPUTED MATERIAL FACTS.

Plaintiff's primary point on appeal, that the District Court engaged in a "wholesale dismissal of [his] Rule 56.1 opposition statements" (Pl. Br. 16) and "use[d] the widest brushstroke possible to paint a picture overwhelmingly favorable to the moving party, in every instance incorrectly claiming" that facts were undisputed (*id.*, 16), misses the mark entirely.[5]  Instead of citing contrary record evidence to actually dispute a material fact, Plaintiff "engage[d] in an extended quibble about their legal significance," which is not a denial at all. Torres v. Gristede's Operating Corp., 2011 U.S. Dist. LEXIS 114209, *8-9 (S.D.N.Y. Sept. 9, 2011) (citing United States v. Mottley, 130 Fed. Appx. 508, 510 (2d Cir. 2005) (quoting Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) ("[M]ere conclusory allegations or denials . . . are not evidence and cannot by

---

[5]     Plaintiff devotes the majority of his appeal arguing some variation of these themes.  *See* Pl Br. Headings II-V and XII-XIV.

themselves create a genuine issue of material fact where none would otherwise exist."))); see also Cuellar v. Love, No. 11-3632, 2014 WL 1486458, at *12 (S.D.N.Y. Apr. 11, 2014) ("Plaintiff's assertions to the contrary are also conclusory and do not create genuine issues of material fact.").[6]

In addition to quibbling about a fact's significance and import (or lack thereof), Plaintiff's "denials" added new non-material facts and argument, which courts reject when submitted in opposition to summary judgment because, like here, they "add[] argumentative and often lengthy narrative … the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make." Goldstick v. The Hartford, Inc., No. 00-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking each of plaintiff's "additional facts"); see also Costello v. New York State Nurses Ass'n, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding plaintiff's responses to defendant's Rule 56.1 Statement where plaintiff responded with conclusory assertions or legal arguments).

To buttress his conclusory argument that the District Court ignored his denials, Plaintiff highlights a single example in his appeal – the "alleged

---

[6]     Plaintiff also complains that Defendants did not respond to his "counter-statement of facts."  However, Defendants did respond, by citing competent record evidence and objecting to Plaintiff's legal argument and assertion of non-material facts, even though neither the Federal Rules of Civil Procedure nor the Local Rules require such a response.  (ECF 102, Defendants' Response to Plaintiff's Statement of Additional Facts).

undisputed material fact No. 50." (Pl. Br. 18.) Plaintiff's example instead

demonstrates that the court properly determined that his response was not a

"denial." Defendants' material fact No. 50 provides: "Plaintiff had no set

schedule at RBC and was not required to arrive or depart the office at any

particular time, take lunch or rest breaks for prescribed time periods, or clock in or

out." (ECF 78, SUF, ¶ 50). In support, Defendants relied mainly on the invoices

submitted by RMCS to RBC, and cited Plaintiff's deposition testimony and the

sworn affidavit of Mr. Shields. *Id*. Plaintiff responded:

> Object to admissibility of the asserted fact because the affiant
> Mr. Shields failed to attest to the truth, accuracy and
> authenticity of the evidence cited (See Defendants' Shields Aff.
> Ex. B), and because the evidence cited includes only the drafts
> and not the invoices signed by the Plaintiff and approved by the
> affiant Mr. Shields, which, tellingly, Defendants did provide to
> the EEOC. (b) Object to admissibility because the evidence
> cited by the Defendants does not prove their statement, which
> requires a comparison of Plaintiffs actual hours to the hours of a
> regular employee with comparable assignments and
> responsibilities, which they do not do. (c) Dispute because
> Plaintiff was in fact expected to maintain the same schedule as
> a regular employee, including being in his office during regular
> business hours, **as evidenced by the Plaintiff's invoices
> approved by RBC supervisor and manager, Patrick Shields**.

(ECF 99, Plaintiff's Rule 56.1 Response) (emphasis in original). Plaintiff cited to

his own affidavit and attached signed versions of the invoices, which only served

to prove Defendants' point. *Id*. Indeed, Defendants explained in response:

> This paragraph must be deemed admitted because Plaintiff has not disputed that the record evidence supports the facts stated herein.  The additional commentary and argument added by Plaintiff does not create a disputed material fact and the versions of the invoices Plaintiff attaches further support the fact that Plaintiff had no set schedule and was not required to arrive or depart the office at any particular time, take lunch or rest breaks for prescribed time periods, or clock in or out.

(ECF 102, Defendants' Response to Plaintiff's Statement of Additional Facts, at 28).

Plaintiff argues on appeal that this is "just one example among many where the Court ignore[d] [his] actual Rule 56.1 statements" in finding undisputed material facts.[7]  (Pl. Br. 20.)  Tellingly, this example undercuts Plaintiff's argument and highlights a central flaw in his appeal:  Plaintiff's misunderstanding that arguments are "facts," which "remain in dispute until and unless they are examined under oath at trial and the Court has the benefit of the opposing parties' testimony."  (Pl. Br. 57.)  Plaintiff's failure to understand and appreciate the summary judgment process cannot be cured by any amount of "special solicitude" for a *pro se* litigant.   In the end, there are simply "no genuine issues of material fact" precluding summary judgment.  (A- 1- 45.)

---

[7]    While not reviewed by the District Court (see A-28, n.1), the record below includes a comparison chart of the Defendants' undisputed material facts and Plaintiff's responses thereto (see ECF 102).

## II.   THE UNDISPUTED FACTS CONCERNING PLAINTIFF'S CONSULTING ARRANGEMENT WITH RBC ESTABLISH THAT HE WAS AN INDEPENDENT CONTRACTOR.

Plaintiff alleges a number of facts that, in his view, support his position that he was an employee of RBC.  Am. Compl., ¶39.   These factors appear to be derived from the twenty-factor test developed by the Internal Revenue Service. See Murray v. New York, 604 F. Supp. 2d 581, 586 (W.D.N.Y. 2009) (discussing IRS's twenty-factor test).  The IRS test is not controlling under the FLSA and NYLL.  Rather, courts in the Second Circuit apply an "economic reality test" when making the determination of whether an individual is an employee or an independent contractor under the FLSA.  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008).  "The ultimate concern [under the FLSA] is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988).

In applying the "economic reality test," a court must consider:  "(1) the degree of the employer's control over the worker; (2) the worker's opportunity for profit or loss and his investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business."  Brock, 840 F.2d 1058-59.  "No one of

these factors is dispositive; rather, the test is based on a totality of the circumstances." Id.  A similar "control test" applies to claims under the NYLL, including "whether the worker:  (1) worked at his/her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Hart v. Rick's Cabaret Int'l, Inc., No. 09-3043, 967 F. Supp. 2d 901, 923 (S.D.N.Y.  2013).  "Although 'substantially similar' to the FLSA, … the common law focuses more on 'the degree of control exercised by the purported employer,' as opposed to the 'economic reality of the situation.'" Id., at 923 (quotations omitted).  However, "[n]otwithstanding the separate NYLL inquiry … [t]here is general support for giving [the] FLSA and the New York Labor Law consistent interpretations." Id. at *924 (quotation omitted) (citing cases).  Given the consistent treatment of the FLSA and NYLL factors, Defendants analyze the relevant factors concurrently below.

As an initial matter, Plaintiff's misclassification claim under the FLSA is time-barred under the applicable two-year statute of limitations.  Kuebel v. Black & Decker Inc., 643 F.3d 352, 358 (2d Cir. 2011).[8]  Plaintiff contends that RBC

---

[8]     The FLSA only allows a three-year limitations period for a willful violation. See 29 U.S.C. § 255(a).  Plaintiff bears the burden of proof to establish that a violation of the FLSA was willful.  Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009) ("The burden is on the employee to show willfulness.").  Here, Plaintiff failed to point to any record evidence demonstrating the requisite

began treating him as an employee, rather than an independent contractor, as of

February 4, 2008, and that he continued working for RBC as an employee until

February 29, 2009.  See Am. Compl., ¶¶29, 38.  Plaintiff filed his original

Complaint on March 5, 2012,[9] well beyond the two-year limit (*e.g.*, February 29,

2011).  See Dkt. No. 1.  Therefore, all of Plaintiff's FLSA claims are time-barred

(though the NYLL claims are subject to a six-year statute of limitations).

Regardless, under any assessment of the facts, Plaintiff's relationship with RBC

was that of an independent contractor, not an employee.

- ***Plaintiff worked at his own convenience and with an admitted degree of independence.***

Plaintiff had no set schedule at RBC and took vacation and personal days at

his own convenience, often declining to provide RBC management with notice of

his planned days off -- citing his status as a consultant.  ECF 78, SUF, ¶54; see also

VTA Mgmt. Servs., Inc. v. United States, No. 01-0145, 2004 WL 3199677, at *8

(E.D.N.Y. Dec. 14, 2004) (fact that individuals set their own hours and could take

time off without approval favored independent contractor finding).  Plaintiff was

---

willfulness by RBC.  Rather, he simply relied on his own conclusory assertion that
because the Bank violated the FLSA, such violation must be willful.  (See Dkt. No.
3, Am Compl., Claims For Relief, at 1.)  Such an assertion "is insufficient to meet
[his] burden."  McLean v. Garage Mgmt. Corp., No. 10-3950, 2012 WL 1358739,
at *8 (S.D.N.Y. Apr. 19, 2012) (mere fact that defendant violated FLSA did not,
without more, render violation willful).

[9]     Plaintiff never served Defendants with his original Complaint.

never required to arrive or depart the office at any particular time, take lunch or rest breaks, or clock in or out.  ECF 78, SUF, ¶50; see also Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 602 (E.D.N.Y. 2012) ("The fact that an independent contractor is required to be at a job or at a facility at a certain time does not eliminate his status as an independent contractor.").  Further, to the extent Plaintiff worked from RBC's offices during business hours, it was merely a function of his project assignments and the fact that others with whom he interacted – third-parties and within RBC – worked during business hours, rather than a scheduling requirement of RBC.  ECF 78, SUF, ¶52.  While Plaintiff argues that the time he spent at RBC tended to mirror that of a "regular" employee, he simply cannot (and did not) dispute the complete lack of any required schedule.

- ***Plaintiff was free to engage in work for other banks, which he did, and controlled his opportunity to make a profit or loss.***

While he was under contract with RBC, Plaintiff – through his consulting company RMCS – simultaneously entered into another consulting agreement with Credit Suisse Securities (USA) LLC, a competing bank, to provide consulting services for a period of three months.  ECF 78, SUF, ¶30.  RBC specifically prohibits employees from working outside RBC without express written permission.  Id., ¶ 34. Plaintiff did not request permission, nor did RBC require such permission.  Id., at ¶ 35.  Legeno v. Douglas Elliman, LLC, 311 F. App'x 403, 405 (2d Cir. 2009) (holding plaintiffs were independent contractors because

they were "free to engage in other employment"); <u>Cannon v. Douglas Elliman, LLC</u>, No. 06-7092, 2007 WL 4358456, at *1 (S.D.N.Y. Dec. 10, 2007) (finding no employment relationship where plaintiff was "free to accept other employment"); <u>Velu v. Velocity Express, Inc</u>, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) (fact that "Plaintiff may work for other companies while continuing his relationship with [defendant]" favored independent contractor status.).

Plaintiff's attempt to minimize this key fact cannot withstand scrutiny. For example, Plaintiff cannot dispute that he performed services as an independent contractor for another bank while he was engaged with RBC. Instead, he compares the amount of time he spent providing services for both banks and argues that one pales in comparison to the other. Pl. Br., 32-33. But this is legally meaningless; the dispositive point remains that he was "free to engage in other employment" and, in fact, did so engage. <u>Legeno</u>, 311 F. App'x at 405. Indeed, the IRS observed that "[n]othing in the agreement [between Plaintiff's consulting company and RBC] stated the worker [*i.e.*, Plaintiff] could not provide services to others." ECF 103, Heckman Decl. II, Ex. A. Tellingly, the IRS found Plaintiff to be properly classified as an independent contractor based solely on the **opportunity** to provide services to others.[10]

---

[10]    Plaintiff failed to disclose to the IRS his contemporaneous agreement with Credit Suisse. ECF 103, Heckman Decl. II, Ex. A; <u>see also</u> ECF 100-1, Sellers Aff., Ex. 7.

In addition, the negotiated compensation structure of the consulting agreement meant that Plaintiff controlled his ability to generate a profit. If he logged hours in excess of the weekly capped fee, it resulted in a "loss" to RMCS insofar as RMCS received no compensation for these additional hours. (ECF 78, SUF, ¶28). By the same token, meeting, but not exceeding the balance of hours under the weekly capped fee maximized the potential resulted in a "profit" to RMCS. Id. The fact that Plaintiff did not obtain more work from other banks (except for Credit Suisse) is not dispositive. For example, if a plumbing contractor obtains a contract to install plumbing in a new high-rise building, he does not become an employee of the building's owner simply because there is so much work that he does not have the time or the inclination to seek a more lucrative contract.[11]

_____

[11]    Plaintiff also argues that he was not required to make any investment to perform services for RBC because he was provided with an office and "all the instrumentalities, tools and materials he used to complete his assignments." Pl. Br. 31-32. Plaintiff's argument ignores the business and regulatory reality of the financial services industry and overstates the importance of what he calls "tools." Unlike "blue collar" industries, the banking industry mandates a high degree of confidentiality and data security. RBC cannot permit independent contractors to access its client's (and its own) protected financial information without regulating access to its servers and networks, such as by requiring Plaintiff to use an RBC-provided computer . Moreover, Plaintiff's argument is a red herring – the "tools" critical to the performance Plaintiff's services are his knowledge and experience. To deny that Plaintiff had an independent contractor relationship with RBC because he used a secure computer and other basic office supplies, such as pens, paper, sticky notes, etc., is to place form over substance. See, e.g., ECF 103, Heckman Decl. II, Ex. A, IRS Determination.

- ***Plaintiff had a high degree of skill and independent initiative.***

Plaintiff alleged in his own pleading that he "assumed transactions of increasing complexity and importance for the bank over time, including relatively complex and sophisticated 'Pre-Paid Gas' financings and, most noteworthy, the . . . re-structuring of a large bank-syndicated liquidity and credit enhancement facility for the State of California[.]"  ECF 3,  Am. Compl., ¶53.  Plaintiff further testified that he "was entrusted to operate with a degree of independence and responsibility" for his accounts.  ECF 78, SUF, ¶29; see Schwind v. EW & Assocs., Inc., 357 F. Supp. 2d 691, 702 (S.D.N.Y. 2005) (finding independent contractor status where plaintiff exercised a high degree of skill and "was responsible for many of defendants' major clients including initial contact and the handling of their accounts"); DeSouza v. EGL Eagle Global Logistics LP, 596 F. Supp. 2d 456, 465 (D. Conn. 2009) (finding independent contractor status where plaintiff's work "requires training and calls for the exercise of independent judgment").

- ***Plaintiff worked under a series of short-term contracts, limiting the duration of his relationship with RBC.***

Though Plaintiff's relationship with RBC lasted from 2006 to February 2009, it persisted under a series of discrete, short-term contracts – none lasting over three months.  ECF 78, SUF, ¶26; see Clesi v. Zinc Corp., No. 01-374, 2001 WL 1223456, at *4 (N.D.N.Y. Oct. 11, 2001) (holding that even though relationship lasted over a six-year period, the year-to-year contracts between the

parties weighed in favor of independent contractor finding); <u>DeSouza</u>, 596 F.

Supp. 2d at 465 (holding that "a one-year contract, which was renewable for

successive one-year terms" weighed in favor of independent contractor status).

- ***Plaintiff was not an integral part of RBC's business.***

Plaintiff testified that RBC "needed an experienced banker . . .within the

municipal finance team.  I was an experienced banker."  ECF 78, SUF, ¶18.  RBC

could have brought in any "experienced banker" to consult on the projects for

which Plaintiff was engaged by RBC.  <u>Velu</u>, 666 F. Supp. 2d at 307 (fact that

plaintiff's work was interchangeable with work of other contractors favored

independent contractor finding); <u>see also</u> <u>Browning</u>, 885 F. Supp. 2d at 610 ("even

if considered integral, the Plaintiffs were easily replaceable").  Plaintiff was not

given a business card, was not introduced to clients as an employee, held no job

title and had no authority to commit RBC's balance sheet.[12]  ECF 78, SUF, ¶¶ 44-

46.  At any rate, this factor does not weigh heavily in the analysis and does not

preclude a finding that he was an independent contractor.  <u>See</u>, <u>e.g.</u>, <u>Browning</u>, 885

---

[12]    Plaintiff argues that in emails, "[i]n no place is he introduced or referred to
as a 'consultant' or 'independent contractor.'"  Pl. Br. 28.  Plaintiff's assertion is
just plain wrong.  The record evidence contains multiple emails in which Plaintiff
refers to himself as a consultant or independent contractor.  <u>See</u>, <u>e.g.</u>, ECF. 80-3,
Heckman Decl. Ex. AA ("As a consultant, I do not get any paid holidays or
vacation days. Thus, I take days when I need to take care of personal business.");
<u>see also</u> ECF 78, SUF, ¶¶51, 54 (stating that clients with whom he spoke "may be
surprised to learn [he] was working as a consultant," and telling a friend in

F. Supp. 2d at 610 (holding that "this factor only weighs slightly in favor of finding that the Plaintiffs should qualify as employees under the FLSA, and would not prevent this Court from finding, as a matter of law, that the Plaintiffs are independent contractors").

- ***Plaintiff received no fringe benefits.***

Plaintiff did not receive paid vacation or sick days during his engagement with RBC.  ECF 78, SUF, ¶48.  Indeed, he averred in his pleadings that he did not receive the "benefits of employment provided to employees doing comparable work," Dkt. No. 3, Am. Compl., ¶14, and admitted during his deposition that he did not receive even a "flu shot" or other "typical HR type benefits."  ECF 78, SUF, ¶49; see McNally v. Yarnall, 764 F. Supp. 838, 841 (S.D.N.Y. 1991) (plaintiff who "did not receive the sick leave, vacation, health insurance or other fringe benefits due other Museum employees" was an independent contractor); Velu, 666 F. Supp. 2d at 308 (same).

- ***Plaintiff was not on RBC's payroll and enjoyed the tax benefits of an independent contractor.***

At all times while performing services for RBC, Plaintiff enjoyed 1099 year-end tax treatment and had his own federal Employer ID Number.  ECF 78, SUF, ¶¶40-43.  Plaintiff invoiced RBC monthly on his own forms from RMCS to RBC,

---

February 2009 that he was "[s]till [a] consultant.").  Of course, Plaintiff cannot cite record evidence in which Defendants refer to him as an "employee."

directed how and to where RBC should make payment, filed tax returns as a sole proprietor from 2006 to 2012, and paid self-employment taxes in those same years. Id. Tellingly, in each invoice RMCS submitted, Plaintiff re-ratified the existence of his consulting business and the independent contractor relationship with RBC by explicit reference to the contracted "project" and the original August 7, 2006 Consulting Agreement. Id. See Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 118 (2d Cir. 2000) (finding independent contractor status where defendant treated plaintiff "as an independent contractor for tax purposes, giving her a '109[9]' tax form rather than a 'W-2' form, and not deducting or withholding taxes from her wages"); Frishberg v. Esprit de Corp., 778 F. Supp. 793, 799 (S.D.N.Y. 1991) (same).

Further, courts routinely find that where the hired party operates as a sole proprietorship, it is an indication of independent contractor status. Frishberg, 778 F. Supp. at 796 (independent contractor was sole shareholder of corporation through which he sold defendant's product); Dole v. Amerilink, 729 F. Supp. 73, 76 (E.D. Mo. 1990) (cable television installers "operate[d] as independent self-determining businesses as a practical reality."); EEOC v. Zippo Mfg. Co., 713 F.2d 32, 33 (3d Cir. 1983) (plaintiffs were independent contractors where, inter alia, they were free to "operate under the business form of their choice whether it be a sole proprietorship . . . a partnership or a corporation"); Thompson v. DDB

Needham Chicago, Inc., No. 95-7114, 1996 WL 392165, at *6 (N.D. Ill. July 11, 1996) (factors indicating plaintiff was independent contractor included fact that plaintiff "invoiced payment … under the name of his business").

Finally, Plaintiff certified under penalty of perjury to the government throughout 2006 to 2012 that he operated a legitimate business as a non-employee and received tax deductions otherwise unavailable to employees, which is the status Plaintiff now seeks in this lawsuit.  ECF 78, SUF, ¶¶ 40-42.  Plaintiff's repeated sworn prior representations to the government undercut, to say the least, his claims now in this litigation.  See Deboissiere v. Am. Modification Agency, No. 09-2316, 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010) ("though not quite rising to the level of estoppel, if a plaintiff signs a tax return "under penalty of perjury" that declares independent contractor status and seeks "numerous deductions for business purposes associated with independent contractor status," such a tax return may significantly impede the plaintiff's ability to claim employee status for purposes of filing an overtime or minimum wage claim); Browning, 885 F. Supp. 2d at 605 ("[T]he Plaintiffs all sought significant tax benefits associated with their independent contractor status in connection with [defendant], which the Court takes into serious consideration.").

In the end, Plaintiff cannot escape the overwhelming weight of the undisputed facts that demonstrate that he was properly classified under both the FLSA and NYLL as an independent contractor in 2008 and 2009.

## III. EVEN IF PLAINTIFF COULD BE CONSIDERED AN EMPLOYEE (WHICH HE WAS NOT), HE WOULD BE STATUTORILY EXEMPT FROM OVERTIME PAY AND STILL WOULD HAVE NO COMPENSABLE DAMAGES.

Plaintiff does not seek recovery of unpaid overtime compensation in this case. (ECF 3, Am. Compl., §IV, ¶62). However, even if he did, and assuming, *arguendo*, Plaintiff could demonstrate that he was an employee (which he decidedly was not), he would nonetheless be administratively exempt from the FLSA and NYLL's overtime requirements and as a result, have no wage and hour damages. See 29 U.S.C. § 207(a); 29 CFR §§ 541.400, 541.601. The FLSA expressly exempts from its overtime requirement any employee who is paid a salary and works in a "bona fide … administrative … capacity." Id.[13] The administrative exemption is satisfied in the case of an employee who is compensated "on a salary or fee basis at a rate of not less than $455 per week", 29 C.F.R. § 541.200(a), and "whose primary duty [consists of either] the performance

---

[13]    The analysis of whether exemptions are applicable to an employee proceeds identically under the FLSA and NYLL. Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 10-2603, 2011 WL 1453791, at *5 n.3 (S.D.N.Y. Apr. 13, 2011) ("New York Labor Law is nearly identical to FLSA with respect to these overtime requirements and exemptions and are analyzed in the same manner.") (internal quotations omitted).

of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers" which "includes [work requiring] the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(2)-(3).  In addition, "a highly compensated employee [like Plaintiff] will qualify for exemption if [he] customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . ."  29 C.F.R. § 541.601(c).[14]

Plaintiff avers that "[t]he duties of a municipal/public finance banker at RBC include evaluating and negotiating financial terms and related documentation for transactions that would commit RBC's balance sheet."  (ECF 3, Am. Compl., ¶20 n.1).  He further claims that he "assumed transactions of increasing complexity and importance for the bank over time, including relatively complex and sophisticated 'Pre-Paid Gas' financings and, most noteworthy, the . . . re-structuring of a large bank-syndicated liquidity and credit enhancement facility for the State of

---

[14]     An employee is deemed "highly compensated" if he earns total annual non-discretionary compensation of at least $100,000.  See 29 C.F.R. § 541.601(a). Plaintiff indisputably earned more than $100,000 annually as a result of his consulting work for RBC.  (ECF 78, SUF, ¶38).  Therefore, he satisfies the "highly compensated" requirement and RBC need only demonstrate that he customarily and regularly performed any one or more of the exempt duties or responsibilities of an administrative employee.

California[.]"  Id., ¶53.  At his deposition, Plaintiff testified that he was involved in structuring commercial paper transactions and "was entrusted to operate with a degree of independence and responsibility" for his accounts.  (ECF 78, SUF, ¶ 29).

As a result, Plaintiff's primary duties satisfy the requirements of the administrative exemption.  Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 10-2603, 2011 1453791, at *6 (S.D.N.Y. Apr. 13, 2011) (plaintiff was administratively exempt where she "was given reasonable latitude in carrying on negotiation[s] on behalf of" bank and clients); O'Neill-Marino v. Omni Hotels Mgmt. Corp., No. 99-3793, 2001 WL 210360, at *9 (S.D.N.Y. Mar. 2, 2001) (employee who "negotiated contracts and price terms with clients" was administratively exempt).  Accordingly, even if found to be a common law employee, Plaintiff would not be entitled to any overtime damages.[15]

Similarly, Plaintiff cannot seek compensation for any minimum wage violation, as he was undisputedly compensated at an annualized rate of approximately $288,000.  ECF 78, SUF, ¶38.  To the extent Plaintiff contends he was denied sick pay, vacation pay and similar fringe benefits afforded to RBC employees, Plaintiff would have been considered an at-will employee and had no legally enforceable entitlement to such benefits.  Id., ¶2; see, e.g., Edwards v.

---

[15]    Notably, Plaintiff does not contest that the salary basis test would be satisfied.  (Pl. Br. 8, ¶ 10) ("[I]t was understood between the parties he was now in effect being paid a salary, using his former hourly rate as a basis.").

Schrader-Bridgeport Int'l, Inc., 205 F. Supp. 2d 3, 15 (N.D.N.Y. 2002) (rejecting claim of vacation pay and other benefits as damages in employment action, and noting, "because Plaintiff did not have an employment contract, but rather was an at-will employee, he possesses no entitlement to vacation pay").[16]  Further, as addressed below at 44-46, infra, Plaintiff cannot recover for any alleged lost benefits arising under RBC's ERISA-governed benefit plans.  Therefore, Plaintiff has no basis for compensatory damages arising from his FLSA and NYLL claims.[17]

## IV.    PLAINTIFF'S ERISA CLAIM IS WITHOUT MERIT BECAUSE HE ADMITS THAT HE FAILED TO EXHAUST ADMINISTRATIVE PROCEDURES AND, EVEN IF HE HAD, THE PLANS SPECIFICALLY EXCLUDE INDEPENDENT CONTACTORS AND INDIVIDUALS CLASSIFIED AS INDEPENDENT CONTRACTORS.

Plaintiff's independent contractor status precludes any cause of action under ERISA.  Nationwide Mut. Ins. Co. v. Mortensen, 606 F.3d 22, 32 (2d Cir. 2010) (affirming dismissal of ERISA claim because plaintiffs were not employees). Even if Plaintiff could somehow establish that he was a common law employee

---

[16]    Of course, here, the parties entered into a contract, which indisputably did **not** provide any right to benefits.  (ECF 78, SUF, ¶6).

[17]    Plaintiff failed to address any of these arguments in opposition to summary judgment and thus, abandoned any claim to these alleged damages.  Douglas v. Victor Capital Grp., 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (deeming claims abandoned where plaintiff failed to respond to summary judgment argument).

(which he cannot do), his ERISA claim still fails for two reasons.  First, Plaintiff

failed to exhaust the administrative procedures provided for in the Plans. He admits

he never filed any claim for the benefits he seeks.  (ECF 78, SUF, ¶81).  Therefore,

Plaintiff's ERISA claim fails as a matter of law.  See Davenport v. Harry N.

Abrams, Inc., 249 F.3d 130, 135 (2d Cir. 2001) (dismissing independent

contractor's ERISA claim for failure to exhaust administrative remedies);

Kesselman v. Rawlings Co., 668 F. Supp. 2d 604, 609 (S.D.N.Y. 2009) (same).

Even assuming, *arguendo*, that Plaintiff was a common law employee and

that he exhausted administrative remedies, he was unquestionably not an "eligible

employee" under RBC's benefit plans.  For instance, the RBC-USA Medical

Program Summary Plan Description ("SPD") unambiguously states that "persons

not classified by RBC as eligible employees, such as … contract employees, are

not eligible for benefits.  RBC's classification of a person as an employee or non-

employee is conclusive and binding for purposes of benefit eligibility."  (ECF 78,

SUF,  ¶1).  The other Plans contain similar language.  Id.  Plaintiff was

unquestionably classified by RBC as a non-employee independent contractor –

indeed, Plaintiff so alleges in his Amended Complaint.  (ECF 3, Am. Compl., ¶14).

Plaintiff's classification as a non-employee renders him ineligible for any benefits

under the Plans.  Downes v. J.P. Morgan Chase & Co., No. 03-8991, 2006 WL

785278, at *12-13 (S.D.N.Y. Mar. 21, 2006) (dismissing ERISA claim because

plaintiff was ineligible for benefits under plan whose language excluded "any

person who is considered by the Employer to be rendering services as or to an

independent contractor"); Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d 311, 321

(S.D.N.Y. 2001) (deferring to plan administrator's interpretation of plan terms,

finding plaintiff-independent contractor ineligible for benefits) (citations omitted);

Scruggs v. ExxonMobil Pension Plan, 585 F.3d 1356, 1365 (10th Cir. 2009)

(deferring to plan administrator's interpretation, finding 21-year service

independent contractor ineligible for benefits under terms of the plan).[18]

Accordingly, Defendants were properly granted summary judgment on Plaintiff's

ERISA claim.

## V.    PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF AGE DISCRIMINATION.

As an initial matter, Plaintiff may not pursue an age discrimination claim

under the ADEA or NYSHRL because those laws only cover employees, not

independent contractors.   See, e.g., Legeno v. Douglas Elliman, LLC, 311 F.

App'x at 405 ("independent contractor position is not covered by the ADEA"); Lee

v. Glessing, 51 F. App'x 31, 32 (2d Cir. 2002) ("New York's Human Rights Law

cover only employees.").  For his NYCHRL claim, Plaintiff must establish that his

---

[18]    In analogous situations, the Supreme Court repeatedly has enforced the written terms of a plan.  See, e.g., Heimeshoff v. Hartford Life & Accident Co., 134 S. Ct. 604, 612 (2013) ("[W]e have recognized the particular importance of enforcing plan terms as written in § 501(a)(1)(B) claims.").

age was a motivating factor for RBC's decision.  See Sheridan v. N.Y. Life Inv.
Mgmt., LLC, No. 09-4746, 2012 U.S. Dist. LEXIS 18525, at *15 (S.D.N.Y. Feb.
9, 2012).  In the unlikely event that Plaintiff is found to be an employee under the
ADEA and/or NYHRL, he bears the higher burden of establishing that "age was
not just a motivating factor behind the adverse action, but rather the 'but-for' cause
of it." Sotomayor v. City of New York, 862 F. Supp. 2d 226, 253 (E.D.N.Y.
2012); see also Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009);
Ruszkowski v. Kaleida Health Sys., 422 F. App'x 58, 60 n.2 (2d Cir. 2011).

Under either standard, Plaintiff must first establish a *prima facie* case of
discrimination by demonstrating that:  "(1) he is a member of a protected class; (2)
he was qualified for the position for which he applied; (3) he was denied the
position; and (4) the denial occurred under circumstances giving rise to an
inference of discrimination." Ruszkowski, 422 F. App'x at 60 (citation omitted).[19]
In other words, Plaintiff must proffer admissible evidence that he was denied
employment with RBC under circumstances giving rise to an inference of age
discrimination.  See Shortt v. Congregation KTI, No. 10-2237, 2013 U.S. Dist.
LEXIS 4094, at *27 (S.D.N.Y. Jan. 9, 2013).  No such evidence exists here.

---

[19]    Plaintiff must proceed under the three-step burden shifting analysis first
articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also
Sheridan v. N.Y. Life Inv. Mgmt., LLC, No. 09-4746, 2012 U.S. Dist. LEXIS
18525, at *13-14 (S.D.N.Y. Feb. 9, 2012) (noting that New York State and New
York City claims are analyzed under the same framework as ADEA claims).

A critical element of Plaintiff's *prima facie* case is that he must have actually applied for the position in question.  Ruszkowski 422 F. App'x at 60. Here, Plaintiff never applied for a position with RBC – indeed, he admitted during his deposition that there were no open positions.  (ECF 78, SUF, ¶67).  This admission dooms his claim.   See Gaffney v. Dep't of Info. Tech. & Telecomm'ns, 536 F. Supp. 2d 445, 460 (S.D.N.Y. 2008) ("[Plaintiff] cannot establish a *prima facie* case because she did not apply for either position"); Walsh v. NBC, No. 83-6102, 1987 WL 16131, at *3 (S.D.N.Y. Jan. 7, 1987) (same); Alleva v. N.Y.C. Dep't of Investigation, 696 F. Supp. 2d 273, 282 (E.D.N.Y. 2010), aff'd, 413 F. App'x 361 (2d Cir. 2011) (same).

Even if Plaintiff could clear this hurdle, there is no evidence of discriminatory animus.  Plaintiff has never adduced evidence that Defendants replaced Plaintiff in any capacity – whether by retaining the services of a younger contractor or employee.  Mr. Shields, the "decision-maker" who allowed the consulting agreement to expire,[20] was himself over forty at all relevant times. (ECF 78, SUF, ¶15).  See Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 395 (S.D.N.Y. 2012) (finding that where the decision-maker is within the age-protected class, it precludes an inference of age discrimination);

---

[20]    Notably, the RMCS contract expired during the maelstrom of the U.S. and Global financial crisis.   ECF 78, SUF, ¶58.

48

Davis v. Peake, No. 08-3570, 2011 U.S. Dist. LEXIS 107380, at *19 (S.D.N.Y. Sept. 20, 2011), aff'd, 505 F. App'x 67 (2d Cir. 2012) (same); Grant v. Roche Diagnostics Corp., No. 09-1540, 2011 U.S. Dist. LEXIS 79994, at *31 (E.D.N.Y. July 20, 2011) (same).

Further, Mr. Shields also initially engaged RMCS in February 2008 and thereafter extended the contract five times.  (ECF 78, SUF, ¶¶19, 26).  As the District Court recognized (A-42), it is simply illogical to suggest that Mr. Shields developed a sudden discriminatory animus toward Plaintiff, on the basis of age, only 13 months after originally engaging Plaintiff, and only three months after last renewing his contract.  Velasquez v. Goldwater Mem'l Hosp., 88 F. Supp. 2d 257, 263 (S.D.N.Y. 2000) ("When the person who made the decision to hire plaintiff is the same person who made the decision to fire plaintiff, it is difficult to impute an invidious motivation . . . inconsistent with the decision to hire.   [T]he inference is even weaker when the decision to terminate occurred shortly after the decision to hire.") (internal citation omitted); Grossman v. Dillard Dep't Stores, Inc., 109 F.3d 457, 459 (8th Cir. 1997) (granting summary judgment for employer in part because "reasonable people [could not] swallow" that employer developed discriminatory

intent within just four years of hiring plaintiff).[21]  Accordingly, Plaintiff did not, and cannot, establish a *prima facie* case of age discrimination.

## VI.    PLAINTIFF CANNOT REBUT RBC'S LEGITIMATE, NON-DISCRIMINATORY REASONS.

Here, Plaintiff failed to "produce 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons' presented by [RBC] were false, and that 'more likely than not discrimination was the real reason for the employment action.'"  Mavrommatis v. Carey Limousine Westchester, Inc., 476 F. App'x 462, 465 (2d Cir. 2011) (citations omitted).  Plaintiff contends that RBC's decision to hire "more junior [and thereby lower-paid] employees to work in public finance" was a form of discrimination.  (ECF 78, SUF, ¶79).  However, courts in the Second Circuit repeatedly have rejected Plaintiff's argument.  See Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 117 ( 2d Cir. 1991) ("nothing in the ADEA . . . prohibits an employer from making employment decisions that relate an

---

[21]    Plaintiff argues that the Court should reject such well-founded theories on the record here because "Mr. Shields **may** have many different motivations and pressures in the workplace to make employment decisions" and the "presumption permitted under the 'same actor' defense should not be accepted as a substitute for a thorough factual inquiry."  Pl. Br. 36 (emphasis added).  Plaintiff misses the point.  The record evidence is undisputed regarding Mr. Shields' reasons for making his decision and Plaintiff's untethered speculation that Mr. Shields may recant such testimony is plainly insufficient to avoid summary judgment.  See Matsushita Elec. Indus. Co., 475 U.S. at 586 (the non-moving party must set forth "specific facts showing that there is a genuine issue for trial") (quoting Fed. R. Civ. P. 56(e)).

employee's salary to . . . the responsibilities entailed in particular positions and

concluding that an employee's salary is too high"); Ashton v. Pall Corp., 32 F.

Supp. 2d 82, 89 (E.D.N.Y. 1999) ("[T]he ADEA does not prohibit an employer

from acting out of a concern for excessive costs, even if they arise from age-related

facts – such as that employees with long seniority command a higher salary and

benefits [more] expensive than new hires"); Lorenzo v. St. Luke's–Roosevelt

Hosp. Ctr., 837 F. Supp. 2d 53, 65 (E.D.N.Y. 2011) ("Hiring . . .younger workers

for junior positions, without more, does not demonstrate age-based

discrimination."); Dent v. U.S. Tennis Ass'n, No. 08-1533, 2011 WL 308417, at

*8 (E.D.N.Y. Jan. 27, 2011) (same); Lewis v. Hill, No. 97-3213, 2005 WL 292748,

at *7 (S.D.N.Y. Feb. 8, 2005) (same); e.g., Witkowich v. Gonzales, 541 F. Supp.

2d 572, 582 (S.D.N.Y. 2008) ("We are not to act as a 'super personnel

department,' second guessing the merits of defendants' legitimate business

decisions") (internal citations omitted), aff'd sub nom. Witkowich v. U.S. Marshals

Serv., 424 F. App'x 20 (2d Cir. 2011).  Tellingly, Plaintiff admits that the term

"junior" does not necessarily equate to age-based animus:  "Well, junior people

means several things … In theory they could hire somebody older than me who is,

in fact, junior … ."  (ECF 78, SUF, ¶80).

    Plaintiff also cites as evidence of age discrimination the fact that RBC

transferred Jake Sigmund, already a full time employee, to be the Director of

Municipal Finance after Mr. Birr's departure in October of 2008. (ECF 3, Am.

Compl., ¶¶57-58). Although that decision is outside the statute of limitations,[22]

RBC selected Mr. Sigmund due to his real estate background and strong credit

underwriting skills. (ECF 78, SUF, ¶63). At the time, a large portion of RBC

Municipal Finance's loan book was tied to real estate exposure (approximately

15% of notional commitments and 30% of the overall client base) and there were

growing concerns, in light of the historic market downturn and associated property

devaluation occurring in late-2008, about increasing loan exposure relating to real

estate.[23] Id. In RBC's estimation, Plaintiff had no comparable work experience

relating to real estate. (Id., at ¶64).

Finally, Plaintiff attempts to paint a discriminatory atmosphere with

impermissibly broad brush strokes in noting that "there were four (4) individuals

---

[22]    An untimely "discriminatory act … may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is **merely an unfortunate event in history which has no present legal consequences**." United Air Lines v. Evans, 431 U.S. 553, 558 (U.S. 1977) (emphasis added), superseded by statute as stated in Groesch v. City of Springfield, 635 F.3d 1020 (7th Cir. 2011). However, "because, as [noted] above, the claim based on [Mr. Sigmund's transfer] fails for independent reasons, the background facts are irrelevant." Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004).

[23]    Numerous news sources documented the tumult in the market in and around 2008. (ECF 78, SUF, ¶58) ("[T]he world economy faced its most dangerous crisis since the Great Depression of the 1930s … The casualties in the United States included [] the entire investment banking industry … .").

over the age of 40 reporting to Mr. Shields … and the employment of all four individuals was terminated within six months … ."  (Pl. Br. 40-41.)  Once again, Plaintiff misses the mark.  First, there is no record evidence that any of these individuals were similarly-situated to Plaintiff.  Second, there is no record evidence whatsoever concerning their respective separations (including whether they were voluntary or involuntary), let alone that age played any role.  Plaintiff's baseless finger pointing is not enough to establish the required showing of pretext.  See Rommage v. MTA Long Island R.R., No. 08-836, 2010 WL 4038754, at *9 (E.D.N.Y. Sept. 30, 2010) (granting summary judgment because plaintiff could not establish pretext by pointing to defendant's treatment of other employees); Bailey v. Synthes, 295 F. Supp. 2d 344, 356 (S.D.N.Y. 2003) ("[O]ther employees' allegations that their adverse employment experiences were the product of discrimination are insufficient to rebut [defendant's] proffered reasons").  In the end, as the District Court noted, "[t]he termination of other individuals within the protected age class … does not create an issue of fact with respect to plaintiff."  A-42.

In sum, Plaintiff did not, and cannot, offer any record evidence to demonstrate that the reasons underlying RBC's decision were a pretext for discrimination.  Rather, he relies on his own subjective impression of Mr. Sigmund's suitability for the position and his baseless mischaracterization of

RBC's exercise of business judgment (*e.g.*, "youth was prioritized over experience and business judgment."). (Pl. Br. 41). Neither is sufficient to rebut RBC's legitimate reasons for its decision to hire Mr. Sigmund. See, e.g., Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("A party may not rely on mere speculation or conjecture … [m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citations omitted); Alvarez v. Nicholson, No. 03-4173, 2005 U.S. Dist. LEXIS 45744, at *17 (S.D.N.Y. Aug. 3, 2005) ("Plaintiff's personal belief that [he] was more qualified for the position … is therefore insufficient to rebut Defendants' nondiscriminatory reason…"); Kelderhouse v. St. Cabrini Home, 259 A.D.2d 938, 939 (3d Dep't 1999) (dismissing NYSHRL age discrimination claim where "plaintiff merely argues that he was replaced with someone 20 years his junior and that he 'steadfastly believe[s] he was terminated because of his age. These conclusory statements were insufficient to defeat defendants' motion."); Pasha v. William M. Mercer Consulting, Inc., No. 00-8362, 2004 U.S. Dist. LEXIS 1226, at *25 (S.D.N.Y. Feb. 2, 2004) (explaining "it is not the Court's role to police the employer's judgment and ensure that the best qualified person is hired"), aff'd, 135 F. App'x 489 (2d Cir. 2005).[24]

---

[24]    Even if Plaintiff's discrimination claims could survive summary judgment (which they did not and should not), he may not recover damages for emotional distress under the ADEA. Courtney v. City of New York, 20 F. Supp. 2d 655, 660

## VII. PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE HE WAS NOT SUBJECTED TO AN ADVERSE ACTION.

Plaintiff asserts a retaliation claim premised solely on RBC's February 5, 2010 letter to RMCS which, per the terms of the consulting agreement between RBC and RMCS, reserved RBC's right to potentially seek indemnification for "any and all employment benefit obligations allegedly owed by RBC to RMCS employees, arising from the parties' prior consulting relationship" related to defending Plaintiff's EEOC charge.  (ECF 78, SUF, ¶82).  There is no question

---

(S.D.N.Y. 1998).  Though such damages are available under the NYSHRL or NYCHRL, Plaintiff offers nothing in support of such an award save his own testimony that, as a result of the non-renewal of the consulting agreement, he is "living with stress, financial stress all the time . . . ."  (ECF 78, SUF, ¶89). Plaintiff has not sought any medical treatment.  Id., ¶90.  This is plainly not enough.  See, e.g., Katt v. City of New York, 151 F. Supp. 2d 313, 350 (S.D.N.Y. 2001) (emotional distress award was warranted where plaintiff's psychologist "testified that … [plaintiff] suffers … symptoms as a direct consequence of the sexual harassment…"), aff'd in relevant part sub nom. Krohn v. New York City Police Dep't, 60 F. App'x 357 (2d Cir. 2003).  "[The] ADEA does not allow for punitive damages in any form."  Greenbaum v. Handelsbanken, 67 F. Supp. 2d 228, 265 (S.D.N.Y. 1999).  Plaintiff is similarly unable to recover punitive damages under the NYSHRL.  Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir. 2001).  Plaintiff may pursue punitive damages under the NYCHRL only "where the defendant has engaged in intentional discrimination and has done so with malice or with reckless indifference … ."  Caravantes v. 53rd St. Partners, LLC, No 09-7821, 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012).  When asked at his deposition, Plaintiff was unable to point to any conduct by RBC that could give rise to a punitive damage award.  (ECF 78, SUF, ¶91).  At most, he testified that "I believe the actions of the defendants . . . was willful, okay, was willful and it caused me significant harm."  (Id.)  Such bald assertions do not suffice to support an entitlement to punitive damages.  Short v. Manhattan Apts., Inc., 916 F. Supp. 2d 375, 402 (S.D.N.Y. 2012) (punitive damages unavailable "since there is no evidence of malice").

55

that RMCS' independent contractor agreement contained an indemnification clause and Plaintiff admits that RBC subsequently withdrew its request for reimbursement for those costs on June 28, 2011.  Id., at ¶ 83.  Plaintiff further admits that RBC issued no subsequent notice.  Id., at ¶84.  Thus, this claim fails as a matter of law because a reasonable person in Plaintiff's position would not be (and he, in fact, was not) dissuaded from filing or supporting an EEOC charge.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69-70 (U.S. 2006) ("By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct").  Simply put, "[c]ontext matters."  Id. at 69.

Here, Plaintiff is a well-educated, experienced sole proprietor of a business that entered multiple contracts with RBC and another bank, who earned nearly $300,000 per year.  ECF 78, SUF, ¶31, 38.  In this "context," the court correctly concluded that a reasonable person in Plaintiff's position would not be dissuaded by the invocation of a contract's indemnification provision.  Further, there is no evidence of an actual adverse effect to which Plaintiff can point as a result of RBC's reservation of rights.

Moreover, Plaintiff's retaliation claim fails because he cannot prove that RBC's legitimate non-retaliatory reason for reserving its contractual rights – i.e., the independent contractor agreement – was merely a pretext for retaliation.  See

Leacock v. Nassau Health Care Corp., No. 08-2401, 2013 WL 4899723, at *11

(E.D.N.Y. Sept. 11, 2013) ("[D]uring the final stage of the burden shifting frame-

work, the plaintiff must show that retaliation was a but-for cause of the adverse

employment action.") (internal citation and quotations omitted); e.g., Martin v.

Gingerbread House, Inc., 977 F.2d 1405, 1406-08 (10th Cir. 1992) (affirming

holding that a third-party complaint for indemnification did not constitute unlawful

retaliation under the FSLA because it was not objectively baseless).

## VIII. THE DISTRICT COURT DID NOT ABUSE ITS WIDE DISCRETION IN CURTAILING PLAINTIFF'S OVERBROAD, IRRELEVANT AND CUMULATIVE DISCOVERY REQUESTS; PLAINTIFF WAS PROVIDED WITH FULSOME DISCOVERY.

Plaintiff summarily argues that "defendant's tactical abuse of discovery,

including overwhelming the *pro se* plaintiff with 345 objections, denied plaintiff

access to evidence and prevented [him] from deposing witnesses." (Pl. Br. 51.)

Plaintiff is wrong on both the law and the facts.

First, Plaintiff failed to meet the requirements of Fed. R. Civ. P. 56(d).

While Plaintiff vaguely alluded to discovery disputes in his opposition to summary

judgment (ECF 97, Plaintiff's Opposition to Summary Judgment, at 5-6), nowhere

did he explain the "specified reasons[] [he] [could not] present facts essential to

justify [his] opposition." Fed. R. Civ. P. 56(d). Courts routinely reject bald claims

for more discovery when "the request [is deemed] to be based on speculation as to

what potentially could be discovered." Bjork v. Eastman Kodak Co., 189 F. Supp. 2d 3, 12 (W.D.N.Y. 2001) (citing Gray v. Town of Darien, 927 F.2d 69, 74 (2d Cir.) ("[i]n a summary judgment context, an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion'") (quoting Contemporary Mission, Inc. v. United States Postal Serv., 648 F.2d 97, 107 (2d Cir.1981)), cert. denied, 502 U.S. 856 (1991)); see also Capital Imaging Assoc. v. Mohawk Valley Medical Assoc., 725 F. Supp. 669, 680 (N.D.N.Y. 1989) (citing Waldron v. Cities Serv. Co., 361 F.2d 671, 673 (2d Cir. 1966)) (citations omitted) (while "Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case … it does not permit a plaintiff to engage in a 'fishing expedition'"), aff'd, 996 F.2d 537 (2d Cir.), cert. denied, 510 U.S. 947 (1993).

Here, both on summary judgment below and now on appeal, "Plaintiff does not point to . . . any evidence [he] could elicit through additional discovery which would prevent this action from succumbing to [D]efendants' summary judgment motion." Bjork, 189 F. Supp. 2d at 12.   Rather, Plaintiff rests on his incorrect observation that the District Court "did not grant a single one of [his] discovery requests."  (Pl. Br. 51).  Contrary to Plaintiff's hyperbolic contentions, the District Court did not deny "every one of his requests" (Pl. Br. at 51), but rather exercised

its wide discretion to curtail his unwieldy requests. (ECF 49, 9/17/2013 Endorsed

Letter). The record before the District Court revealed that:

- Defendants had produced over 15,000 pages of responsive documents;

- Defendants responded to 20 Interrogatories and 61 Document Requests;

- Defendants produced the **entire contents** of all three of Plaintiff's email accounts (going back to 2007), and emails from **eight** other custodians; and

- Plaintiff admitted that he had not even reviewed the discovery provided by Defendants before filing his motion to compel (ECF 62, 10/14/2013 letter from August W. Heckman).

Nevertheless, the District Court ordered Defendants to produce the

following documents and/or information:  "a list of all of Defendants' employees

who were involved in Plaintiff's termination; any formal document setting forth

Defendants' hiring and firing policies related to independent contractors; any

formal document setting forth Defendants' hiring and firing policies related to

employees; and a job description of an exemplar individual (either an employee or

contractor of Defendants) whose position is or was as similar as possible to

Plaintiff."[25]  (ECF 64, 10/15/2013 Order of District Court).  Plaintiff conveniently

---

[25]    Defendants timely responded to the district court's order on October 18 by furnishing the ordered information, referring to previously produced documents containing some of the information sought, and even producing additional documents responsive to the court's order (including template independent contractor agreements and job descriptions).  (ECF 65, 10/18/2013 letter from

overlooks this order and the above facts when arguing that the District Court "denied every one of his requests." (Pl. Br. at 51.)

Further, Defendants made every effort to accommodate Plaintiff in making witnesses available for deposition. For example, on August 14, 2013, Defendants wrote Plaintiff to address certain deficiencies in Plaintiff's discovery responses and asked Plaintiff to "please promptly advise who you will be seeking to depose so that we can ascertain availability and make arrangements for scheduling." (ECF 45-2, 8/14/13 letter from Defendants to Plaintiff, at 4). On August 18, 2013, Plaintiff advised that he could not identify everyone he wanted to depose, but "you may count on Pat Shields, at least." (ECF 45-2, 8/19/13 letter from Plaintiff to Defendants, at 19). Yet, Plaintiff never served a single deposition notice, nor did he ever ask to schedule Mr. Shields' debt facility restructure deposition. Indeed, on September 26, 2013, in the context of a discovery dispute, Defendants advised the court that "Plaintiff has refused to schedule depositions." (ECF 55, 9/26/13 letter from Defendants (endorsed), at 2). Simply put, Plaintiff had ample opportunity to conduct depositions.

---

August W. Heckman). Plaintiff again challenged the sufficiency of Defendants' responses (ECF 67, 10/22/2013 letter from Plaintiff), to which the court responded by ordering Defendants to inform the court within three business days whether they had complied with its order by producing all available, responsive documents and information (ECF 68, 10/24/2013 Memo Endorsement by District Court). Defendants affirmed their compliance and subsequently moved for summary judgment.

Far from reflecting any abuse of discretion or a pattern or one-sided discovery rulings, the record below plainly reflects that the District Court gave fair and adequate consideration to the parties' discovery disputes, and properly exercised its wide discretion in limiting the scope of discovery to relevant and discoverable materials. The District Court ordered Defendants to produce documents and information in response to certain of Plaintiff's discovery requests, and ordered Defendants to affirm compliance with that order when Plaintiff raised objections to their responses. Plaintiff has utterly failed to establish any showing, let alone a "clear showing, of an abuse of discretion" by the District Court.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully that the Court affirm the District Court's granting of Defendants' Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.

Dated: August 11, 2014                 Respectfully submitted,

                                       */s James P. Walsh*
                                       James P. Walsh
                                       August W. Heckman III
                                       MORGAN LEWIS & BOCKIUS, LLP
                                       502 Carnegie Center
                                       Princeton, NJ 08540
                                       *Attorneys for Defendants Royal Bank of*
                                       *Canada, RBC USA Holdco Corporation,*
                                       *RBC Capital Markets LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, James P. Walsh, an attorney, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C)(i), certify that the foregoing Brief of Defendants-Appellees Royal Bank of Canada, RBC USA Holdco Corporation and RBC Capital Markets LLC, complies with the type-volume limitations of Rule 32(a)(7)(B). The Brief contains less than 14,000 words, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), and was prepared using Microsoft Word 2007.

  /s/ *James P. Walsh*
James P. Walsh

# **CERTIFICATE OF SERVICE**

I, James P. Walsh, an attorney, certify that on August 11, 2014, I caused to be served the foregoing Brief of Defendants-Appellees Defendants-Appellees Royal Bank of Canada, RBC USA Holdco Corporation and RBC Capital Markets LLC, by mailing two paper copies of the Brief via Federal Express, and transmitting one electronic copy of the Brief via electronic mail, to:

**Plaintiff-Appellant**         24 East Prospect Street
**David Sellers**                 Hopewell, NC 08525
(***pro se***)                      sellers.david@yahoo.com

                                  /s/ *James P. Walsh*
                                  James P. Walsh