# 14-302-cv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

DAVID SELLERS,

*Plaintiff-Appellant,*

v.

THE ROYAL BANK of CANADA, RBC USA HOLDCO CORPORATION, RBC CAPITAL MARKETS CORPORATION, LLC, and JOHN DOES 1-5,

*Defendants-Appellees*

On Appeal from the United States District Court
for the Southern District of New York

**REPLY BRIEF OF *PRO SE* PLAINTIFF-APPELLANT DAVID SELLERS**

David Sellers, *Pro Se*
24 East Prospect Street
Hopewell, New Jersey 08525
609-466-1354; 609-468-8437

TABLE OF CONTENTS

| | | Page(s) |
|---|---|---|
| Table of Contents | | i |
| Table of Authorities | | ii |
| Statutes | | iii |
| Summary of Argument | | 1 |
| Arguments | | 4-31 |
| I. | DEFENDANTS' FACTUAL ASSERTIONS REMAIN DISPUTED AND MATERIALLY MISLEADING | 4 |
| II. | DEFENDANTS' VIOLATIONS OF FLSA WERE WILLFUL: ARGUMENT THAT FLSA CLAIMS ARE TIME-BARRED FAILS AS A MATTER OF PROCEDURE AND LAW | 6 |
| III. | DEFENDANTS' FAILED TO CARRY THE BURDEN OF PROVING THAT THE FLSA ADMINISTRATIVE EXEMPTION APPLIES | 12 |
| IV. | PLAINTIFF COULD NOT FAIL TO EXHAUST NON-EXISTANT ERISA ADMINISTRATIVE REMEDIES | 19 |
| V. | DEFENDANT'S FAIL TO DEFEAT PLAINTIFF'S "SAME ACTOR" REBUTTAL | 22 |
| VI. | DEFENDANTS NEVER DID IN FACT WITHDRAW THEIR THREAT OF RETALIATION | 23 |
| VII. | DEFENDANTS' "REASONABLE PERSON" STANDARD IS FATALLY FLAWED | 24 |
| VIII. | DEFENDANTS REMAIN SILENT ON RETALIATION BURDEN SHIFTING FRAMEWORK | 27 |
| IX. | DEFENDANTS' REFERENCE TO PLAINTIFF'S RECENT EMPLOYMENT IS RETALIATORY | 28 |
| X. | SELECT ADDITIONAL REBUTTALS OF FACTUAL ASSERTIONS | 31 |

Conclusion ........ 32

Certificate of Compliance ........ 33

Certificate of Service ........ 34

TABLE OF AUTHORITIES

**Federal Cases** Page(s)

Bertin v. United States,
478 F.3d 489, 491 (2d Cir. 2007) ........ 3

Brock v. Superior Care,
840 F.2d 1054, 1058, 1059, 1060 (2d Cir.1988) ........ 5, 21

Dickerson v . Napolitano,
604 F.3d 732, 740 (2d Cir. 2010) ........ 3

Douglas v. Victor Capital Group,
21 F. Supp. 2d 379 (S. D. N. Y. 1998) ........ 12

Hart v. Rick's Cabaret Int'l, Inc.,
No. 09 Civ. 3043(PAE), — F. Supp.2d —, 2013 WL 4822199, at *4-5 (S.D.N.Y. Sept. 10, 2013) ........ 5, 21

Kwan v. The Andalux Group LLC,
12-2493-cv (2d Cir. December 16, 2013) ........ 27

McLaughlin v. Richland Shoe Co.,
486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) ........ 7

McDonnell v. City of Omaha,
999 F.2d 293, 295 (8th Cir. 1993) ........ 13

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973) ........ 27

Nielson v. Rabin,
12-4313-pv (2d Cir. decided Feb. 13, 2014) ........ 3

Parada v. Banco Industrial de Venezuala, C. A.,
12-3525-cv (2d Cir. 2014), Mar. 25, 2014, pp. 18-19 ........ 7

Pippins v. KPMG,
13-889-cv (2d Circ. 2014) July 22, 2014, p. 6.......... 14, 17-18

Vizcaino v. Microsoft,
120 F.3d 1006 (9th Cir. 1997).......... 21

**Statutes**

29 U. S. C. § 255(a)..........12

The Age Discrimination in Employment Act ("ADEA")..........

The Employment Retirement Income Security Act of 1974 ("ERISA")..........

Fair Labor Standards Act ("FLSA")..........

The New York City Human Rights Law ("NYCHRL")..........

The New York Labor Law ("NYLL")..........

Title VII of the Civil Rights Act of 1964..........

## Summary of Argument

Defendants continue to support their arguments with the same disputed and misleading factual assertions and rely upon premises that are plainly unsupported or contradicted by the record. Their factual statements fail to support their arguments and, therefore, must fail to refute the arguments set forth in plaintiff's opening brief.

Defendants' brief is unresponsive insofar as it does not challenge or dispute the plaintiff's central arguments, and evasive insofar as it attempts to distract the appellate court by recycling affirmative defenses (e.g., time-barred, administrative exemption and failure to exhaust administrative remedies) which failed before the lower court and do not appear anywhere in its summary judgment or the plaintiff's opening appellate brief. As is shown below in plaintiff's ARGUMENTS II, III, IV, every one of the defendants' recycled arguments fails as a matter of law and fact, which may be why the lower court ignored them.

Defendants literally cut and pasted their arguments verbatim from their previous pleadings, instead of responding on point to the specific arguments and authorities upon which plaintiff supported his appeal of summary judgment.

Since the lower court's summary judgment (1) in effect deemed admitted and/or immaterial and/or irrelevant every single one of the numerous *de facto* Rule 56.1 disputed material facts and every single one of plaintiff's 42 statements of additional material fact, and (2) did not question a single one of the defendants' Rule 56.1 factual assertions, or any of their evidence, the defendants are empowered to act as if their factual narrative is above judicial review. And they are emboldened to make patently false claims that the plaintiff made this or that "admission," without any risk that the court will actually check the record. See, e.g., Appellee's Brief,[1] Doc. 50, pp. 23-24.

The defendants' opening brief arguments continue to rely upon one form or another of tautological or circular reasoning, and are fatally flawed as such:[2] (1) Concerning plaintiff's misclassification claim, they argue that his employment status was properly classified because they said it was (at the outset of his employment). This is why their appellee brief continues to rely on the effects of

---

[1] Citations to "Brief of Appellant David Sellers," appellate docket #36, will follow the form "Appellant's Brief at p. __." Citations to the "Brief of Appellees," appellate docket #50, will follow the form "Appellees' Brief at p. __." All references to lower court docket will follow the form "ECF (docket #), p. __." Pagination refers to electronic filing, not original source document.

[2] As defined in Wikipedia: "However, the argument is useless because the conclusion is one of the premises. Circular logic cannot prove a conclusion because, if the conclusion is doubted, the premise which leads to it will also be doubted." http://en.wikipedia.org/wiki/Circular_reasoning

misclassification and not indicia of employment, defying recent case law. Appellant's Brief at pp. 29-33. (2) Concerning plaintiff's age discrimination claims, defendants argue in part that his age was not a factor in his termination because "the decision-maker" was in the same protected class. How do we know he was the decision-maker? Only because he said he was (in his self-serving affidavit). Appellant's Brief at pp. 35-38 and ARGUMENT V below. (3) Concerning plaintiff's retaliation claim, defendants argue that their May 16, 2011 threatening letter was not retaliation because it did not succeed and it must succeed for there to be any adverse effect. Appellant's Brief at pp. 48-49.

Finally, in terms of the plaintiff's opening brief arguments, defendants make no attempt to show any place where the lower court's summary judgment did in fact: (1) "construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor," Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) or (2) liberally construe pleadings and briefs submitted by [the] pro se litigant[], reading such submissions to raise the strongest arguments they suggest," Bertin v. United States, 478 F.3d at 489, 491 (2d Cir. 2007) or (3) afford them "special solicitude before granting the [defendants'] motion for summary judgment. Nielson v. Rabin, 12-4313-pv, at 18-19 (2d. Cir. decided Feb. 13, 2014). Appellant's Brief at pp. 18-20 concerning

Standards of Review. Indeed, a rational, reasonable and impartial person could find no place where these standards of review were met in the lower court's summary judgment.

For these reasons, as addressed in detail below, defendants' appellate brief fails to rebut the arguments set forth in the plaintiff's opening appellate brief.

## I. DEFENDANTS' FACTUAL ASSERTIONS REMAIN DISPUTED AND MATERIALLY MISLEADING

Defendants' factual assertions are supported exclusively by their own self-serving RULE 56.1 pleadings and cannot be relied upon for any fair and impartial review of either the facts or law. Appellees' Brief at pp. 7-20.

Plaintiff's opening brief details the numerous disputed material facts and his arguments related to these facts remain unchallenged. Appellant's Brief at pp. 20-29. Plaintiff will not "take the bait" and waste any of his reply disputing and objecting to defendants' inaccurate and misleading factual narrative.

Defendants repeated claims that plaintiff made specific "admissions" regarding his relationship with RBC are false in each and every instance and their assertions are all gainsaid by reference to the corresponding numbered opposition statement in "Plaintiff's Rule 56.1 Response to Defendants' Statement of Undisputed Material Facts" (ECF 99).

As noted, it is not possible or useful to respond to every one of defendants' many misleading factual assertions. The examples already cited by plaintiff in his opening brief remain valid since, despite substantial evidence to the contrary, they continue to make the same false assertions. For one typical and telling example, see in particular plaintiff's rebuttal concerning hours worked for defendants. Appellant's Brief at pp. 18-21; 23 (1st bullet).

Defendants persist in claiming as undisputed facts various inevitable effects of employment misclassification, all of which plaintiff specifically disputed in his Rule 56.1 opposition pleadings, as plaintiff showed with specific references in his opening appellate brief. Appellant's Brief at pp. 30-31. These "facts" and others of their ilk, which appear throughout the defendants' brief, are no more than arguments masquerading as facts. It is important to note here that defendants make no attempt whatsoever to challenge or dispute the relevant law in this regard, including recent rulings from the same lower court[3] and the 2d Circuit.[4] Appellant's Brief at pp. 29-33 (for the arguments they fail to engage).

As the plaintiff noted in his opening brief, in a recent case the lower court stated that the reason why the plaintiffs did not receive benefits or W-2s to begin

---

[3] See, e. g., Hart v. Rick's Cabaret Int'l, Inc., No. 09 Civ. 3043(PAE), — F. Supp.2d —, 2013 WL 4822199, at *4-5 (S.D.N.Y. Sept. 10, 2013)

[4] See, e.g., Brock v. Superior Care, 840 F.2d 1054, 1058, 1059, 1060 (2d Cir.1988)

with, for example, was because the employer treated them as independent contractors. Thus, "[t]o assign this factor much weight would effectively allow any employer to control, under New York law, a worker's status simply by labeling her an independent contractor and denying her employee benefits." The same logic serves to undermine the usefulness of a number of the defendants' factual assertions, including 12 of 15 of the falsely labelled "Plaintiff's Admissions..." Appellees' Brief at pp. 23-24.

As plaintiff noted in his opening brief, which defendants failed to rebut, "[]none of the tests used by the courts to determine whether a worker is properly classified, including 'common-law,' 'economic reality' or the 'hybrid' tests, give any significant weight to the fact that a worker receives a 1099 or that they report their income as a non-employee, <u>because these and similar facts in and of themselves reveal nothing about the nature of the underlying employment relationship</u>." Appellant's Brief at pp. 32-33.

## II. <u>DEFENDANTS' VIOLATIONS OF FLSA WERE WILLFUL: ARGUMENT THAT FLSA CLAIMS ARE TIME-BARRED FAILS AS A MATTER OF PROCEDURE AND LAW</u>

<u>As an initial matter, defendants never moved to dismiss any portion of the Amended Complaint on the grounds that plaintiff's claims were time-barred and the lower court's summary judgment did not find any of his claims, including his</u>

FLSA claims, were time-barred. Consequently, there are no judicial findings of fact in connection with defendants' time-barred argument. It is reasonable for the reviewer to assume that the lower court reviewed these arguments as a matter of fact and law, but found them meritless, since they appear verbatim in the defendants' Rule 56.1 Motion pleadings. ECF 77, pp. 6-7.

According to the 2d Circuit: (1) "[T]o prove a willful violation of the FLSA within the meaning of §255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute;" (2) "The 'plaintiff bears the burden of proof' on the issue of willfulness for statute of limitations purposes; and (3) [] "willful" refers to conduct that is "voluntary," "deliberate," or "intentional" and not merely negligent. Parada v. Banco Industrial de Venezuala, C. A., 12-3525-cv (2d Cir. 2014), Mar. 25, 2014, pp. 18-19.

The Supreme Court clarified the "willfulness" finding for purposes of the FLSA statute of limitations in McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), when it adopted a "reckless disregard" standard. According to the Court, an employer commits a willful violation if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

As one of the largest banks in the world with numerous U. S. common-law employees, as well as independent contractors, the defendants are sophisticated employers. Defendants employ highly experienced in-house employment counsel and retain the services of external employment counsel with expertise in the provisions of the FLSA.

It is entirely reasonable to expect that such a large, sophisticated and well-counseled employer will maintain policies and procedures that protect against violations of employment laws, and will provide training for its managers who supervise independent contractors. A sophisticated employer which does not have relevant policies or provide relevant training by definition shows "a reckless disregard for the matter of whether its conduct was prohibited by the statute." If a sophisticated employer does not disclose relevant policies pursuant to a rules compliant discovery request, it is reasonable to conclude that this employer is evading their legal obligations "deliberately," "intentionally" and, indeed, "willfully."

In discovery, the defendants admitted that (1) they have *no policies or procedures concerning independent contractors* and (2) there were *no changes in policy concerning independent contractors* from August 7, 2006 to the date of their discovery response on August 15, 2013, i.e., a seven-year period that includes

plaintiff's employment with defendants, the entire prior EEOC proceedings, filing of the plaintiff's complaint, and defendants' failed motion to dismiss and their answer to the complaint. ECF 45, p. 23, Requests No. 29-30.

It is not simply a question of whether a facially plausible policy is truly effective. The defendants admit there was no policy. The implications of this admission for defendants' misclassification arguments cannot be overstated.

During the ensuing proceedings, up to and including their motion for Summary Judgment, the defendants had ample opportunity to support their arguments by disclosing policies and procedures that evidence their good faith and reasonable efforts to mitigate the risk of employee misclassification and otherwise ensure compliance with relevant provisions of the FLSA. They offered no such evidence, which may be another reason why the lower court's ruling ignored defendants' time-barred argument. [5]

It is impossible for a plaintiff to compare an employer's actions to relevant policies and procedures if there are no relevant policies and procedures to begin with, or none are disclosed. Cross-examination of key witnesses, including defendants' human resources employees, is required at this stage to assess the truthfulness of the defendants' otherwise unsupported representations.

[5] The first reason being their failure to timely move based on statutes of limitations.

The plaintiff's pleadings, beginning with his Amended Complaint and his subsequent pleadings, as well as his discovery responses, provided defendants with detailed evidence of the indicia of his employment and evidence of his misclassification, including his approved hours in and out of the defendants' office, zero investment in the tools required to do his work, no investment whatsoever, etc., all of which facts were known to the defendants during plaintiff's employment. ECF 3, ¶33 pp. 10-13; ECF 100, ¶12-25.

In contrast, the defendants offered no evidence at all that they took any measures to ensure that the plaintiff's employment status remained properly classified during the period of his employment. The defendants failed to demonstrate that: (1) that they had an honest intention to ascertain what the laws concerning employment classification require, and (2) they acted in accordance with them. Defendants cannot claim they acted in good faith when they operated blindly, i.e., without investigating their responsibilities under the law or maintaining relevant policies and procedures. Defendants have provided no evidence that they took any affirmative actions to ensure that employees and independent contractors were correctly classified.

As a sophisticated and well-counseled employer their failure to act shows "a reckless disregard for the matter of whether its conduct was prohibited by the statute."

Plaintiff also notes: (1) timeliness of plaintiff's claims was specifically discussed in the initial scheduling conference with the lower court's Judge Forrest, who said: "But I think that since the defendant's answer we have the complaint. I mean, you folks didn't move against any particular portion of the complaint and so we've got a live complaint;" ECF 43, p.8:7-10 (2) at the same scheduling conference the Court (Judge Forrest) also noted on point without qualification: "All right. Well, then if there's a willfulness claim then it would be -- which [] you have -- then it would be three years…" ECF 43, p.4:1-3 (3) defendants' untested time-barred theories were also used as an excuse to evade numerous discovery requests, which plaintiff brought to the lower court's attention, but to no avail. ECF 45, p.1; ECF 45-2, p. 8: #9.

In their earlier Motion to Dismiss, defendants argued unsuccessfully that filing of the plaintiff's Amended Complaint was untimely.[6] In the process they stated: "If the Amended Complaint is dismissed without prejudice, plaintiff's ADEA and FLSA claims would be time-barred under a newly filed action…" ECF

[6] Per the lower court: "…defendants' motion to dismiss for failure to timely serve is denied." ECF 7.

8, p. 10, fn. 6. Logically, it follows from this statement that the defendants admitted that plaintiff's FLSA claims would be timely if their motion failed, which it did. In any event, defendants never moved to dismiss plaintiff's FLSA claims for time-barred reasons.

The defendants' failure to mitigate the risk of employment law violations and the history of these proceedings leads to the conclusion that their actions -and failures to act- were "reckless," "willful," "voluntary," "deliberate," and "intentional" and not merely negligent, and that, consequently, the three year statute of limitations correctly applies under 29 U.S.C. § 255(a).

## III. DEFENDANTS FAILED TO CARRY THE BURDEN OF PROVING THAT THE FLSA ADMINISTRATIVE EXEMPTION APPLIES[7]

Once again, it is important to note that the lower court's summary judgment pays no attention whatsoever to the defendants' FLSA administrative exemption argument. Also again, it is reasonable to assume that the lower court reviewed these

---

[7] In a footnote, defendants argue that "plaintiff failed to address any of these [FLSA and NYLL exemption] arguments in opposition to summary judgment and thus abandoned any claim to these abandoned damages." They support this argument with one citation, Douglas v. Victor Capital Group, 21 F. Supp. 2d 379 (S. D. N. Y. 1998). Defendants mislead the court by neglecting to mention that the Judge's Order in this case was specifically and explicitly premised upon the fact that "(1) plaintiff is not acting pro se." The judge's other premises further highlight material differences between the two cases.

arguments as a matter of fact and law since they appear verbatim in the defendants' Rule 56.1 Motion pleadings.[8]

Statutory exemptions pursuant to provisions of the FLSA are to be narrowly construed against the employer and the employer carries the burden of proving an exemption applies. McDonnell v. City of Omaha, 999 F.2d 293, 295 (8th Cir. 1993) (Employers have the burden of proving that the exemption applies, and they must demonstrate that their employees fit "plainly and unmistakably within the exemption's terms and spirit.").

Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for employees employed as *bona fide* executive, administrative, professional and outside sales employees. (The plaintiff's claims do not allege minimum wage or overtime violations.)

To qualify for the administrative employee exemption in particular, according to the DOL, all of the following tests must be met: (a) the employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week; (b) the employee's primary duty must be the performance of office or non-manual work directly related to the management or general

---

[8] Defendants' argument is merely cut from their "Memorandum of Law in Support of Motion for Summary Judgment" and pasted into the Appellees' Brief." See ECF 77, Argument III, pp. 20-22.

business operations of the employer or the employer's customers; and (c) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. (See U. S. Department of Labor Wage and Hour Division, Fact Sheet #17A: Exemption for Executive, Administrative, Professional, Computer & Outside Sales Employees Under the Fair Labor Standards Act (FLSA).)

All three prongs of the DOL's test must be satisfied for the [administrative] exemption to apply, and FLSA exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Pippins v. KPMG, 13-889-cv (2d Circ. 2014) July 22, 2014, p. 6 (citations omitted)

Upon scrutiny, defendants' FLSA and NYLL administrative exemption argument collapses, for the following reasons:

Concerning the first prong, plaintiff did not in fact receive a salary. Only common law employees can be paid a salary, and defendants continue to argue he was not a common law employee. For the defendants' purpose here, these are mutually exclusive propositions. They misleadingly state that the "Plaintiff does not contest that the salary basis would be satisfied," citing a statement plaintiff made completely unrelated to the FLSA's administrative exemptions. Being paid a salary

"in effect" is not the same as being paid a salary for FLSA purposes. Defendants have cited no legal authority for regarding them as the same in the FLSA or any other employment law context. It is not possible to reconcile defendants' argument that plaintiff was paid a salary for administrative exemption purposes with their argument he was not an employee for misclassification purposes, and they have made no attempt to do so. Thus, they fail the first prong of the test.

Concerning the second prong, while it is true that plaintiff's work was "non-manual," none of his assignments, no less his "primary duty" had anything to do with "management or general business operations," and defendants have not provided a single piece of evidence showing any such work was done by the plaintiff. Thus their argument must fail at the second test. Duties related to "management or general operations" of an employer are, by definition, integral to the employer's business. Yet, defendants have argued repeatedly that plaintiff's work was not integral to the defendants' business.[9] In their appellate brief, defendants state definitively that "Plaintiff was not an integral part of RBC's business." Appellees' Brief at Doc. 50, p. 48. Furthermore, the addendum to the

[9] Plaintiff argues that his work assignments were integral to defendants business. Appellant's Brief at pp. 33-41; ECF 100, p. 4:¶18. However, primary duties involving management and business operations are not essential components of the economic realities test or any of the other tests used by court's or administrative agencies to determine employment status, or specifically determine whether an employee's work is integral to an employer's business.

Consulting Agreement between RBC and plaintiff, as quoted by the defendants in their brief, defined plaintiff's responsibilities as "[a]ssist[ing] Alex Birr with Public Finance deal flow including screening new opportunities and preparing business and credit submissions covering: borrower risk due diligence, transaction structuring and underwriting, documentation review (no documentation execution) and business' rationale for credit requests." Appellees' Brief at pp. 9-10. Nothing in this description relates to "management or business operations." Echoing the defendants' problem in the first prong test, it is logically inconsistent to argue that plaintiff's work was integral for the purpose of FLSA exemption but not for the purpose of determining whether plaintiff's employment was correctly classified. Here is another example of where the Appellees' Brief draws attention to disputed material facts that should have precluded summary judgment.

Concerning the third prong, defendants fail to satisfy the standard set by the 2d Circuit when it stated on point: (1) "We have considered that aspect of the administrative work exemption, and concluded that in that context, the deployment of discretion and judgment is manifested by the "authority to formulate, affect, interpret, or implement [the employer's] management policies or its operating practices," by "involv[ment] in planning [the employer's] long-term or short-term business objectives," or by the carrying out of major assignments or committing

major financial resources in the conduct of the employer's business. Pippins v. KPMG, (2d Circ. 2014) pp. 11-12 (citations omitted) and (2) "In the context of administrative work, the [administrative exemption] standard serves to identify, from among the many workers whose jobs could generally be characterized as "administrative," those who perform duties primarily directed towards "management or general business operations," (identifying as indicative of the "discretion and independent judgment" of the administrative work exemption the "authority to negotiate and bind [a company] on any significant matters, or [] authority to waive or deviate from [the company's] established policies and procedures without its prior approval"). [underline added] Id. at p. 13 (citations omitted). Defendants have shown no evidence whatsoever that plaintiff had any of these authorities, especially related to management policies or operating practices. To the contrary, they specifically argue that the plaintiff did not have authority to commit any -no less major- "financial resources" or "bind [a company] on any significant matters." Defendants specifically note that plaintiff "...had no authority to commit RBC's balance sheet." Appellees' Brief at p. 48. For these reasons, defendants' exemption argument fails at the third prong.

"The exemption question under the FLSA is a mixed question of law and fact. The question of how the employees spent their working time is a question of

fact. The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." Id. at p.8 (citations omitted).

For the appellate court to exercise any type of review the lower court must have expressed its factual findings, which they did not do in relation to defendants' FLSA administrative exemption argument.

The defendants make no attempt to describe the plaintiff's actual work in any useful detail. For this reason, the lower court's summary judgment does not include any description of the plaintiff's assignments or what work he actually did. In fact, the lower court fundamentally misunderstood plaintiff's work. Appellant's Brief at p. 31.

Because the lower court's judgment makes no mention of defendants' argument there is no record of judicial findings of fact related to question of FLSA exemptions. In contrast, in the 2d Circuit's Pippins v. KPMG, where the parties agreed to the essential characteristics of the plaintiff's work, fourteen pages of the appellate court's ruling are devoted to an analysis of the plaintiffs' work in relation to FLSA exemption standards. "In this case, our inquiry is greatly simplified by the lack of disagreement between plaintiffs and KPMG regarding the types of tasks performed by [plaintiffs]." Pippins v. KPMG, p. 8. "We must still, however,

identify what qualities are characteristic of the work []." [underline added] Id. at p. 20.

Defendants' administrative exemption argument highlights yet another example of material facts in dispute, here regarding the critical nature of work performed.

## IV. PLAINTIFF COULD NOT FAIL TO EXHAUST NON-EXISTENT ERISA ADMINISTRATIVE REMEDIES

Once again, it is important to note that the lower court's summary judgment pays no attention whatsoever to the defendants' administrative remedies argument. Once again, it is reasonable to assume that the lower court reviewed these arguments as a matter of fact and law since they appear verbatim in the defendants' Rule 56.1 Motion pleadings, (ECF 77, pp. 22-23) and, consequently, there is no record of lower court factual findings for the appellate court to review in relation to this argument.

Also important, Plaintiff did not admit to failing, nor did he in fact fail, to exhaust his administrative remedies. Defendants do not and cannot provide any evidence to support this claim, because none exists.

With specific reference to ERISA, Defendants state definitively that their benefits policies applied only to individuals they classified as employees.[10] ECF 77, p. 23. In other words, there were no "remedies," administrative or otherwise, available for misclassified independent contractors and any claim for benefits would have served no useful purpose. Further, as explained in his deposition, Plaintiff did not realize the legal implications of the Defendants' misclassification until the weeks and months after his termination and no administrative remedies were available at that time, under defendants' ERISA or any other defendant benefits plan, for a former misclassified independent contractor. ECF 100, p. 29:1-4; p. 22:10-15. Hence, seeking recourse under defendants' ERISA plan at any time would not have served any useful purpose.

Finally, the fact that RBC's ERISA plan excludes independent contractors is of no moment for the purpose of determining whether plaintiff's employment status was misclassified. As noted in plaintiff's opening brief a number of courts have ruled that employee misclassification is not determined by how employers

[10] Referring to the plaintiff, defendants stated that "...he was unquestionably not an 'eligible employee' under RBC's benefit plans [] persons not classified by RBC as eligible employees, such as ... contract employees, are not eligible for benefits. RBC's classification of a person as an employee or non-employee is conclusive and binding for purposes of benefit eligibility.' [] The other Plans contain similar language." [underline added] ECF 77, p. 23.

and their benefit administrators label their workers.[11] ECF 97, p. 10. Plaintiff will not repeat his arguments in this regard,[12] since defendants made no attempt in their appellate brief rebut on point.

Finally, concerning administrative remedies, defendants' assertion that "Plaintiff did not apply for New York State unemployment benefits following the conclusion of his consulting relationship with RBC" is misleading insofar as it leaves a false impression that plaintiff did not apply for unemployment insurance benefits. Appellees' Brief at p. 28. In fact, plaintiff (1) applied to the New Jersey DOL (ECF 100-1, pp. 42-44), which concluded for unemployment insurance benefits purposes that plaintiff's employment was misclassified and that he was an employee (ECF 100-1, p. 40), and (2) spoke with the NYS DOL concerning UI benefits as well as employment misclassification. Appellant's Brief at pp. 60-61; ECF 100, p. 6, ¶¶34-35; ECF 99, p. 24, ¶77.

---

[11] See plaintiff's references to the 2d Circuits' ruling in Brock v. Superior Care, Inc., 840F.2d (2d. Cir. 1998), where the Court stated that an employer's "self-serving" labeling of workers as independent contractors is not controlling. See also Hart v. Rick's Cabaret Int'l, Inc., WL 4822199, at *4-5 (S.D.N.Y. Sept. 10, 2013). See also Vizcaino v. Microsoft, 120 F.3d (9th Cir. 1997).

[12] Appellant's Brief at pp. 29-33.

## V. DEFENDANT'S FAIL AGAIN TO COUNTER PLAINTIFF'S "SAME ACTOR" REBUTTAL

As an initial matter, the credibility of defendants' "same-actor" defense rests entirely upon their claim that a single manager, Mr. Patrick Shields, was the decision-maker for hiring and termination of plaintiff's employment. However, the only evidence they offer to support this claim is this one self-serving party's affidavit statement. ECF 78, p. 5, ¶19, citing ECF 84, p. 2, ¶¶4-5; p. 3, ¶14. Essentially, they expect the court to believe that this one manager was the decision-maker only because he said he was.

In a large, sophisticated and well-counseled financial institution such as Royal Bank of Canada, with highly evolved policies and procedures governing approval authorities, including hiring and termination of independent contractors, it is reasonable to expect that the decision to hire the plaintiff and the decision to terminate his services would have been documented by some form of internal bank communication. Yet, defendants have not pointed to a single e-mail or memo -or any documentation whatsoever- to support their claim of a sole decision-maker.

For this reason alone, an impartial reviewer should assign little value to the claim that Mr. Shields was "the" decision-maker. Yet the lower court accepts this claim for face value and uncritically relies upon the defendants' same-actor defense for the purpose of dismissing the plaintiff's ADEA, NYSHRL and NYCHRL age

related claims, when it states definitively, "Mr. Shields was also the same person who initially engaged plaintiff through RMCS in February 2008 and renewed his contract five times thereafter." ECF 108, p. 22.

The lower court ruling concerning plaintiff's ADEA, NYSHRL and NYCHRL claims absolutely hinges on defendants' same actor defense, which absolutely hinges on the premise there was one decision-maker, which has not been tested, no less proved for the purpose of summary judgment.

Defendants fail to offer any meaningful rebuttal of plaintiff's same actor arguments in their opening brief. They simply recast their Rule 56.1 pleadings.

Finally, here is yet another example of a material fact that remains in dispute.

## VI. DEFENDANTS NEVER DID IN FACT WITHDRAW THEIR THREAT OF RETALIATION

The Defendants mislead the court when they assert that "*...Plaintiff admits that RBC subsequently withdrew its request for reimbursement for those costs on June 28, 2011...*" [underline added] Appellees Brief, Doc. 50, p. 67. It is important to note that this error also appears unmediated in the lower court's summary judgment arguments. ECF 108, p. 28, fn. 1.

Plaintiff made no such admission and defendants cannot dispute the fact that they never withdrew their threat.

The plaintiff never received a letter or any other communication from RBC withdrawing its February 5, 2010 retaliatory letter. It is true that "On June 28, 2011, RBC stated to the EEOC that it had no intention of seeking reimbursement from RMCS of the costs associated with defending Plaintiff's EEOC charge." [underlines added] However, notifying the EEOC of its "intention" to not follow through on its threat is not the same as actually withdrawing the threat, which defendants never did.

In any event, the plaintiff did not receive a copy of RBC's June 28, 2011 letter to the EEOC or the EEOC's May 16, 2011 letter warning the defendants, until February 21, 2012, when the EEOC released its "Charge File," over two years after defendants' February 5, 2010 retaliatory letter. Appellant's Brief at pp. 49-57; ECF 100, p. 82. The adverse effects of the defendants' retaliatory letter were not at all mitigated on the date of their June 28, 2011 letter.

## VII. DEFENDANTS' "REASONABLE PERSON" STANDARD IS FATALLY FLAWED

The defendants claim that *"no reasonable person in Plaintiff's position would have been dissuaded from pursuing the then pending EEOC charge []."*[13]

[13] A variation of this assertion appears unmediated in the lower court's summary judgment in the form of a quotation from a cited ruling. ECF 108, p.24.

Appellees Brief, Doc. 50, p. 67; see also p. 15: #4. In this context, "reasonable person" is no more than self-serving legal fiction and is useless as such.

The economic threat of retaliation has more or less of an adverse effect depending on the context, i.e., the targeted employee's financial circumstances, which differ from employee to employee. A threat is not equally material or adverse to all employees. For this reason, it logically follows that one "reasonable person" standard does not fit all, i.e., the context is critical. The defendants miss this crucial point in their related citation: "By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct"). Simply put, "[c]ontext matters." [underline added] Appellees Brief, Doc. 50, p. 67.

Here is what the plaintiff said in his deposition concerning the materiality of the defendants' threat of recovering legal expenses, from which the reviewer may determine the reasonableness of the defendants' argument and lower court's finding that there was no adverse effect: "…the defendants seeking to recover their legal expenses for the litigation from me that is from the plaintiff's point of view an economic threat that could be [] devastating." [underline added] ECF 100, p. 69.

Further introducing real-world context and indicia of adverse effect, plaintiff previously noted in his Rule 56.1 opposition pleadings that, "Defendants'

retaliation [] and the ongoing implicit threat of retaliation for the current litigation has been an additional source of emotional distress. Any 'reasonable person' would experience emotional distress if one of the world's largest banks, facilitated by one of the largest employment law firms, threatened to ruin them financially." To further flesh out the context of defendants' retaliatory letter, Plaintiff notes further that "Defendants turn a deaf ear to Plaintiff s deposition testimony: 'Well when you lose your job and your career is ended ...and you lose your primary source of income, and...in order to pay your bills, [you] have to draw down your retirement funds and ...you have all the financial stress ...that by definition causes emotional distress.'"

The defendants' claim that "…the court correctly concluded that a reasonable person in Plaintiff's position would not be dissuaded by the invocation of a contract's indemnification provision" is also technically incorrect and misleading. They make this statement without any reference to the lower court's summary judgment, presumably because there is no place where the Court expressly invokes a "reasonable person" standard.[14]

[14] The term "reasonable person" does not appear anywhere in the court's summary judgment. The phrases "reasonable worker," "reasonable employee," "reasonable juror" and "reasonable jury" each appear one time only in quotes from cases cited by the lower court. ECF 108, pp. 9, 24. In any case, these terms have different

The defendants' speculation about how their fantasy one-size-fits-all "reasonable person" might act under the circumstances in this case is useless, especially in the context of a major dispositive motion (summary judgment), no less in an appellate brief.

## VIII. DEFENDANTS REMAIN SILENT ON RETALIATION BURDEN SHIFTING FRAMEWORK

Notably, defendants did not question or dispute the close proximity of their retaliatory letter to the EEOC's letter informing them that the case was being forwarded to their Investigations Unit or that proximity is a key factor in determining whether an action is retaliatory under the McDonnell Douglas[15] burden shifting framework spelled out by the 2d Circuit less than a year ago and followed by the plaintiff in his Appellate Brief. In fact, they do not even attempt to refute plaintiff's analysis based on Kwan. Kwan v. The Andalux Group LLC, 12-2493-cv, p. 18, 2d Circ. Dec. 16, 2013 (Citations omitted)

---

meanings, but the judge does not make any distinctions, leaving a reviewer to wonder what standard was invoked.

[15] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

## IX. DEFENDANTS' REFERENCE TO PLAINTIFF'S RECENT EMPLOYMENT IS RETALIATORY

The defendants' reference to plaintiff's relationship with a certain institution[16] is notable only because it is completely irrelevant to this litigation and misleading, serves only to harass and embarrass the plaintiff and is, in effect, retaliatory. Appellees Brief Doc. 90, p.31. Plaintiff's contractual relationship with this institution commenced over six months after termination of his employment with the defendants, and has no connection whatsoever with his employment with the defendants or this litigation and defendants have not even attempted to argue its relevance. ECF 100, p. 7:¶38.

The lower court's summary judgment makes no mention whatsoever of this relationship, a part-time position that entails only 8-10 days of visual arts studio classes a year, begging two questions: (1) how do the defendants believe this to be material or relevant to the plaintiff's appeal, and (2) what is the defendants' purpose at this time and in this appellate context?

The defendants previously sought to drag the name of this institution into this case by threatening to subpoena plaintiff's employment records, which they agreed

[16] This employment relationship is irrelevant to this litigation and plaintiff does not want to advance the defendants' retaliatory purposes by repeating the name of the institution in the record.

not to do only after he prepared to file his Motion to Quash Subpoena with the lower court on August 16, 2013. Nonetheless, defendants subsequently disclosed plaintiff's confidential tax return details related to his compensation, violating his privacy rights (ECF 60, p. 1) and the terms of the lower court's protective order (ECF 41).

By repeatedly seeking to put this unrelated employment on the public record the defendants must know that their actions can only have an adverse effect on the plaintiff. Inserting this relationship yet again into the public record at least shows a wanton and reckless disregard for the plaintiff's financial circumstances, if not retaliation under the law. The defendants' counsel knows from disclosures pursuant to discovery that this relationship is Plaintiff's only regular source of income since termination of his employment with Royal Bank of Canada.

Contrary to the impression defendants seek to leave, the plaintiff has provided services these past four years only pursuant to a "visiting artist" agreement, not an independent contractor agreement. Defendants mislead the court when they leave the false impression that the terms of plaintiff's "visiting artist" agreements and the circumstances of this work are comparable in any relevant way to the terms of his contract or work for Defendants.

The defendants' efforts to involve the name of the institution with the plaintiff's litigation, notwithstanding its complete irrelevancy, and the likely adverse effect of these actions, are noteworthy in the context of the pending retaliation claim.

## X. SELECT REBUTTALS OF FACTUAL ASSERTIONS

It is simply not possible for plaintiff to respond to every one of the defendants factually incorrect, unsupported and misleading statements. However, plaintiff notes:

Concerning plaintiff's contemporaneous work for Credit Suisse: (1) Defendants have not provided any evidence of any policy supporting their claim that "RBC specifically prohibits employees from working outside RBC without express written permission." Appellee's at p. 33. See also, ECF 99, p. 11:¶4. (2) Defendants' assertion that "Plaintiff did not request permission" for his work at Credit Suisse is untrue. Appellees' at p. 33. Plaintiff did in fact request and receive permission. ECF 100, pp. 5-6: ¶¶30-31 (see also ¶¶29-32); ECF 99, pp. 10-11, ¶¶30, 35 (see also ¶¶31, 33).

Concerning discovery: (1) Defendants' 345 mainly boilerplate objections are abusive by any reasonable standard, especially considering that a *pro se* plaintiff

was the recipient.[17] (2) Defendants' claim that they "responded to 20 Interrogatories and 61 Document Requests" and "produced over 15,000 pages of responsive documents" is not supported anywhere on the "record before the District Court." Appellees' Brief at p. 70. This claim is plainly misleading. In any case, a classic form of discovery abuse is to overwhelm a plaintiff with quantities of irrelevant material, as defendants tried to do. (3) Regarding the reference to the Judge's discovery Order (Appellees' Brief at p. 70-71), defendants "conveniently" forgot to mention plaintiff's follow-up letter request to the Judge, which noted the ineffectiveness of defendants' compliance. ECF 67, pp. 2-4. (4) Defendants can show no evidence to support their claim that "Plaintiff has refused to schedule depositions." Appellees' Brief at p. 71. (4) Defendants' tactical abuse of discovery prevented plaintiff's preparations for depositions, a concern plaintiff raised with the defendants and the lower court on several occasions. ECF 100, p. 5:¶28; ECF 52, pp. 1-3, 5-6.

---

[17] See, e.g., "The Sedona Conference Cooperation Proclamation," The Sedona Conference Journal, Volume 10 Supplement, Fall 2009. See also, American Bar Association, Model Rules of Professional Conduct, 2009 (as updated).

## Conclusion

For the reasons stated above, defendants failed to effectively rebut plaintiff's opening appellate brief arguments, especially considering the standards of review for summary judgment involving a *pro se* non-moving party. Therefore, the plaintiff/appellant acting *pro se* respectfully requests the Second Circuit to vacate the grant of summary judgment and remand all of the plaintiff's claims to the lower court for further proceedings.

Dated: Hopewell, New Jersey
August 25, 2014

Respectfully submitted,

David Sellers, *Pro Se*
*Plaintiff-Appellant*
24 East Prospect Street
Hopewell, New Jersey
08525
609-466-1353
609-468-8437

**Certificate of Compliance**

I, David Sellers, certify that this brief contains 7,000 words or less.

David Sellers, *Pro Se*
*Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

David Sellers v.

The Royal Bank of Canada, et al.

## CERTIFICATE OF SERVICE

Docket Number: 14-302-cv

I, David Sellers (name), hereby certify under penalty of perjury that on August 25, 2014 (date), I served a copy of REPLY BRIEF OF PRO SE PLAINTIFF-APPELLANT DAVID SELLERS dated August 25, 2014 (list all documents)

by (select all applicable)*

- [x] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [ ] E-mail
- [ ] Hand delivery

on the following parties (complete all information and add additional pages as necessary):

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| James P. Walsh, Jr. | 502 Carnegie Center | Princeton | N. J. | 08540 |
| | | | | |
| | | | | |
| | | | | |

August 25, 2014
Today's Date

[signature]
Signature

*If different methods of service have been used on different parties, please indicate on a separate page, the type of service used for each respective party.