# \*\*\*CORRECTED COPY\*\*\*

# 14-302-cv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

DAVID SELLERS,

*Plaintiff-Appellant,*

v.

THE ROYAL BANK of CANADA, RBC USA HOLDCO CORPORATION,
RBC CAPITAL MARKETS CORPORATION, LLC, and JOHN DOES 1-5,

*Defendants-Appellees*

On Appeal from the United States District Court
for the Southern District of New York

Brief of Appellant David Sellers

David Sellers, *Pro Se*
24 East Prospect Street
Hopewell, New Jersey 08525
609-466-1354; 609-468-8437

## TABLE OF CONTENTS

Page(s)

Table of Contents................................................................................. i

Table of Authorities............................................................................ ii

Statutes and Rules.............................................................................. iv

Statement of Subject Matter and Appellate Jurisdiction......................................... 1

Standard of Review.............................................................................. 3

Statement of Issues Presented for Review....................................................... 3

Statement of the Case........................................................................... 4

Statement of the Facts.......................................................................... 6

Summary of the Argument......................................................................... 11

Argument........................................................................................ 12
I.       Standards of review.................................................................... 12
II.      The moving party did not demonstrate the absence of a genuine issue of material
         fact.................................................................................. 14
III.     The lower court erred when it did not construe any of the Rule 56 evidence in the
         light most favorable to the non-moving party or draw any inferences or resolve
         any ambiguities in its favor.......................................................... 16
IV.      The lower court erred when it did not deem as admitted any of the *pro se* non-
         moving party's Rule 56.1 additional facts............................................. 22
V.       The lower court erred when it relied upon the factual cause and effects of
         employment misclassification to dismiss the *pro se* plaintiff's FLSA, NYLL,
         ERISA, ADEA and NYSHRL claims......................................................... 23
VI.      The lower court's understanding of plaintiff's position and work at RBC is
         inadequate for the economic realities test............................................ 27
VII.     The lower court erred when it based its dismissal of the *pro se* plaintiff's FLSA,
         NYLL, ERISA, ADEA and NYSHRL claims on its flawed analysis of economic
         factors............................................................................... 29
VIII.    The lower court erred when it relied on the defendants' 'same actor' defense for
         the purpose of dismissing the *pro se* plaintiff's NYCHRL age discrimination
         claims................................................................................ 35

IX. The *pro se* plaintiff proved a *prima facie* case of age discrimination............... 38

X. The lower court's legal reasoning for dismissing the *pro se* plaintiff's retaliation
claim is insufficient........................................................................ 43

XI. The lower court erred when it did not investigate the *pro se* plaintiff's discovery
concerns and denied every one of his requests and doubled down on this error by
finding that his evidence is insufficient for the purpose of establishing a *prima
facie* case for any of his claims, and granting summary judgment................. 51

XII. The lower court erred when it applied a double standard to material facts and
evidence for the purpose of dismissing the plaintiff's misclassification claims... 52

XIII. The lower court erred when it applied a prejudicial standard to the *pro se*
plaintiff's evidence........................................................................ 54

XIV. The lower court's numerous rhetorical references prejudice the *pro se* plaintiff's
Rule 56 opposition statements............................................................. 55

Conclusion.......................................................................................... 59

Certificate of Compliance......................................................................... 60

Certificate of Service............................................................................. 61

## TABLE OF AUTHORITIES

### Federal Cases

Page(s)

Baker v. Flint Eng'g & Const. Co.,
137 F.3d 1436, 1443 (10th Cir. 1998)................................................ 30

Berrocal v. Moody Petroleum, Inc.,
No. 07 Civ. 22549, 2009 WL 455448, *7 (S.D. Fla. Feb. 22, 2009)............. 30

Bertin v. United States,
478 F.3d 489, 491 (2d Cir. 2007)........................................... 3, 13, 39, 55, 58

Brock v. Superior Care,
840 F.2d 1054, 1058, 1059, 1060 (2d Cir.1988)..................................... 24, 27

CelotexCorp. v. Catrett,
477 U.S. 317, 323 (1986)............................................................... 12

Copeland v. Rosen,
38 F.Supp.2d 298, 305 (S.D.N.Y.1999)............................................... 36

Dickerson v . Napolitano,
604 F.3d 732, 740 (2d Cir. 2010)......................................... 3, 13, 39, 55, 58

Fromson v. Western Litho Plate & Supp. Co.,
    853 F.2d 1568, 1570, 7 U.S.P.Q.2d 1606, 1608 (Fed. Cir. 1988)................ 14

Gorzynski v. Jetblue Airways Corp.,
    596 F.3d 93, 101, 106, 107 (2d Cir.2010)........................................... 3, 42

Grayco, Inc. v. Binks Mfg. Co.,
    60 F.3d 785, 791, 35 U.S.P.Q.2d 1255, 1260 (Fed. Cir. 1995)................. 14

Hart v. Rick's Cabaret Int'l, Inc.,
    No. 09 Civ. 3043(PAE), — F. Supp.2d —, 2013 WL 4822199, at *4-5
    (S.D.N.Y. Sept. 10, 2013)......................................................... 23, 24, 27

Hopkins v. Cornerstone Am.,
    545 F.3d 338, 343-44 (5th Cir. 2008)............................................... 30

Hrisinko v. New York City Dep't of Educ.,
    369 Fed.Appx. 232, 235 (2d Cir. 2010)............................................. 43

Kalman v. Berlyn Corp.,
    914 F.2d 1473, 1480, 16 U.S.P.Q.2d 1093, 1098 (Fed. Cir. 1990)............. 17

Kwan v. The Andalux Group LLC,
    12-2493-cv (2d Cir. December 16, 2013)........................................... 43-48

Mattera v. J.P. Morgan Chase Corp.,
    740 F. Supp. 2nd 561, 571 (S.D.N.Y. 2010)....................................... 40

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)................................................................. 38, 40, 44, 46

Nielson v. Rabin,
    12-4313-pv (2d Cir. decided Feb. 13, 2014)........................... 3, 13, 39, 52, 56

Ramos v. Marriott Int'l, Inc.,
    134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001)........................................ 36

Reeves v. Sanderson Plumbing Products, Inc.,
    530 U.S. 133, 141 (2000).......................................................... 40

Reich v. Circle C. Inv.,
    998 F.2d 328 (5th Cir. 1993)....................................................... 35

S. C. Johnson & Sons, Inc. v. Carter-Wallace, Inc.,
    781 F.2d 198, 201, 228 U.S.P.Q. 367, 369 (Fed. Cir. 1986).................... 17

Sec'y of Labor v. Lauritzen,
  835 F.2d 1536 (7th Cir. 1987) ........................................................ 34

Shub v. Westchester Cmty. Coll.,
  556 F. Supp. 2d 227, 253 (S.D.N.Y. 2008).......................................... 14, 40

Solis v. Int'l Detective & Protective Serv., Ltd.,
  No. 09 Civ. 4998, 2011 WL 2038734, *9-11 (N.D. Ill. May 24, 2011)........ 30

Thibault v. Bellsouth Telecomms., Inc.,
  612 F.3d 848 (5th Cir. 2010)......................................................... 31

Townsend v. Consulting Corp.,
  929 F.2d 1358, 1366 (9th Cir. 1990)................................................ 13

Usery v. Pilgrim Equip. Co., Inc.,
  527 F.2d 1308, 1311, 1313, 1314 (5th Cir. 1976)................................. 30, 35

Vizcaino v. Microsoft,
  120 F.3d 1006 (9th Cir. 1997)........................................................ 24

Watt v. New York Botanical Garden, No. 98 Civ. 1095, 2000 WL 193626,
  at *7 (S.D.N.Y. Feb.16, 2000)........................................................ 36

## Statutes

28 U. S. C. § 1295(a)(1)............................................................................2

28 U. S. C. § 1331(b).............................................................................1

28 U. S. C. § 1367(a).............................................................................1

28 U. S. C. § 1391..............................................................................1

29 U. S. C. § 631(a)...........................................................................44-45

29 U. S. C. § 623(d))...........................................................................43

42 U. S. C. § 2000e-3(a).......................................................................43

The Age Discrimination in Employment Act ("ADEA").........................................

The Employment Retirement Income Security Act of 1974 ("ERISA").......................

Fair Labor Standards Act ("FLSA")..................................................................

The New York City Human Rights Law ("NYCHRL").........................................

The New York Labor Law ("NYLL")................................................................

Title VII of the Civil Rights Act of 1964...........................................................

## Rules

FED. R. APP. P. 3(a)(1)................................................................................ 2

FED. R. APP. P. 4(a)(1)(A)..............................................................................2

FED. R. CIV. P. 1.........................................................................................52

FED. R. CIV. P. 26......................................................................................52

FED. R. CIV. P. 37......................................................................................52

FED. R. CIV. P. 52, Notes of Advisory Committee on Rules—1991 Amendment............17

FED. R. CIV. P. 56.........................................................................................

FED. R. CIV. P. 56(c)(4)...............................................................................56

SDNY Local R. 26.4...................................................................................52

SDNY Local R. 56.1....................................................................................

SDNY Local R. 56.2...................................................................................56

√

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

1. The Royal Bank of Canada ("The Royal Bank") is subject to the Fair
Labor Standards Act ("FLSA"), the Age Discrimination in Employment Act
("ADEA"), and the Employment Retirement Income Security Act of 1974
("ERISA"). Thus, with respect to the federal claims, the United States District
Court for the Southern District of New York ("SDNY" or "lower court" or
"Court") has original jurisdiction pursuant to 28 U. S. C. § 1331 and § 1391(b).

2. David Sellers, the *pro se* plaintiff[1] was initially employed by The Royal
Bank of Canada and, subsequently by their wholly owned subsidiary, RBC Capital
Markets, LLC[2], in their offices located in New York City during the time relevant
to this action and, therefore, venue properly lies in the SDNY pursuant to 28 U. S.
C. §1391. The Royal Bank does continuous and systematic business, and maintains
offices, and employs personnel in New York City and, accordingly, the appellees
are subject to the jurisdiction of the SDNY.

3. The SDNY's supplemental jurisdiction is invoked pursuant to claims
asserted herein related to New York State Labor and Human Rights laws, pursuant
to 28 U. S. C. §1367(a).

---

[1] The appellant, hereinafter the "*pro se* plaintiff" or "plaintiff."

[2] Both "The Royal Bank of Canada" and "RBC Capital Markets, LLC" hereinafter referred to as
"defendants" or "RBC."

1

4. Plaintiff's claim was timely filed, within 90 days of receipt of a Notice of Right to Sue Letter issued by the Equal Employment Opportunity Commission ("EEOC"), as extended pursuant to the terms of a February 15, 2012 Tolling Agreement between the plaintiff and defendants.

5. This appeal follows a final decision of the SDNY, which is one of the six district courts over which the Second Circuit has jurisdiction under 28 U.S.C. § 1295(a)(1). The lower court entered final judgment (ECF[3] No. 110) dismissing the case on January 13, 2014. Plaintiff's Local Civil Rule 6.3 Motion for Reconsideration (ECF No. 111) was timely filed on January 27, 2014. The Court's Memo Endorsement denying plaintiff's Motion for Reconsideration (ECF 113) was filed on January 30, 2014. Plaintiff's notice of appeal (ECF 112) was filed on January 27, 2014, which is timely pursuant to Fed. R. App. P. Rule 3(a)(1) and Rule 4(a)(1)(A).

6. This appeal is from a final order or judgment that disposes of plaintiff's' claims. The defendants' Motion for Summary Judgment (ECF 76) was filed on October 28, 2013. The Court's Memorandum Decision & Order (ECF 108) granting summary judgment was filed on January 8, 2014, and the Clerk entered final judgment (ECF 110) on January 13, 2014.

---

[3] Because of the number of pages involved with the documents cited (over 600) all references are to the Southern District's docket according to electronic case filing (ECF) numbers.

2

## STANDARD OF REVIEW

The Federal Circuit reviews an award of summary judgment *de novo*.

Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010).

See also "I. Standards of Review" under "ARGUMENT" below at p. 13.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the lower court's ruling meets the Fed. R. Civ. P. 56 and SDNY Local Rule 56.1 standards for granting summary judgment.

2. Whether the moving party demonstrated the absence of any genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a)

3. Whether the lower court construed all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor. Dickerson v . Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

4. Whether the lower court did in fact liberally construe the *pro se* plaintiff's pleadings and briefs and read such submissions to raise the strongest arguments they suggest. Bertin v. United States,478 F.3d at 489, 491 (2d Cir. 2007).

5. Whether the lower court's complete withdrawal of the special solicitude due to a *pro se* litigant constituted a proper exercise of discretion. Nielson v. Rabin 12-4313-pv, at 18-19 (2d. Cir. decided Feb. 13, 2014).

3

6. Whether the lower court erred by basing its dismissal of plaintiff's claims upon (a) factual assertions that are the inevitable effects of employment misclassification, and (b) the terms of the defendants' independent contractor agreement itself.

7. Whether the lower court erred when, having denied every single one of the *pro se* plaintiff's discovery requests and granted every one of the defendants' requests, and deemed numerous material disputed facts to be admitted, and disregarded plaintiff's evidence, it found that plaintiff did not make a *prima facie* showing for any of his claims.

## STATEMENT OF THE CASE

1. Prior EEOC proceedings and disposition: **December 7, 2009**: Plaintiff filed a Charge of Discrimination with the EEOC. **February 5, 2010**: Defendants sent a letter to plaintiff threatening to seek reimbursement "…for all costs and fees associated with defending against the EEOC claim…" and any ensuing litigation. (ECF No. 100 at pp. 85-86) **May 16, 2011**: Fifteen months after the fact, the EEOC notified defendants that their February 5, 2010 letter constituted retaliation under Title VII of the Civil Rights Act of 1964 and urged them to withdraw their threats. (ECF No. 100 at p.83) **November 21, 2011**: The EEOC issued a Notice of Right to Sue to plaintiff.

4

2. Lower court's proceedings and disposition: **March 5, 2012**: Plaintiff filed a Complaint against the defendants alleging violations of the Fair Labor Standards Act ("FLSA"), the Employment Retirement Income Security Act of 1974 ("ERISA"), the New York Labor Law ("NYLL"), the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), and Title VII of the Civil Rights Act of 1964, as well as emotional distress resulting from those violations. **June 22, 2012**: Plaintiff filed an Amended Complaint (ECF 3) which added defendants. **June 6, 2013**: The Court filed a Notice of Case Reassignment (ECF 35), to Judge Forrest from Judge Griesa. **October 28, 2013**: Defendants file a Motion for Summary Judgment (ECF 76). **December 9, 2013**: Plaintiff's Opposition to Motion for Summary Judgment (ECF 97) and his Rule 56.1 Response (ECF 99) are timely filed. **December 20, 2013**: Defendants' Objections and Reply to Plaintiff's Response (ECF 99) is filed. **January 8, 2014**: Plaintiff's Sur-Reply in Opposition (ECF 109) to the Defendants' Objections and Reply is filed. **January 8, 2014**: The Court's Memorandum Decision and Order Granting Motion for Summary Judgment (ECF 108) is filed. **January 13, 2014**: The Clerk's Judgment (ECF 110) re: the Court's Memorandum Decision and Order Granting Motion for Summary Judgment is filed. **January 27, 2014**: Plaintiff's Local Rule 6.3 Motion for Reconsideration (ECF 113) is timely filed. **January 27,**

5

**2014**: Plaintiff's Notice of Appeal (ECF 112) from Clerk's Judgment is timely filed. **January 30, 2014**: The Court's Memo Endorsement (ECF 113) denying Plaintiff's Motion for Reconsideration is filed.

## STATEMENT OF THE FACTS

1. On or about August 7, 2006, RMCS entered into a contractual relationship with the Royal Bank of Canada to provide consulting services to RBC and "other members of the RBC Financial Group." The original term of this contract was three months. While performing the work on enumerated consulting projects for the New York Branch of RBC's Group Risk, the contract was extended seven times. (ECF 100-1 at pp. 57-64)

2. Plaintiff worked for Defendants as an independent contractor between August 7, 2006 and January 31, 2008.

3. By the end of 2007 the last of Plaintiff's time-limited projects was coming to a successful close.

4. Plaintiff's claims relate to the period beginning with his employment in RBC's Corporate Banking on February 4, 2008 and do not relate to his prior independent contractor work for RBC's Group Risk, when his employment was properly classified. (ECF 3 at ¶¶ 20-39; 44-61)

5. On December 21, 2007 plaintiff submitted his resume with a cover letter for a regular employment position in RBC's Corporate Banking Municipal Finance

6

Team. In late December 2007 and into January 2008, Plaintiff interviewed with RBC managers. (ECF 100-2 at pp. 32-34)

6. In January 2008, Plaintiff was offered a position as a corporate banking officer working on public finance transactions. (ECF 100 at pp. 2-3, ¶¶4-12)

7. In late January 2008, RBC informed Plaintiff that, in order to allow time for the necessary approvals and meet Corporate Banking's immediate need, and provide a seamless transition from contract to employment, it was necessary to extend the existing contract as a bridge to formal hiring. Id.

8. Under this plan, the Bank would continue to pay Plaintiff the same hourly rate as he was being paid under the old August 7, 2006 Consulting Agreement. The necessary changes in designated supervisor, the nature of services and assignments, and the addition of a weekly compensation cap, as well as extension of the term from February 4, 2008 to May 2, 2008, were implemented in the "Agreement to Provide Additional Consulting Services" and its "Appendix A" dated February 1, 2008, pursuant to the terms of the obsolete August 7, 2006 Consulting Agreement. (ECF 100-1, pp. 65-67) The effective dates of this Agreement to Provide Additional Consulting Services were extended on five occasions.

9. Plaintiff accepted the position in January 2008, based on RBC's representation that Plaintiff was joining Corporate Banking in a capacity no

7

different functionally from an employee, but for the formalities, and that the continued contractual arrangement was a necessary interim step, and that Plaintiff's status as an employee would be formalized within the term of the first contract extension in Corporate Banking, February 4 – May 2, 2008. (ECF 100 at pp. 2-3, ¶¶4-12, p. 46:2 – p. 47:14; p. 48:12-23)

10. Prior to Plaintiff accepting this interim arrangement, RBC's manager, Mr. Shields, stated that (1) Plaintiff would be expected to "put in whatever hours were necessary to get the job done," same as any other regular professional employee in a similar capacity, (2) the Bank could not commit to pay more than 40 hours under the contract, and (3) the Bank expected that Plaintiff would invoice for an amount reflecting an average 40 hour week, or the maximum allowed 160 hours for any four week invoice period, regardless of any hours actually worked in excess of 160 hours. Although Plaintiff had previously been paid by the hour, it was understood between the parties he was now in effect being paid a salary, using his former hourly rate as a basis. Id.

11. Beginning February 4, 2008, Plaintiff assumed the role of a Corporate Banking officer, and immediately began working on various assignments in the Department, involving existing and new public finance clients.

12. Plaintiff worked at RBC in the role of a corporate banker for thirteen months, performing his job in every material respect as a corporate banking officer

8

employed by RBC, including being assigned client relationships. (ECF 100-2 at pp. 36-112; continued, ECF 100-3 at pp. 1-35)

13. Based on feedback from RBC's managers, Plaintiff understood that his performance met or exceeded the Bank's expectations.

14. During the period of plaintiff's employment in Corporate Banking, he did not receive any of the employee benefits provided to comparable employees.

15. During the period of plaintiff's employment in Corporate Banking, he was paid gross wages and issued an annual 1099 Statement and defendants did not pay payroll taxes on behalf of plaintiff.

16. During the period of plaintiff's employment in Corporate Banking, defendants did not pay the employer portion of Plaintiff's Social Security and Medicare taxes to the Internal Revenue Service ("IRS") requiring him to pay the employer's portion of his FICA contribution, reducing his own net income for 2008 and 2009.

17. On or about September 2008, RBC terminated the employment of Mr. Alexander Birr, then age 50 (according to defendants, DOB March 20, 1958) at the time. At that time, Mr. Birr was the manager of the Corporate Banking Municipal Finance Team and had been employed at RBC in various capacities for 27 years (date of hire, June 6, 1981). (ECF 100 at pp. 88)

9

18. On or about October, 2008 Mr. Jake Sigmund, then age 33 (DOB May 9, 1975) was promoted into the position left vacant upon Mr. Birr's termination. Prior to his promotion, Mr. Sigmund was a real estate banker in RBC's Corporate Banking for 16 months (date of hire, June 20, 2007) and did not have any significant experience in municipal finance or any experience managing a team of bankers. (ECF 100 at p. 33:17-25, p. 34:19 – p. 35:10; p. 36:8-21; p. 38:17 – p. 39:1)

19. On or about February 10, 2009, plaintiff was informed by RBC (Mr. Shields) that he would not be hired as a regular employee after all, and that his employment with RBC would be terminated.

20. At the time of plaintiff's termination he was 56 years old (DOB August 14, 1952 and a highly experienced municipal finance banker, with over 25 year experience, most of which was managing teams of municipal finance bankers. (resume at ECF 100-2 at pp. 33-34)

21. Plaintiff's employment with RBC was terminated effective February 27, 2009.

22. On or about February 10, 2009, Mr. Shields told the plaintiff that RBC planned to hire more junior employees to work in public finance and that his employment would be terminated. (ECF 100 at p. 56:1-24)

10

23. During the six month period September 2008 to February 2009 the employment of all four employees over the age of 40, including the plaintiff, who reported to RBC's manager, Mr. Shield's, was terminated. (ECF 100 at p.88)

## SUMMARY OF THE ARGUMENT

The Court's grant of summary judgment contravenes the spirit and the letter of Federal and Local rules 56 and 56.1 and the laws mandating preferential treatment of a *pro se* non-moving party's pleadings by: (1) overlooking the Defendants' failure to properly object to plaintiff's disputed and additional facts and by deeming numerous disputed facts to be admitted; (2) ignoring numerous disputed facts that are material and admissible pursuant to Rule 56 and the Federal Rules of Evidence; (3) viewing every factual dispute in the light most favorable to the moving party, giving that party every benefit of any reasonable inferences that could be drawn from their facts, and interpreting their facts in the light most favorable to the moving party; (4) not liberally construing pleadings and briefs submitted by the *pro se* plaintiff, instead reading his submissions to raise the weakest arguments they suggest; (5) not investigating plaintiff's discovery requests, but denying every single one, and granting every single one of the defendants' requests; and (6) having systematically declaimed the probative value of the non-moving/ *pro se* party's evidence and arguments, finding that his

11

pleadings failed to demonstrate a single disputed material fact or a *prima facie* case with respect to any of his claims.

The lower court particularly erred when it hinged its dismissal of the plaintiff's employment misclassification claims on (1) the inevitable effects of employment misclassification, and (2) the terms of the defendants' independent contractor agreement.

The plaintiff presented sufficient evidence of genuine issues of material fact and made a *prima facie* showing of his (1) employment misclassification, (2) age discrimination and (3) retaliation claims, sufficient for the purpose of defeating the defendants' Rule 56.1 Motion, when properly viewed in terms of the laws and rules that determine the conditions precedent for granting summary judgment against a *pro se* non-moving party.

## ARGUMENT

### I. Standards of review.

1. Fed. R. Civ. P. 56(a) mandates that summary judgment may not be granted unless, based on admissible record evidence no material facts are in dispute and the moving party is entitled to summary judgment as a matter of law.

2. "The moving party bears the burden of demonstrating 'the absence of a genuine issue of material fact.'" CelotexCorp. v. Catrett, 477 U.S. 317, 323 (1986).

12

3. In reviewing a motion for summary judgment the Court must "construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010)

4. The Court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." Bertin,478 F.3d at 489, 491.

5. The court must afford *pro se* plaintiff's pleadings solicitude in general, but especially when considering an opposing party's motion for summary judgment. "Recognizing that the [plaintiffs] were acting pro se, the district court should have afforded them special solicitude before granting the [defendant's] motion for summary judgment.) Nielson v. Rabin 12-4313-pv at 19-20 (2d Cir. decided Feb. 13, 2014) (citations omitted).

6. The Federal Circuit may scrutinize the trial tribunal's decision for reasons to support its exercise of discretion. See, e.g., Townsend v. Consulting Corp., 929 F.2d 1358, 1366 (9th Cir. 1990) ("We must know to what we defer; when we are not certain of the District Court's reasoning, or when we cannot discern whether the District Court considered the relevant factors, we must remand.").

7. Although the Federal Circuit will try to discern from the trial court's opinion the basis for its decision, such discernment cannot be made from "a naked

phrase for which no basis is set forth." Fromson v. Western Litho Plate & Supp. Co., 853 F.2d 1568, 1570, 7 U.S.P.Q.2d 1606, 1608 (Fed. Cir. 1988).

8. The court may remand a case "because insufficient findings preclude meaningful review." Grayco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 791, 35 U.S.P.Q.2d 1255, 1260 (Fed. Cir. 1995).

9. The burden placed upon the plaintiff to prove a *prima facie* case is minimal. Shub v. Westchester Cmty. Coll., 556 F. Supp. 2d 227, 253 (S.D.N.Y. 2008)

## II. The moving party did not demonstrate the absence of a genuine issue of material fact.

The defendants' Rule 56.1 Statement sets forth 92 alleged "undisputed material facts." (ECF 78) The plaintiff's Rule 56.1 Response disputes 72 of these factual assertions[4], and agrees that 20 of the statements are undisputed.[5] (ECF 99 at pp. 1-27) The plaintiff's Rule 56.1(b) "Statement of Additional Facts Requiring the Denial of Defendant's Motion for Summary Judgment" sets forth 42 additional material facts. (ECF 99 at pp. 27-35)

The plaintiff's Rule 56.1 numbered opposition responses and additional material facts are specific, material and supported by admissible evidence and

---

[4] Plaintiff's Rule 56.1 Response (ECF 99) spells out 60 objections to admissibility and 84 reasons for disputing defendants' statements.

[5] However, plaintiff qualified his agreement with 12 of the 20 factual statements. (ECF 99 ¶¶12, 52, 53, 64-67, 78, 82, 83, 87, 88)

14

comply with the requirements of Fed.R.Civ.R. 56 and Local Rule 56.1. The defendants' sweeping claims to the contrary do not change the fact that they failed to challenge plaintiff's opposition statements with the numbered paragraph-by-paragraph specificity required by Rule 56.1. Instead they lumped together plaintiff's numbered opposition statements under broad objections (e.g., arguing that 23 of plaintiff's numbered Rule 56.1 statements "constitute argument or speculation") and attempted to support their generalizations with a handful of examples. (ECF 102 at p. 2 fn. 2) The defendants' broad brush-stroke reply prevents a useful review of plaintiff's Rule 56.1 factual statements, whether for compliance with Rule 56 or for their probative value for summary judgment purposes.

The defendants in effect admitted to abdicating responsibility for objecting with the specificity required by Rule 56 when they note that they "...do not dispute any fact that the court finds material and based on admissible record evidence." (ECF 102 at p. 2)

In no place did the Court find that plaintiff's Rule 56.1 pleadings failed to conform to the requirements of Federal or Local rules governing summary judgment or evidence.

**III.    The lower court erred when it did not construe any of the Rule 56 evidence in the light most favorable to the non-moving party or draw any inferences or resolve any ambiguities in its favor.**

Even though the defendants' abdicated their Rule 56.1 responsibility to

specifically respond to plaintiff's numbered opposition statements and additional

facts, the Court did not accept as a disputed material fact a single one of the

plaintiff's statements. In no place did the Court's Judgment construe any evidence

"in the light most favorable to the non-moving party," or draw a single inference,

or resolve a single ambiguity, in favor of the non-moving party. The Court did not

"liberally construe pleadings and briefs submitted by [the ] *pro se* litigant[s], [or]

read[] such submissions to raise the strongest arguments they suggest..." The

Court did not afford the *pro se* litigant's pleadings any solicitude, no less "special

solicitude."

The Court's wholesale dismissal of the plaintiff's Rule 56.1 opposition

statements unfairly and unreasonably puts him in a position to re-argue nearly

every single one of his facts and arguments, which is not possible or appropriate

for an appellate brief.

The lower court exercised judicial discretion when it determined what facts

it deem admitted and relevant. However, legal error is embedded in this apparently

discretionary decision. In the case of a motion for summary judgment, especially

with regard to statements made by a *pro se* litigant, the discretion to deem facts

16

admitted or ignore facts as irrelevant is ultimately governed by rule of law. A summary judgment is made on the basis of facts established on account of the absence of contrary evidence or presumptions and such establishments of fact are rulings on questions of law as provided in Rule 56(a) and are not shielded by the "clear error" standard of review. (Fed. R. Civ. P. 52, Notes of Advisory Committee on Rules—1991 Amendment).

The Federal Circuit has not tolerated an exercise of discretion when the lower court fails to explain its reasons. Findings adequate to permit meaningful review of the trial court's exercise of discretion are essential. S. C. Johnson & Sons, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201, 228 U.S.P.Q. 367, 369 (Fed. Cir. 1986) The Federal Circuit has an interest in reviewability that demands articulation of the trial court's reasons. Absent reasons on the record, the Federal Circuit would have no basis for its review. The Federal Circuit has said, for example, that denial of relief without any justifying reason is not an exercise of discretion; it is an abuse of discretion. Kalman v. Berlyn Corp., 914 F.2d 1473, 1480, 16 U.S.P.Q.2d 1093, 1098 (Fed. Cir. 1990)

The Court errs when it uses the widest brushstroke possible to paint a picture overwhelmingly favorable to the moving party, in every instance incorrectly claiming in its Judgment (ECF 108) that "the following facts are undisputed" (p. 1), the "plaintiff does not dispute the vast majority of relevant facts" (p. 3),

17

"Numerous undisputed facts" ( p. 5), "despite his undisputed admissions" (p. 6),

"While plaintiff disputes none of these assertions" (p. 6, fn. 3), "The undisputed

facts show" (p. 12), "it is clear on the undisputed facts" (p.13 fn. 3), "Numerous

undisputed facts show" ( p. 16), "Instead of contesting these facts (p. 18), "The

undisputed facts drive" (p.19), "the undisputed facts weigh heavily" (p. 22), "No

genuine issue of material fact exists" (p. 24), and, finally, "On the undisputed

facts" (p. 24)

Even if each one of these assertions collapses in the face of evidence, they

work as innuendo,[6] prejudicing the plaintiff's Rule 56 statements.

One example serves to question these repeated assertions, upon which the

Court's summary judgment absolutely hinges. Concerning the Defendants' alleged

undisputed material fact No. 50, the Court (ECF 108, p. 6, ¶2) says: "But Plaintiff

does not dispute [underline added] that he was not required to arrive or depart at

the office at any particular time, take lunch or rest breaks for prescribed time

periods, or clock in or out.(ECF 78 at p. 15 ¶50.)" On this same point, later the

Court says: "The undisputed facts show that ... [plaintiff] was not required to

arrive or depart the office at any particular time, take lunch or rest breaks for

prescribed time periods, or clock in or out." [emphases added] (ECF 108, p. 12)

---

[6] "Innuendo usually refers to a situation where a person expresses a factual situation and a wrong
interpretation is derived out if it." (http://definitions.uslegal.com/i/innuendo/)

18

Here is what the plaintiff actually said in his Rule 56.1 Response (ECF 99 at p. 16

¶ 50):

> *50. (a) Object to admissibility of the asserted fact because the affiant Mr.*
> *Shields failed to attest to the truth, accuracy and authenticity of the evidence*
> *cited (See Defendants' Shields Aff. Ex. B), and because the evidence cited*
> *includes only the drafts and not the invoices signed by the Plaintiff and*
> *approved by the affiant Mr. Shields, which, tellingly, Defendants did*
> *provide to the EEOC. (b) Object to admissibility because the evidence*
> *cited by the Defendants does not prove their statement, which requires a*
> *comparison of Plaintiff's actual hours to the hours of a regular employee*
> *with comparable assignments and responsibilities, which they do not do. (c)*
> *Dispute because Plaintiff was in fact expected to maintain the same schedule*
> *as a regular employee, including being in his office during regular business*
> *hours, as evidenced by the Plaintiff's invoices approved by RBC*
> *supervisor and manager, Patrick Shields. [original emphasis] Also refer*
> *to ¶52 below. See Sellers Aff. Ex. 16-19, and Ex. 2: EEOC 136-177 of 262.*
> *See also Additional Facts No. 11, 12, 15, 17, 18 below.)*

The plaintiff's Rule 56.1 Opposition (ECF 97 at p. 13) serves to further

gainsay the Court's assertion that the 'plaintiff does not dispute' this alleged

undisputed material fact No. 50:

> *(1) Plaintiff's invoices for the period February 4, 2008 – February 27, 2009,*
> *all of which were approved by RBC's manager, Pat Shields, provide*
> *irrefutable evidence that during this period the Plaintiff worked and average*
> *of 45 hours weekly, over 95% of which was in RBC's office. (2) The*
> *undeniable fact that Plaintiff was provided his own office and every single*
> *tool and all supplies he needed to complete his assignments -same as a*
> *regular employee- is additional evidence that he was expected to be in his*
> *office during regular working hours. (3) Plaintiff's commute averaged 4*
> *hours daily or 980 hours (245 days in office x 4 hours) during the relevant*
> *time period at a cost of over $250 a month. A reasonable person might ask*
> *why the Plaintiff would spend this much time and expense going to and from*
> *RBC's office if he was not required to do so. (4) Defendants have not and*
> *cannot disprove the fact that Plaintiff's hours in the office were*
> *indistinguishable in any meaningful way from the hours worked by a regular*

19

*employee doing comparable work and their assertion to the contrary is false.*

This is just one example among many where the Court ignores the plaintiff's actual Rule 56.1 statements. Further, in every single place where the Court cites plaintiff's Rule 56.1 factual statements, or evidence, it does so for the purpose of dismissing them.

The Court's summary judgment hinges upon 38 of the defendants' Rule 56.1 alleged "undisputed material facts," every one of which is accepted by the Court for face value and not one is questioned.[7] In reality, however, the plaintiff disputed and/ or objected to the admissibility of 31 or 82% of these factual assertions.[8] In order to make its opening claim (ECF 108, p.1) that "The following facts are undisputed, unless indicated otherwise," the Court, without ever expressly saying so, deemed admitted every single one of these 31 *de facto* disputed Rule 56.1 statements.

Throughout its Judgment the Court cites 13 or only 14% of the plaintiff's 92 Rule 56.1 Response statements.[9] In every single case the Court views these (i.e., the non-moving *pro se* party's) statements and associated evidence in unfavorable terms, giving him no benefit of any reasonable inferences. In no case does the Court resolve an ambiguity in favor of the *pro se* plaintiff/ non-moving party. The

[7] ECF 99 at ¶¶ 3, 5-9, 12, 14-17, 19-26, 32, 36-42, 44-45, 50-52, 54, 57, 60-61, 68, 73.
[8] ECF 99 at ¶¶ 3, 6-9, 14, 16, 19, 20-26, 36-42, 44-45, 50-51, 54, 57, 60-61, 68, 73.
[9] ECF 99 at ¶¶ 18, 23, 25, 30, 40-45, 48-50.

20

reviewer searches in vain for a single instance where it could even be argued that the Court did "liberally construe" the *pro se* plaintiff's pleadings and briefs or "read his submissions to raise the strongest arguments they suggest..." or any place where the Court afforded his pleadings any "special solicitude." The Court is unrelenting in its effort to find that the *pro se* plaintiff does not have a scintilla of evidence establishing a genuine, material issue for trial, including his substantial affidavit (ECF 100 at pp. 1-14), with its numerous admissible exhibits and his substantial deposition excerpts. (ECF 100 at pp. 19-80) In fact, the words "affidavit" and "deposition" appear nowhere in the Court's Judgment.

Plaintiff's Rule 56.1 statements and his supporting evidence and associated arguments, individually and in concert, are sufficient for the purpose of creating a material issue of fact and making a *prima facie* showing of his various claims, especially if properly viewed in the light of Rule 56 requirements to "construe evidence in the light most favorable to the non-moving party" and legal requirements obligating the Court to liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest."

Examples of the plaintiff's material and relevant Rule 56 factual statements ignored by the Court will be incorporated below.

21

## IV.   The lower court erred when it did not deem as admitted any of the *pro se* non-moving party's Rule 56.1 additional facts.

Plaintiff's Rule 56.1 Response includes his rules-compliant "Statement of

Additional Facts Requiring the Denial of Defendants' Motion for Summary

Judgment." (ECF 99 at pp. 27-35) In no place does the Court's Judgment cite <u>a</u>

<u>single one</u> of these 42 additional facts, whether in a favorable or unfavorable light.

In no place does the Court explain its reasons for doing this with any useful

specificity. As noted above, the defendants, with reference to the plaintiff's Rule

56.1 opposition statements, failed to object to plaintiff's statements with the

specificity required by Rule 56.1, stating instead that they "...do not dispute any

fact that the court finds material and based on admissible record evidence." (ECF

102 at p. 2, lines 2-4) Yet, evidently, the Court did not deem a single one of the

plaintiff's additional factual statements to be material and based on admissible

record evidence.

In contrast, the Court did not question the admissibility of a single one of the

defendants' assertions or supporting evidence. In effect, the Court deemed

admitted the vast majority (31 or 82%) of the 39 alleged undisputed facts that it

cited, but none of the *pro se* plaintiff's additional facts. And the Court deemed

every single one of the plaintiff's counter-factual statements to be immaterial

and/or irrelevant.

22

The cumulative effect of such a wholesale disregard of plaintiff's pleadings cannot be reconciled with either the Rule 56 standards for granting summary judgment or the legal requirements for treatment of a *pro se* litigant's pleadings and briefs. Nor can such a wholesale disregard for the pro se plaintiff's Rule 56 briefs be done without prejudicing adjudication of the plaintiff's claims.

## V. The lower court erred when it relied upon the factual cause and effects of employment misclassification to dismiss the pro se plaintiff's FLSA, NYLL, ERISA, ADEA and NYSHRL claims.

The Court's analysis of the important fifth leg of the 'economic realities test'[10] hinges upon the indicia of misclassification, not employment, and is flawed as such. (ECF 108 at pp. 17-18)

A number of courts have ruled that employee misclassification is not determined by how employers label their workers. The SDNY recently stated that the reason why the plaintiffs did not receive benefits or W-2s to begin with was because the employer treated them as independent contractors. Thus, "[t]o assign this factor much weight would effectively allow any employer to control, under New York law, a worker's status simply by labeling her an independent contractor and denying her employee benefits." Hart v. Rick's Cabaret Int'l, Inc., No. 09 Civ.

---

[10] Because of the 14,000 words limit for appellant's opening brief, plaintiff was obliged to redact from his final copy additional comments concerning deficiencies in the Court's analyses of the first, second and fourth elements of the economic realities test, as well as additional comments pertaining to the fifth element. As elsewhere in the Court's Summary Judgment, the Court's analyses ignores numerous of the plaintiff's Rule 56.1 objections and arguments which bear on the economic realities test.

23

3043(PAE), — F. Supp.2d —, 2013 WL 4822199, at *4-5 (S.D.N.Y. Sept. 10, 2013), reconsideration denied in part by Hart v. Rick's N.Y. Cabaret, Int'l, Inc., No. 09 Civ. 3043(PAE), — F. Supp. 2d — (S.D.N.Y. Nov. 18, 2013). In Brock v. Superior Care, Inc., 840F.2d (2d. Cir. 1998) the Court stated that an employer's "self-serving" labeling of workers as independent contractors is not controlling. In Vizcaino v. Microsoft, 120 F.3d (9th Cir. 1997) the Court reviewed the agreements signed by the workers when they were hired as independent contractors and concluded that the waivers of benefit provisions in the agreements were not controlling because they assumed the workers were independent contractors to begin with. The court applied the rule of *contra preferendum*, which provides that a document will be interpreted most strongly against its drafter, in this case that would be the defendants.

The Court hinges its dismissal of plaintiff's FLSA, NYLL, ERISA, ADEA and NYSHRL claims on its 'economic realities test' analysis, which in turns hinges on a number of the defendants' alleged "undisputed material facts," which in turn are the inevitable effects of the employment classification to begin with. Further, the Court's analysis implicitly accepts the defendants' independent contractor agreement for face value. Because these alleged "undisputed material facts" are based upon the central disputed premise (plaintiff's employment classification) the Court should have disallowed them as legal arguments and conclusions. (See

24

plaintiff's objections at ECF 99 at ¶¶ 1(a), 1(b), 3(a), 28(a), 36(b), 37(a), 38(b), 39(a), 40(a), 41(a), 42(a), 43(a), 44(a), 45(a), 48(a), 49(a), 51(c), 58(a), 63(a), 77(a).)

In particular, the Court errs in its analysis of the fifth element of the five part 'economic realities rest' (ECF 108 at pp. 16-19), where the Court bases its finding that the plaintiff was not an "integral part of the employer's business" on the inevitable effects of his misclassification, or byproducts of the terms of defendants' independent contractor agreement. The Court's analysis relies on a number of "facts": that the plaintiff did not receive fringe benefits, paid vacations, sick days, business cards, flu shots, a job title, "typical HR type benefits, " or "benefits of employment provided to employees doing comparable work," and he "had no authority to commit RBC's balance sheet," and he was not 'on his employer's payroll,' and he received 1099 forms from RBC, and RBC "did not withhold payroll or other employment related taxes or issue W-2 forms to the plaintiff." (ECF 108 at pp. 16-17) Every one of these facts is an inevitable byproduct of the terms of the defendants' independent contractor agreement, which determined the plaintiff's employment status, which is in dispute. The Court uncritically repeats the defendants' litany and ignores the *pro se* non-moving party's arguments on this point. In the process, the Court ignored numerous indicia of employment and evidence that appear throughout the plaintiff's Rule 56 briefs,

25

including the numerous exhibits attached to his affidavit, none of which is referenced by the Court.

If 1099 tax-treatment and no W-2 wage withholding and the absence of employment benefits, etc., etc., determines that a worker is properly classified as independent contractor, then, as a practical matter, it would be impossible for a worker to prove employment misclassification. This is a tautological argument, flawed and prejudicial to the plaintiff as such. (See also the Court's reasoning below related to the 'same actor' defense at p. 36, and proving a *prima facie* showing of retaliation at p. 48.) Misclassifying workers as "independent contractors" instead of "employees" serves the purpose of allowing an employer to get around the FLSA's compensation requirements and other employment laws and to lower its tax bills and avoid the cost of benefits, etc., in the process. For this reason, none of the tests used by the courts to determine whether a worker is properly classified, including 'common-law,' 'economic reality' or the 'hybrid' tests, give any significant weight to the fact that a worker receives a 1099 or that they report their income as a non-employee, because these and similar facts in and of themselves reveal nothing about the nature of the underlying employment relationship. How a worker is paid and whether s/he receives employee benefits and how s/he reports income is determined by the contractual relationship between the worker and the employer and, as noted above, the courts (see e.g., Hart No. 09

26

Civ. 3043(PAE), — F. Supp.2d —, 2013 WL 4822199, at *4-5; <u>see also Brock,</u>

840 F.2d) have found that this is not sufficient to determine the worker's status.

<u>Therefore, the Court's reliance on these factors should not be dispositive for the</u>

<u>purpose of dismissing plaintiff's FLSA, NYLL, ERISA, ADEA and NYSHRL</u>

<u>claims, especially at the summary judgment stage involving a non-moving party</u>

<u>who is acting *pro se.*</u>

## VI. The Court's understanding of plaintiff's position and work is inadequate for the economic realities test.

It is not possible to determine whether the plaintiff's work was an "integral"

or "essential" part of defendants business or whether "it is an independently viable

enterprise" without understanding the nature of the work, which requires an

understanding of the plaintiff's assignments.

However, the lower court's analysis shows no understanding whatsoever of

the plaintiff's work or the business done by RBC's Corporate Banking Municipal

Finance Team. In no place does the Court even attempt to describe what the

Plaintiff actually did at RBC. (ECF 108 at pp. 16-19)

Plaintiff's Affidavit and its 64 exhibits contain evidence of his assignments

and how he was integrated into Corporate Banking. Numerous e-mails between the

plaintiff and RBC's managers and internal and external constituencies prove

conclusively that the plaintiff's role was integral to RBC's Corporate Banking

27

Municipal Finance business. Yet, the lower court makes no reference whatsoever to this otherwise admissible evidence. Neither the defendants nor the lower court have challenged the admissibility of plaintiff's evidence, including his affidavit. (ECF 100-2 at pp. 36-112; ECF 100-3 at pp. 1-91)

For example, in several e-mails RBC's managers introduce the plaintiff to other RBC employees and to clients as follows: *"Suggest we all participate in the first call, as well as David Sellers, a very experienced banker who just joined our team...I'm hoping we can make David Sellers the point person."* (ECF 100-2 at p. 42) And, *"...a new member of my team, David Sellers..."* (ECF 100-2 at p. 64) And, *"Please copy my colleague, David Sellers, on all future correspondences."* (ECF 100-2 at p. 84) In over a thousand e-mails related to plaintiff's work he appears no different from a regular employee doing the essential and integral business of RBC. The defendants have shown no communications among the plaintiff and internal and external constituencies of the bank that indicate he is anything other than a regular employee. In no place is he introduced or referred to as a "consultant" or "independent contractor."

While no single one of these e-mails is dispositive, they act in concert with many other pieces of admissible evidence to prove the plaintiff's work was absolutely integral to the defendants business. All of which was completely ignored by the lower court.

The lower court's summary judgment does not consider other relevant and material parts of plaintiff's Rule 56 briefs. For example, the Court's unmediated adoption of the defendants' references to "projects," insinuating that his work was somehow different from the assignments done by regular employees. The plaintiff disputed numerous alleged facts related to the defendants' use of the term "projects," including a number of facts relied upon by the Court for its summary judgment. (ECF 99 at ¶¶16, 26, 52, 53, 55, 57; p. 31, Nos. 19 and 21. See also plaintiff's deposition, ECF 100 at p. 42:13-25; p. 43:1-25; p. 44:1-5)

Neither the defendants nor the Court show a scintilla of evidence proving that plaintiff's work was not integral to RBC's business, or in any way distinguishable from that of a regular employee with comparable assignments.

## VII. The lower court erred when it based its dismissal of the pro se plaintiff's FLSA, NYLL, ERISA, ADEA and NYSHRL claims on its flawed analysis of economic factors.

The Court's analysis of the important second leg of the 'economic realities test,' pertaining to the opportunity for profit or loss and his investment in the business, hinges upon a material factual error and a prejudicial view of the evidence.

In evaluating the investment factor, Courts have examined the parties' relative investments. This factor compares "each worker's individual investment to that of the alleged employer." Hopkins v. Cornerstone Am., 545 F.3d at 344 (5th

29

Cir. 2008) (even where the plaintiffs "made 'substantial investments' in their individual offices," those investments paled in comparison to the purported employer's "greater overall investment in the business scheme"). An indication that a company's investment predominates is that workers "could not operate" without the company-provided resources – illustrating how this factor contributes to answering the ultimate question: whether workers are as a practical matter economically dependent on the company. Usery v.Pilgrim Equip. Co., Inc., 527 F.2d at 1314 (5th Cir. 1976); Berrocal v. Moody Petroleum, Inc., No. 07 Civ. 22549, 2009 WL 455448, *7 (S.D. Fla. Feb. 22, 2009) (plaintiff "did not invest in equipment or materials," which weighed in favor of her "being an employee"); Solis v. Int'l Detective & Protective Serv., Ltd., No. 09 Civ. 4998, 2011 WL 2038734, *9-11 (N.D. Ill. May 24, 2011) (company "provided the majority of equipment that the [workers] needed to carry out their tasks," weighing the relative investment factor towards employee status).

The opportunity for profit or loss is interrelated with the relative investments factor. Baker v. Flint Eng'g & Const. Co., 137 F.3d at 1442.5 (10th Cir. 1998) The Fifth Circuit found, for example, that there was an opportunity for profit or loss where workers could control their cost of their investments, thus increasing their profits. Thibault v. Bellsouth Telecomms., Inc., 612 F.3d at 848 (5th Cir. 2010).

The Court's analysis of these aspects of the 'economic realities test' is
flawed for the following reasons:

(a) The Court commits a plain error of fact when it states that plaintiff had a
significant "opportunity for profit or loss" and "...plaintiff did control his
opportunity to make a profit or loss for his contracting company...by deciding
which contracting projects to take on." (ECF 108 at p.14, fn. 6) The source of this
error is found earlier in the Court's Judgment, where the Court misunderstands one
of the defendants' alleged statements of undisputed material fact (ECF 78 at ¶57).
The Court incorrectly asserts that "During the same period of time, plaintiff also
provided services for other entities, including the City of Port Saint Lucie, the State
of California, the University of Pittsburgh Medical Center, and the City of
Harrisburg." (ECF 108 at p. 5) The Court repeats the error when it later states:
"Plaintiff also provided services for various other entities during his engagement
with RBC." [underline added](ECF 108 at p. 13) In fact, plaintiff provided no
services as an independent contractor to any of these entities, all of which are
clients of defendant RBC Capital Markets, LLC.

(b) The plaintiff was not required to make any investment *whatsoever* in his
work for the defendants. The Court incorrectly and unfairly seeks to diminish the

31

evidentiary value of this fact.[11] It is undisputed that the defendants supplied the

plaintiff with his own office and all the instrumentalities, tools and materials he

used to complete his assignments, including an office phone with RBC phone

number, voicemail and voice recording, conference call subscription, Blackberry

mobile phone, RBC e-mail address, laptop computer, permission to use printer and

fax number, and all necessary office supplies and Plaintiff was required to supply

nothing. The plaintiff's travel and any other expenses were fully reimbursed. (ECF

100 at p. 3 ¶¶13, 14, 16) Neither the defendants nor the Court has identified a

single investment that Plaintiff made in order to do his work at RBC. The

plaintiff's "investment" was exactly the same as the "investment" made by regular

employees doing comparable work at the time, an important fact overlooked by the

Court.

(c) The plaintiff's one consulting relationship outside RBC is immaterial by

any reasonable measure for the purpose of evaluating plaintiff's employment

classification. As the lower court noted, courts evaluate the totality of the

circumstances surrounding a worker's employment, i.e., all the conditions under

which a person is working. (ECF 108 at p. 10) In this larger constellation of

employment indicia the plaintiff's one other contract is immaterial, particularly for

---

[11] The Court says it "...acknowledges that the plaintiff appears to have made minimal investment in the defendants' business." [underline added] In fact, the plaintiff made no investment, not a "minimal" investment. This fact is undisputed even by the defendants. It does not just "appear" that way. (ECF 108 at p. 14, fn. 6)

32

summary judgment. However, the Court exaggerates its importance while completely ignoring other material indicia of employment. Several facts the Court did not view in the light most favorable to the non-moving party/ *pro se* plaintiff include: (1) the Credit Suisse contract entailed a total 37 hours or 1.6% of the 2,265.45 hours Plaintiff worked at RBC; (2) the plaintiff's work for Credit Suisse averaged three hours a week over a three month period, compared to the plaintiff's average 45 hours a week over 13 months, 95% of which was done in the RBC's offices; (ECF 100-1 at pp. 68-70; ECF 100-2 at pp. 1-20) (3) plaintiff's income from Credit Suisse, his only consulting income outside of RBC, amounted to 2.5% of his income from RBC over the 13 month period in question. The plaintiff's income from Credit Suisse did not diminish his financial dependence on RBC, nor did it represent a "significant 'opportunity for profit or loss' through his consulting company." In fact, Plaintiff was not able to consider providing any further services to Credit Suisse or any other potential consulting client because, averaging over 45 hours a week in RBC's offices, by any reasonable standards, his work for the defendants was a full-time job. The Court completely ignores the critical evidence: plaintiff's monthly invoices, documenting his hours worked in and out of the office, and reimbursed travel expenses, every one signed-off by RBC's manager Mr. Shields. (ECF 100 at pp. 93-104; continued, ECF 100-1 at pp. 1-30; see also

33

ECF 99 at pp. 10-11 ¶¶30, 31, 33, 35 and p. 33 ¶29; see also ECF 100 at pp. 5-6
¶¶30-33)

(d) Plaintiff's RBC compensation demonstrates no "significant 'opportunity
for profit or loss' through his consulting company:" (1) the plaintiff's invoices, all
approved by defendants' manager, Mr. Shields, show that he averaged over 45
hours a week working for RBC (ECF 100 at pp. 93-104; continued at ECF 100-1 at
pp. 1-30); (2) although plaintiff was paid an hourly rate, his agreement with the
defendants capped the number of hours for which he would be paid at 40 (the
"maximum weekly fee"), eliminating profitability from the equation, i.e., since the
Plaintiff would not be paid more for his additional time, there was no real potential
for profit (ECF 100-1 at p. 65 ¶#2); (3) notwithstanding the hourly contract terms,
in effect, the plaintiff was being paid a salary equivalent, which was the
understanding. (ECF 97 at p. 7; ECF 100 at p.3 ¶12) In fact, like a salary,
plaintiff's compensation was the same amount every month. (ECF 100 at pp. 93-
104; continued at, ECF 100-1 at pp. 1-30) Rather than assessing the workers'
ability to increase their earnings, courts may also focus on the impossibility that
they would suffer a loss. Sec'y of Labor v. Lauritzen, 835 F.2d at 1536 (2d Cir.
1987).

(e) Plaintiff's work for the defendants was entirely dependent on the clients,
accounts and transactions assigned to him, which he did not in any way determine

or control. It is not disputed that the plaintiff did not advertise his consulting

services and did not have a website. (ECF 100 at p. 29) Plaintiff had no need to

seek assignments, inside or outside RBC. Courts have found that the fact that a

company plays a significant role in drawing customers – such as being responsible

for advertisement, location, business hours, maintenance of facilities – shows that

the employer exercises a high degree of control over the workers' opportunity for

profit. Reich v. Circle C, Inv., 998 F.2d at 328 (5th Cir. 1993); see also Usery, 527

F.2d at 1313.

## VIII. The lower court erred when it relied on the defendants' 'same actor' defense for the purpose of dismissing the *pro se* plaintiff's NYCHRL age discrimination claims.

The Court relies heavily upon the defendants' 'same actor' defense to

disregard a number of the plaintiff's Rule 56 statements (and evidence) and to

dismiss plaintiff's NYCHRL discrimination claim. Here is another example of how

the Court failed to "draw a single inference, or resolve a single ambiguity, in favor

of the non-moving party" or to "liberally construe pleadings and briefs submitted

by *pro se* litigants, [or]read[] such submissions to raise the strongest arguments

they suggest..."

The Court's finding of no *prima facie* case of age discrimination hinges

upon the defendants' assertion that their manager, Mr. Shields, who the Court says

"was himself over 40 years old at the time in question," was the same decision

35

maker who hired Plaintiff and then discontinued his services. (ECF 108, pp. 22-
23) This 'same actor' defense is premised on an underlying rationale that "it is
suspect to claim that the same manager who hired a person in the protected class
would suddenly develop an aversion to members of that class." Ramos v. Marriott
Int'l, Inc., 134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001) citing Watt v. New York
Botanical Garden, No. 98 Civ. 1095, 2000 WL 193626, at *7 (S.D.N.Y. Feb.16,
2000) (citations omitted).

However, particularly at the summary judgment stage, the Court erred when
it ignored the plaintiff's argument that the "same actor" defense is only an initial
presumption and that it can be rebutted. (ECF 97 at pp. 24-26) The 'same actor'
Mr. Shields may have many different motivations and pressures in the workplace
to make employment decisions, including pressure from other employees who are
consulted or who direct his decisions, ambivalence about a protected class, or a
partial acceptance of individuals in a protected class if hired for a limited time
period. The Court has referenced no evidence to support the defendants claim that
Mr. Shields was in fact the "decision maker" because the defendants have not
offered any evidence. In any case, the presumption permitted under the 'same
actor' defense should not be accepted as a substitute for a thorough factual inquiry
(Copeland v. Rosen, 38 F.Supp.2d 298, 305 (S.D.N.Y.1999); Watt, 2000 WL

193626, at *7) and the Court errs when it hinges its dismissal of plaintiff's NYCHRL claim on this defense, particularly at the summary judgment stage.

It is important to note that: (1) many of the factual assertions upon which the Court's summary judgment hinges are supported by this 'same actor's' (Mr. Shields) self-serving affidavit; (2) the defendants, with the Court's support, denied the plaintiff his right to discovery and to depose witnesses, including this 'same actor' upon whom the Court now relies implicitly; and (3) the Court's summary judgment would, if affirmed, again deny the plaintiff his right to cross-examine and test the veracity of this self-interested affiant's testimony. (See ARGUMENT XI below concerning discovery) Especially in the absence of documentary evidence supporting the 'same-actor's' Rule 56 statements, a trial is required to determine whether, for example, this 'same actor' hired and/or fired Plaintiff alone or in conjunction with other decision makers.

There is no logical basis for believing that an individual in a protected class is incapable of discriminating against other individuals in the same class. According to Court's application of the 'same actor' defense, an employer who wanted to fire all its protected workers based on stereotypical presumptions of age could evade legal repercussions by simply ensuring that the person "making the decision" is in the same protected class. The Court's uncritical embrace of the 'same actor' defense would, if affirmed, permit the defendants (and other

37

employers by the precedent) to arbitrage laws against discrimination and thereby

prejudice any plaintiff's age related claims. (See also the Court's reasoning with

respect to proving a *prima facie* showing of misclassification above at p. 27, and

proving a *prima facie* showing of retaliation below at p. 48.)

## IX. The *pro se* plaintiff proved a *prima facie* case of age discrimination.

The Court erred when it dismissed plaintiff's first cause of action pertaining

to his FLSA and NYLL employment misclassification claims and compounded this

error when it used this action as the basis for dismissing his ERISA claims and

"any cause of action related to age discrimination under ADEA or NYSHRL."

By dismissing *a priori* the plaintiff's ADEA and NYSHRL age

discrimination claims the Court avoided testing these claims according to the

McDonnell Douglas burden-shifting framework, and thereby evaded consideration

of numerous factual statements that in concert suffice for the purpose of a *prima*

*facie* showing at the summary judgment stage. McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973).

Turning to the plaintiff's NYCHRL claim, the Court errs when it avoids

evaluating plaintiff's age discrimination claim by finding, again *a priori,* that it

"fails at the first step of the McDonnell Douglas analysis." (ECF 108 at p. 21) The

Court's NYCHRL reasoning hinges on (1) the assertion that the plaintiff "...fails

to provide any evidence whatsoever that age was a "motivating factor" in

38

defendants' decision, and (2) its uncritical embrace of the defendants' 'same actor' defense.

As an initial matter, as shown above, the Court uncritically adopts the defendants' Rule 56.1 factual assertions, evidence and arguments concerning the plaintiff's age discrimination claims. The Court never once questions any of the defendants' factual narrative. The Court deemed virtually every fact disputed by the plaintiff to be admitted and/or immaterial and ignored every one of the plaintiff's 42 Rule 56.1 additional facts, including disputed facts specifically bearing on the *pro se* non-moving party's ADEA, NYSHRL and NCHRL claims. (See for example ECF 99 at ¶¶ 2, 3, 4, 18, 19, 23, 60, 61, 63-73, 76, 79, 80; p. 29 Additional Fact No. 8.) In order to accomplish this the Court could not and therefore did not construe any evidence "in the light most favorable to the non-moving party," or draw a single inference, or resolve a single ambiguity, in favor of the non-moving party, (Dickerson v. Napolitano, 604 F.3d) or "liberally construe pleadings and briefs submitted by [the] *pro se* litigant[s], reading such submissions to raise the strongest arguments they suggest..." (Bertin,478 F.3d at 489, 491) or afford the *pro se* litigant's pleadings any solicitude, no less "special solicitude." Nielson v. Rabin, 12-4313-pv (2d Cir. decided Feb. 13, 2014)).

Plaintiff proved a *prima faci*e case of age discrimination using admissible circumstantial evidence. Federal courts have allowed circumstantial evidence and

39

have relied on this jurisprudential tool to help victims of discrimination prove
unlawful bias when there is no direct evidence of age discrimination, as "[t]here
will seldom be 'eyewitness' testimony as to the employer's mental processes."
Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) citing
U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, (1983) (citations
omitted). Circumstantial discrimination claims under the ADEA are analyzed using
the burden-shifting framework set forth in McDonnell Douglas. See also Mattera v.
J.P. Morgan Chase Corp., 740 F. Supp. 2nd 561, 571 (S.D.N.Y. 2010).

Plaintiff has presented more than sufficient evidence to meet his minimal
burden in proving that his termination took place under circumstances giving rise
to age discrimination; that is, that age-based decisions were going on in RBC's
Corporate Banking Group. Shub, 556 F. Supp. 2d at 227, 253 (burden upon the
plaintiff to prove a *prima facie* case is minimal).

The Court errs particularly at the summary judgment stage when it
misstates,[12] dismisses and otherwise ignores the plaintiff's evidence. For just one
example, during the time Plaintiff worked in Corporate Banking (February 4, 2008
to February 27, 2009) there were four (4) individuals over the age of 40 reporting

---

[12] For example, the defendants' September 30, 2011 e-mail to the EEOC provides the names,
dates of birth and dates of separation of defendants' employees who worked RBC's Corporate
banking Municipal Finance Team. There is no reason for the Court to doubt that these
terminations actually occurred. However, the court casts doubt on this evidence when it declaims
"…the terminations of employees, aged over 40 who reported to Mr. Shields have no bearing on
plaintiff's own termination, even if they actually occurred." [underline added] (Attached to
Sellers Aff. Ex. 3: EEOC 014 of 262.)

to Mr. Shields who reported to Mr. Shields (the Court's 'same actor') and the employment of all four individuals was terminated within six months during this period (October 29, 2008 to February 27, 2009). (ECF 100 at p. 88) The manager of the Municipal Team at that time, then aged 50 years old, was among the terminated employees. Further, there is no dispute that this 26 year highly experienced veteran of RBC was replaced by a relatively inexperienced RBC banker, then aged 33. Further, the two corporate bankers hired by Mr. Shields in the period 2008-2009 were, respectively, 28 and 38 years of age. Id. And, Mr. Shields' stated reason for terminating plaintiff's employment was that RBC decided to hire more "junior" people. (ECF 100 at p. 56:1-24) These facts and other evidence ignored by the Court are sufficient, especially for the purpose of summary judgment, to demonstrate that plaintiff's employment status and termination arose out of a work environment where youth was prioritized over experience and business judgment, and older employees were terminated, while younger employees were hired and promoted.

The RBC manager (Mr. Shields) responsible for these terminations and hires is the same affiant whose affidavit is relied upon implicitly for numerous "undisputed material fact" cited by the Court. (ECF 78 at ¶¶5, 14, 16, 19, 23-26, 39, 50-52, 54, 60, 61, 68, 73; see also plaintiff's Rule 56.1 objections, e.g., at ECF 99 at ¶¶ 19, 71, 72) It is important to note again here that the defendants' tactical

41

abuse of discovery prevented the plaintiff from deposing this most critical of witnesses. Plaintiff raised this concern with the Court on several occasions (see ARGUMENT XI below), but for all practical purposes the Court ignored the matter, denied every single one of the plaintiff's discovery requests and granted every single one of the defendants' requests. The Court's grant of summary judgment would, if affirmed, prevent any cross-examination of this witness or any other witnesses who might test the veracity of his affidavit.

To prove a *prima facie* case of age discrimination, the plaintiff must show: "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced [an] adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of employment discrimination." Gorzynski, 596 F.3d at 93, 106, 107).

There should be no dispute that the plaintiff meets the first element of a *prima facie* case, since at the time of his employment in Corporate Banking, he was in the age protected group of employees forty years of age or older, (29 U.S.C. § 631(a)) and Plaintiff was 56 years old when his employment was terminated.

Plaintiff satisfies the third element of a *prima facie* case, insofar as he experienced an adverse action while employed by the defendants, i.e., his employment was terminated at the end of February 2009 and termination is an obvious form of adverse employment action. See, e.g., Gorzynski, 596 F.3d at 107;

42

see also Hrisinko v. New York City Dep't of Educ., 369 Fed.Appx. 232, 235 (2d
Cir.2010).

The Court ignored the plaintiff's detailed arguments concerning the second
and fourth elements of his *prima facie* case, that is, his qualifications and that his
termination took place under circumstances which give rise to an inference of
discrimination. (ECF 97 at pp. 21-29)

The 2d Circuit has previously noted that determination of but-for causation
is particularly poorly suited to disposition by summary judgment, because it
requires weighing of the disputed facts, rather than a determination that there is no
genuine dispute as to any material fact. Kwan, 12-2493-cv at 25: fn. 5 (2d Cir.
December 16, 2013).

Plaintiff's appeal seeks remand in part for the purpose of having the
opportunity to prove at trial the third and fourth elements of this application of the
burden shifting framework.

## X. The lower court's legal reasoning for dismissing the *pro se* plaintiff's retaliation claim is insufficient.

Title VII of the Civil Rights Act of 1964 (Section 704(a) of Title VII, 42
U.S.C. § 2000e-3(a) and The Age Discrimination in Employment Act (Section 4(d)
of the ADEA, 29 U.S.C. § 623(d)) prohibit retaliation by an employer because an
individual has engaged in a protected activity. A "protected activity" is defined as

43

(1) opposing a practice made unlawful by one of the employment discrimination statutes ("the opposition clause") or (2) filing a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under the applicable statute ("the participation clause").

"Federal and state law retaliation claims are reviewed under the burden-shifting approach of McDonnell Douglas. Kwan v. The Andalux Group LLC, 12-2493-cv (2d Cir. December 16, 2013) p. 18: 3-7. (Citations omitted)

Under the first step of the McDonnell Douglas framework, the plaintiff must establish a *prima facie* case of retaliation by showing (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. Kwan, 12-2493-cv at 19: 9-17; 20: 1-2 (2d Cir. December 16, 2013) (citation and internal quotation marks omitted).

Plaintiff's allegations are sufficient to make such a *prima facie* showing of retaliation, which in any case "requires only a *de minimis* showing." Kwan, 12-2493-cv at 21: 15-22 (2d Cir. December 16, 2013).

There should be no dispute that the plaintiff meets the first element of a *prima facie* case, since at the time of his employment in Corporate Banking, he was in the age protected group of employees forty years of age or older, (29 U.S.C.

§ 631(a)) since plaintiff was 56 years old (DOB August 14, 1952) when his employment was terminated.

There should be no dispute that the plaintiff meets the second element of a *prima facie* case, since the defendants' employment files record the plaintiff's date of birth.

There should be no dispute that the plaintiff meets the fourth element of a *prima facie* case, since the defendants' February 5, 2010 retaliatory letter (ECF 100 at pp. 85-86) was sent to the plaintiff less than two months after he (the claimant) filed his "Charge of Discrimination" on December 7, 2009, and within only a day or two of when the defendants were notified by the EEOC (letter dated February 1, 2010) that the plaintiff's charge had been transferred from the agency's Alternative Dispute Resolution (ADR) Unit to the Enforcement Unit.[13] With respect to causation, the 2d Circuit has stated that, "However, even without direct evidence of causation, a plaintiff can indirectly establish a causal connection to support a [] retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." Kwan, 12-2493-cv at 22: 3-10 (2d Cir. December 16, 2013). (citation and internal quotation marks omitted)

Only the third element of a *prima facie* case, adverse action, remains.

---

[13] The only date the Court mentions, "February 2009," is a potentially misleading frame of reference for the purpose of determining whether a causal connection exists. It must be considered together with dates of the relevant EEOC actions for the purpose of determining proximity.

The Court incorrectly seeks to avoid the second and third steps of the

McDonnell Douglas burden-shifting framework by finding that the defendants'

February 5, 2010 letter "...does not constitute an adverse action..." The Court's

analysis is incomplete and defective insofar as it avoids the question of "but-for"

causation.

The 2d Circuit had found that "...'but-for' causation does not require proof

that retaliation was the only cause of the employer's action, but only that the

adverse action would not have occurred in the absence of the retaliatory motive."

Kwan, 12-2493-cv at 24: 9-17 (2d Cir. December 16, 2013).

After the defendants articulate a non-retaliatory reason for the employment

action, according to the 2d Circuit, "A plaintiff may prove that retaliation was a

but-for cause of an adverse employment action by demonstrating weaknesses,

implausibilities, inconsistencies, or contradictions in the employer's proffered

legitimate, non-retaliatory reasons for its action. From such discrepancies, a

reasonable juror could conclude that the explanations were a pretext for a

prohibited reason." Kwan, 12-2493-cv at 25: 1-7; 26: 1-9 (2d Cir. December 16,

2013).

The Defendants Rule 56.1 Reply states that "Indeed, there is no substance to

the EEOC's letter because, among other things, the EEOC failed to explain how, in

light of the parties' contractual relationship including an express indemnification

46

provision, RBC's letter could constitute unlawful retaliation under Title VII instead of its lawful reservation of a contractual right." (ECF 101at p. 10, line 24 – p. 11, line 2) In light of this statement, a "reasonable juror" might ask why the Defendants promptly withdrew their threat in their June 11, 2011 letter to the EEOC (ECF 100 at p. 84), without any question or argument for the EEOC. It seems late in the day, over two and a half years after the EEOC's warning letter, for the defendants to claim for the first time, and in the context of summary judgment, "there is no substance to the EEOC's letter." Again, "...a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." Kwan, 12-2493-cv at 25: 1-7; 26: 1-9 (2d Cir. December 16, 2013).

The Defendants Rule 56.1 Reply also states that "In their opening memorandum, Defendants established that RBC's reservation of its right to *potentially* seek indemnification from RMCS was not retaliation." [underlines added; original italic] (ECF 101 p. 10, lines 11-12) As an initial matter, the Defendants may have argued this point, but it has not been established, which would require the Court to rule on the matter, which would require a trial, which would require reversal and remand of the Court's grant of summary judgment. Further, the Defendants' actual retaliatory letter did not use the word "potentially." Their stressing of the word potentially begs the question: What is the difference between (1) reserving a right to seek indemnification and (2) reserving a right to

*potentially* seek indemnification? The Defendants' linguistic gymnastics seeks to obscure the plain fact that their letter served the purpose of threatening and intimidating the plaintiff, i.e., their letter did not serve a "legitimate non-retaliatory" purpose. So found the EEOC, unequivocally. Likewise, "...a reasonable juror could conclude that the explanations were a pretext for a prohibited reason."

The defendants' statements concerning their retaliatory letter reflect exactly the kind of 'weaknesses, implausibilities, inconsistencies and/or contradictions' that could cause a 'reasonable juror' to "conclude that the explanations were a pretext for a prohibited reason." Kwan, 12-2493-cv at 25: 1-7; 26: 1-9 (2d Cir. December 16, 2013).

Finally, concerning but-for causation, the 2d Circuit notes that "The determination of whether retaliation was a "but-for" cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact. Kwan, 12-2493-cv at 25: fn. 5 (2d Cir. December 16, 2013).

The central purpose of a retaliatory action by an employer is to threaten and intimidate a charging party into dropping his claim, which is the *raison d'etre* of retaliation and what the law aims to protect against. The Court's reasoning is at

48

odds with the purpose of these laws when, in effect, the Court says that the defendants' letter is not retaliation because it didn't work.[14] *("Notwithstanding his receipt of that letter, plaintiff continued to pursue his EEOC charge and ultimately filed his complaint in the instant case."* Ct.'s Judgment, p. 24) Following the Court's logic, the plaintiff could only prove a retaliatory intent and meet the third element of a *prima facie* case of retaliation if he allowed the defendants' letter to work, i.e., succeed in causing the plaintiff to withdraw his complaint. (See also the Court's reasoning with respect to proving a *prima facie* showing of misclassification above at p. 27, and the Court's 'same actor' reasoning above at p. 36.)

The Court's speculation about how a "reasonable person" would respond to their letter assumes that this person buys into this logic, which is only certainly 'reasonable' from the point of view of the employer seeking to intimidate an employee into dropping an employment action. The Court failed to recognize the reality of the financial vulnerability and risks an employee assumes when he initiates an employment action against one of the largest banks in the world, represented by one of the largest employment law firms, which implies advantages

---

[14] "Voluntary compliance with and effective enforcement of the anti-discrimination statutes depend in large part on the initiative of individuals to oppose employment practices that they reasonably believe to be unlawful, and to file charges of discrimination. If retaliation for such activities were permitted to go un-remedied, it would have a chilling effect upon the willingness of individuals to speak out against employment discrimination or to participate in the EEOC's administrative process or other employment discrimination proceedings." EEOC Compliance Manual, Section 8, May 20, 1998.

that the sophisticated employer is well aware of and will seek to exploit. It is naïve

to believe otherwise. It is much more 'reasonable' to expect that the real possibility

of financial ruin (pursuant to a threatening letter like the defendants') "might"

cause an employee to find *"...the challenged action materially adverse, which in*

*this context means it well might have dissuaded a reasonable worker from making*

*or supporting a charge of discrimination."* ECF 108 at p. 24 (citation and internal

quotation marks omitted) The Court also failed to consider that plaintiff did not

withdraw his charge in large part because of the assurances of his counsel at the

time that the defendants' letter was retaliatory and would be disallowed as such.

Indeed, the EEOC's May 16, 2011 letter (ECF 100 at p. 83) to the defendants did

just that when it said:

*This type of threat constitutes retaliation under Title VII of the Civil Rights*
*Act of 1964, as amended [and] that the [defendants'] letter serves to*
*intimidate the charging party by claiming that he would be financially*
*responsible for any costs incurred by the Respondent related to his   EEOC*
*charge. The EEOC views this letter as retaliation against the Charging*
*Party [and] strongly urges the Respondent to withdraw the threats*
*contained in its February 5, 2010 letter.*

The Defendants' retaliatory letter was the source of considerable emotional

distress for the plaintiff and his family. Although the Defendants informed the

EEOC shortly thereafter that they waived their right to seek indemnification (i.e.,

follow through on their threat), the Plaintiff did not see this letter until two years

later on February 21, 2012, when the EEOC released its "charge file." The Court's

unmediated use of the defendants' argument that the defendants' February 5, 2010

letter *"...does not constitute an adverse action..."* serves to extend the shelf-life of

the adverse effects of this retaliation.

**XI. The lower court erred when it did not investigate the *pro se* plaintiff's discovery concerns and denied every one of his requests and doubled down on this error by finding that his evidence is insufficient for the purpose of establishing a *prima facie* case for any of his claims, and granting summary judgment.**

The defendant's tactical abuse of discovery, including overwhelming the *pro*

*se* plaintiff with 345 objections, denied the plaintiff access to evidence and

prevented the plaintiff from deposing witnesses, a concern which the plaintiff

brought to the Court's attention on several occasions. (ECF 52, 60, 66 and Judge's

memo endorsements to ECF Nos.55 & 63; see also ECF 99 at p. 33 ¶¶30-32; p. 34

¶42; see also ECF 100 at p.5 ¶28, p. 7 ¶¶39, 40) These witnesses include the RBC

manager whose affidavit is central to the defendants' Rule 56 statements and is

relied upon implicitly by the Court, who happens to be the 'same actor' relied upon

by the Court in its dismissal of plaintiff's age based claims. The Court did not

investigate a single one of plaintiff's discovery concerns, did not grant a single one

of plaintiff's discovery requests, but did grant every single one of the defendants'

requests. Further, in an apparent attempt to intimidate the *pro se* plaintiff, the lower

court, without any inquiries into the defendants' assertions and without any motion

by the defendants, threatened the plaintiff with "possible Rule 37 sanctions." (ECF

55, Judge's handwritten order at p.4) The Court's handling of discovery disputes

denied the *pro se* plaintiff important rights to discovery (Fed. R. Civ. P. Rules 1,

26 and 37 and corresponding Local Rules, especially 26.4) and his right to special

solicitude as a *pro se* plaintiff. (Nielson v. Rabin 12-4313-pv at 22-23 (2d Cir.

decided Feb. 13, 2014). "As noted earlier, the underlying justification for the

solicitude ordinarily granted to *pro se* litigants is that it is necessary to prevent

such parties, who generally lack legal training and experience, from inadvertently

forfeiting important rights.")

## XII. The lower court erred when it applied a double standard to material facts and evidence for the purpose of dismissing the plaintiff's misclassification claims.

The Court prejudiced the Plaintiff when it applied one standard of review for

his Rule 56.1 factual statements but a lenient and forgiving standard for the

defendants' statements.

For example, the Court seeks to explain why it disregarded a number of

plaintiff's Rule 56.1 objections by stating that *"Throughout his pleadings, plaintiff*

*makes the same claim-that he 'was an employee, but for RBC's misclassification of*

*his employment status.' Even construed liberally, this statement is a legal*

*conclusion, not a factual allegation. Therefore, the Court need not credit it as fact*

*on a motion for summary judgment."* (Citations omitted. See Judgment, p. 3, fn. 1)

The Court asserts further that *"Most of the plaintiff's claims depend on the*

52

*assumption that he was an employee, not an independent contractor,"* and uses
this as the premise for dismissing numerous disputed material facts related to the
plaintiff's misclassification claims. (Judgment, p. 10)

However, the Court looks the other way when it accepts for face value the
defendants' factual statements that are legal conclusions and arguments,
particularly in relation to the Court's misclassification analysis. The Court does not
challenge a single one of the defendants' many Rule 56.1 factual assertions which
rely implicitly on the assumption that the plaintiff 'was an independent contractor
and not an employee.'

The plaintiff specifically objected to the admissibility of a number of the
alleged "undisputed material facts" because they were *"...not a fact at all but an
argument and a conclusion, disallowed as such by F.R.C.P. Rule 56 and Local
Civil Rule 56.1."* (ECF 99 at ¶¶1(a), 3(a), 28(a), 58(a) 63(a).) Plaintiff also
objected to the admissibility of a number of defendants' other Rule 56.1 statements
because they were based on disputed premises, i.e., disallowed as arguments. (ECF
99 at ¶¶1(b), 36(b), 37(a), 38(b), 39(a), 40(a), 41(a), 42(a), 43(a), 44(a), 45(a),
48(a), 49(a), 51(c), 77(a).) But the Court ignored every single one of these
objections and, in effect, deemed the corresponding factual allegations to be
admitted. In so doing it disregarded numerous material disputed facts, and
implicitly accepted *a priori* the defendants' central legal argument that the

plaintiff's employment status was not misclassified, prejudicing the *pro se* non-moving party's Rule 56 pleadings and setting the stage for granting summary judgment.

The Court does not specify which of the plaintiff's factual statements it deems to be legal conclusions, making it impossible for him or a reviewer to know which statements have been disregarded for the purpose of finding no material facts are in dispute or if this was done correctly. As previously noted, the Court's findings that the plaintiff failed to allege a *prima facie* case for any of his claims hinges upon the systematic disregard of the non-moving *pro se* plaintiff's facts and evidence.

## XIII. The lower court erred when it applied a prejudicial standard to the *pro se* plaintiff's evidence.

(1) Disparate treatment of prior agency findings. The previously cited EEOC May 16, 2011 letter notified the defendants that the agency found their February 5, 2010 letter to the plaintiff "served to intimidate" and "[t]hat this type of threat constitutes retaliation under Title VII of the Civil Rights Act of 1964, as amended." The Court relegates the EEOC's letter to a footnote, finding that it is "immaterial" and does not warrant deference by the Court. (ECF 108 at p. 6, fn. 12) Elsewhere in its Judgment the Court also notes an IRS finding against the plaintiff's SS-8 misclassification claim. However, applying a double standard, the

54

Court does not discount it as "immaterial" or unworthy of deference. (ECF 108 at

p. 6, fn. 3) And, the Court completely ignores plaintiff's Additional Fact No. 5,

which reads: "A December 2, 2013 State of New Jersey Department of Labor

unemployment insurance benefits hearing report states that '...EVIDENCE

INDICATES THAT AN EMPLOYEE/EMPLOYER RELATIONSHIP DID

EXIST [between Defendant RBC Capital Markets LLC and the Plaintiff]', and that

'...CLMT [i.e., Plaintiff] WAS PAID ON A 1099, HOWEVER, CLAIMANT

WAS EMPLOYED AT EMPLOYER'S PREMISE AND EMPLOYER DECIDED

HOW AND WHEN WORK WAS PERFORMED, EMPLOYER PROVIDED

EQUIPMENT AND TOOLS FOR THE JOB...' [all caps in original] (ECF 99 at p.

28, Additional Fact No. 5)

When the Court uncritically notes evidence that tends to support the

defendants' motion for summary judgment (the IRS SS-8 finding), but discredits or

ignores similar agency evidence (the EEOC letter and NJ DOL finding) that tends

to support plaintiff's claims (respectively, retaliation and misclassification) and his

Rule 56.1 opposition statements, it fails again to "construe all evidence in the light

most favorable to the non-moving party, drawing all inferences and resolving all

ambiguities in its favor," (Dickerson v. Napolitano, 604 F.3d) and "liberally

construe pleadings and briefs submitted by pro se litigants, reading such

submissions to raise the strongest arguments they suggest" (Bertin,478 F.3d at 489,

491), and "...afford [the] *pro se* plaintiff's pleadings solicitude in general, but especially when considering an opposing party's motion for summary judgment" (Nielson v. Rabin 12-4313-pv at 22-23 (2d Cir. decided Feb. 13, 2014), the recurring trifecta of prejudicial treatment for the plaintiff's Rule 56 briefs.

(2) Disparate treatment of affidavits as evidence. The plaintiff's affidavit and supporting evidence comply with Federal and Local Rules concerning the use of affidavits as evidence, and despite insinuations, the Court has not expressly found otherwise. (Fed. R. Civ. P 56 (c)(1)(A), 56(c)(4)); Local Rules 56.1, 56.2[15]) Notwithstanding, the Court commits a plain error when it ignores relevant evidence and prejudices the plaintiff's factual statements (and evidence) by declaiming that it is "say-so,"[16] etc. (ECF 108 at pp. 18, 20 fn.8, and 21), which echoes the defendants when they sought to broadly dismiss the plaintiff's affidavit testimony as "self-serving." (ECF 102 at p.3)

The Court applies a double standard to the moving party's favor when it implicitly relies upon the defendants' statements which, in turn, rely heavily on the "self-serving" affidavit of one RBC manager, Mr. Shields. This one affiant's

---

[15] Rule 56.2 includes the text of "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" which reads in part: "If you have proof of your claim, now is the time to submit it. Any witness statements must be in the form of affidavits. An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial. You may submit your own affidavit and/or the affidavits of others. You may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment." [underline added]

[16] Definitions include "a statement that is not supported by any proof" and "one's unsupported assertion or assurance" ( http://www.merriam-webster.com/dictionary/say-so)

testimony is at the heart of the most material of disputed facts. The Court cites 39

of the defendants' factual assertions to support its legal conclusions, of which 19

rely on this one affiant's testimony. (ECF 78 at ¶¶ 5, 14(x2), 15, 16, 19, 23, 39,

50(2x), 51(3x), 52, 54, 60, 61, 68, 73) The Plaintiff specifically disputed most of

these factual assertions. (ECF 99 at ¶¶ 14, 16, 19, 23, 39, 50, 51, 54, 60, 61, 68, 73)

It is not surprising, given the nature of the claims –employment misclassification,

age discrimination- that a number of the plaintiff's opposition statements relied on

his own affidavit testimony. It is surprising that the Court never once questioned

the defendant affiant's testimony, or the defendants' reliance on this one "self-

serving" affidavit, all the while finding, for the purpose of summary judgment, not

a scintilla of evidentiary value in any of the plaintiff's affidavit or deposition

statements.

   The veracity and probative value of both the defendants' and plaintiff's

affidavit statements cannot be known until and unless they are subject to cross-

examination, just another reason to reverse and remand the Court's summary

judgment and allow a trial. Indeed, many of the most material facts will remain in

dispute until and unless they are examined under oath at trial and the Court has the

benefit of the opposing parties' testimony. (ECF 109 at pp. 13-14)

## XIV. The lower court's numerous rhetorical references prejudice the *pro se* plaintiff's Rule 56 opposition statements.

Over and again the Court's Judgment prejudices the plaintiff by referring to his factual statements and evidence as "say-so" (3 times) and declaiming that the plaintiff "admits" (5 times), "asserts" (3 times), "alleges" (2 times), "argues" (1 time), and "claims" (6 times). In telling contrast, the Court never once refers to the Defendants' factual assertions as "say-so," never once says that the defendants "admit," or "assert," or "allege" or "argue" or "claim" their facts, and never once says that the 'defendants do not dispute' or use any one of the variations on that theme that the Court repeatedly and erroneously applied to the Plaintiff. (see p. 18. above ) The Court's choice of language in concert has a prejudicial rhetorical effect and once again a telltale that, contrary to Rule 56.1 and Dickerson v. Napolitano, the Court viewed all the facts in the light most favorable to the moving party and gave that party the benefit of all reasonable inferences that could be drawn from those facts and, contravening Bertin v. United States, the Court did not liberally construe the *pro se* plaintiff's pleadings, and did not read such submissions to raise the strongest arguments they suggest.

## CONCLUSION

For the reasons stated above, the *pro se* non-moving party respectfully requests the Second Circuit to vacate the grant of summary judgment and remand all of the plaintiff's claims to the lower court for further proceedings.

Dated: Hopewell, New Jersey
      May 12, 2014

Respectfully submitted,

David Sellers, *Pro Se*
*Plaintiff-Appellant* .
24 East Prospect Street
Hopewell, New Jersey
08525
609-466-1353
609-468-8437

## CERTIFICATE OF COMPLIANCE

I, David Sellers, certify that this brief contains 14,000 words or less.

David Sellers, *Pro Se*
*Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

David Sellers _____ v.

The Royal Bank of Canada, et al

**CERTIFICATE OF SERVICE**

Docket Number: 14-302-cv _____

I, David Sellers _____, hereby certify under penalty of perjury that on

(name)

September 8, 2014 _____, I served a copy of Amended Brief of Appellant David Sellers

(date)
dated September 8, 2014

(list all documents)

by (select all applicable)*

- [✓] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [ ] E-mail
- [ ] Hand delivery

on the following parties (complete all information and add additional pages as necessary):

| James P. Walsh, Esq. | 502 Carnegie Center | Princeton | N. J. | 08540 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

September 8, 2014

Today's Date

Signature

*If different methods of service have been used on different parties, please indicate on a separate page, the type of service used for each respective party.

Certificate of Service Form

P. 61